TIMOTHY A. CANNING,   Cal. State Bar No. 148336
Law Offices of Timothy A. Canning
1125 16th St., Suite 204
PO Box 4201
Arcata, CA 95518
(707) 822-1620; Fax: (707) 760-3523
tc@tclaws.com

E-filing

Attorney for Petitioner Robert J. Knight

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In the matter of the arbitration between | Case No. |
| ROBERT J. KNIGHT, | |
|              Petitioner | PETITION AND APPLICATION TO VACATE ARBITRATION AWARD |
| and | |
| MERRILL LYNCH, PIERCE, FENNER & SMITH, INC. | |
|            Respondent | |

**Jurisdiction and Venue**

1.  The jurisdiction of this Court is based on Section 1332 of Title 28 of the United States Code, as there is complete diversity of citizenship between petitioner and respondent, and the matter in controversy exceeds $75,000, exclusive of interest and costs. As and for an additional basis for this Court's jurisdiction, this action arises under the Securities Exchange Act of 1934 (15 U.S.C. 78(a) to 80b-4), ("Exchange Act") in that the arbitrators rendered their award in manifest disregard of federal law, as hereinafter more fully appears. The jurisdiction of this court is therefore also founded on section

1

1331 of Title 28 of the United States Code.

2.  Pursuant to Sections 10 and 12 of Title 9 of the United States Code, petitioner ROBERT J. KNIGHT ("KNIGHT') applies to the court for an order vacating an arbitration award rendered in favor of respondent MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., ("MERRILL LYNCH"), in the arbitration known as <u>Robert J. Knight v Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, NASD arbitration number 06-03430, and directing that judgment vacating the arbitration award be entered thereon.

3.  Pursuant to Section 10 of Title 9 of the United States Code, venue for this petition is proper in this district in that the arbitration, which resulted in the award for which vacatur is sought, was venued to be conducted in this district, in the City and County of San Francisco, California.

4.  At the time this action is commenced, petitioner Robert J. Knight was a resident of San Jose, California.

5.  At the time this action is commenced, respondent MERRILL LYNCH was a corporation organized and existing under the laws of the State of Delaware, with its principal office in the State of New York.

6.  The amount in controversy in this action exceeds $75,000.00, as the amount of damages sought in the underlying arbitration for which vacatur is sought is approximately $10,000,000.00.

7.  The National Association of  Securities Dealers, Inc. ("NASD")  is a self-regulatory organization registered with the Securities and Exchange Commission ("Commission") as a national securities association pursuant to the Maloney Act of 1938 (15 U.S.C. §§ 78o-3 et seq.).    The Exchange Act delegated government power to the NASD to enforce compliance by members of the industry with both the legal requirements laid down in the Exchange Act and ethical standards going beyond those requirements. See S.Rep. No. 94-75, at 23 (1975), *reprinted in* 1975 U.S.C.C.A.N. 179, 201.

8.  The NASD Code of Arbitration Procedure ("Code") consists of rules

2

which govern securities arbitration.  Prior to becoming effective, each such rule is reviewed by the  Commission,  which in turn publishes notice of the proposed rule in the Federal Register and invites public comment on the proposed rule, pursuant to 15 U.S.C. 78s(b).  The ultimate approval of a proposed NASD rule reflects the Commission's determination that the proposed rule is consistent with the purposes of the Exchange Act.  Pursuant to the Exchange Act (15 U.S.C. section 78s(c)),  the Commission also has the power to  abrogate, add to, and delete from the rules of the NASD  as the Commission deems necessary or appropriate to insure the fair administration of the NASD. The Commission's authority includes the power to mandate the adoption of any rules the Commission deems necessary to ensure that arbitration procedures adequately protect statutory rights.  (Arbitrations conducted pursuant to the Commission's authority and oversight is referred to herein as "Exchange Act arbitration").

9.    At all times relevant to the events alleged in the Statement of Claim in the underlying Exchange Act arbitration, respondent MERRILL LYNCH was a broker-dealer member of the National Association of Securities Dealers, Inc. ("NASD") and was subject to the Commission's power pursuant to the Exchange Act.

10.    At all times relevant to the events alleged in the Statement of Claim in the underlying Exchange Act arbitration, petitioner was an "associated person"   and employee of respondent MERRILL LYNCH, and was registered and licensed as such with the NASD and was subject to the Commission's power pursuant to the Exchange Act.

**The Exchange Act Arbitration Proceeding**

11. On July 20, 2006, petitioner commenced an arbitration proceeding with MERRILL LYNCH pursuant to the Code by filing a Statement of Claim, a Uniform Submission Agreement, fees and hearing session deposits required by the Code for commencing an Exchange Act arbitration with the NASD.  The NASD accepted petitioner's statement of claim for arbitration, and assigned case number 06-03430 to it.

12.    In his Statement of Claim, petitioner sought damages from respondent

3

for breach of employment contract, among other things, in connection with his

termination of employment with Merrill Lynch.    Petitioner also named Patricia G.

Williams and George Scott Ralston, solely in their capacities as employees of MERRILL

LYNCH.

13.  Pursuant to Code rules 10100 and 10201, respondent was obligated by

the Commission to arbitrate disputes with associated persons, such as petitioner, at

petitioner's demand, and to do so in accordance with the Code.

14.  On or about July 6, 2006, in response to petitioner's statement of claim

and demand for arbitration, respondent submitted an answer to the statement of claim.

Respondent also executed and submitted a Uniform Submission Agreement, by which

respondent agreed that petitioners' dispute would be resolved in accordance with the

Code, as required by the Commission acting pursuant to the Exchange Act.

15.  On or about October 25, 2006, respondent filed a self-styled "motion

to dismiss" petitioner's arbitration and a motion to stay discovery.

16.  On or about November 3, 2006,  the NASD appointed  Thomas D.

Reese, Michael Garcia, and Linda H. Perry-Cabrera as arbitrators to hear and decide

petitioner's arbitration claim.

17.  During a telephone conference call between respondent's counsel, the

arbitrators, and petitioner's counsel,  the arbitrators instructed petitioner to submit a

response to respondent's "motion to dismiss" on or before December 18, 2006.  The

arbitrators also set another telephone conference call for January 15, 2007, to discuss

respondent's motions.

18.  On December 18, 2006, petitioner submitted a written response to

respondent's motion.  A true and correct copy of the response is attached hereto as

Exhibit A.

19.  In his written response,  petitioner clearly and unambiguously

instructed the arbitrators that:  1)  the Code  expressly prohibits substantive  motions to

dismiss without an evidentiary hearing;  2)  under the Code, petitioner was entitled to an

4

evidentiary hearing, including presenting witness testimony and examining documents; 3) that the statute of limitations on which respondent relied (from the California Code of Civil Procedure) applied only to actions, which are statutorily defined to mean civil court proceedings, and hence did not apply to Exchange Act arbitrations;  and 4) that the  four year statute of limitations for actions founded upon an instrument in writing applies not only to the breach of an express obligation under a written contract, but also to breach of an implied promise arising out of the contract, pursuant to  California Code of  Civil Procedure § 337(1).

20. Pursuant to the Code, as reviewed and approved by the Commission pursuant to the Exchange Act, petitioner was entitled to a hearing to present testimony and evidence regarding his claim.    Code Rule 10303 provides:

> (a) Any dispute, claim or controversy except as provided in Rule 10203 (Simplified Industry Arbitration) or Rule 10302 (Simplified Arbitration), shall require a hearing unless all parties waive such hearing in writing and request that the matter be resolved solely upon the pleadings and documentary evidence.
> (b) Notwithstanding a written waiver of a hearing by the parties, a majority of the arbitrators may call for and conduct a hearing. In addition, any arbitrator may request the submission of further evidence.

21.  Discovery in Exchange Act arbitration is severely limited.  Petitioner did not have the right to depose any witnesses.  Petitioner did not have the right to compel production of documents from non-parties prior to the arbitration hearing.

22. The NASD instructs its arbitrators to follow a certain script when opening a hearing.   Code rule 10326 also requires that hearing sessions be recorded on audiotape, which the NASD, acting pursuant to the authority granted to it by the Commission and the Exchange Act, considers to be an important function at a hearing.

23.  The Code requires the parties to exchange witness lists and documents 20 days prior to the commencement of the hearing.  In the arbitration which is the subject of this application, no party provided such an exchange.

5

Petition and Application to Vacate Arbitration Award

24. The Code requires a hearing to be held in every Exchange Act arbitration. However, no such hearing was held on petitioner's claim.   Instead, the arbitrators were presented with only written and oral argument by the parties' counsel. The arbitrators did not permit any testimony from petitioner.

25. Following the telephone conference on January 16, 2007, the arbitrators issued an order on January 25, 2007, in which the arbitrators instructed petitioner to amend his statement of claim to include a specific cause of action for breach of written contract.   On March 23, 2007, petitioner submitted his amended statement of claim, a true and correct copy of which is attached hereto as Exhibit B and which is incorporated herein by this reference.

26. On or about March 23, 2007, respondent submitted a supplemental brief in support of its motion to dismiss on statute of limitations grounds.   On or about April 2, 2007, respondent submitted an answer to petitioner's amended claim.

27. On May 10, 2007,   pursuant to the arbitrators' request, the arbitrators held a telephone conference call with counsel for respondent and counsel for petitioner. The arbitrators did not read the script identified in paragraph 22 hereinabove.  No audio tape recording was made of the telephone conference call. No witnesses were sworn in. Petitioner was not permitted to present testimony.

28.  On or about May 18, 2007, the NASD served the arbitrators' award on petitioner and respondent.  The arbitrators dismissed all claims by petitioner.  A true and correct copy of the arbitration award is attached hereto as Exhibit C and is incorporated herein by this reference.

**Grounds for Vacatur**

29.  The arbitrators' award should be vacated on any one of the following three grounds: (1) the arbitrators exceeded their authority; (2) the arbitrators manifestly disregarded federal law; and (3) the arbitrators manifestly disregarded state law.

30.  By dismissing petitioner's claim, the NASD arbitrators exceeded their authority under the arbitration agreement and exceeded the authority granted to them by

6

Petition and Application to Vacate Arbitration Award

the Exchange Act and the Commission.  The Code permits dismissals of an Exchange Act arbitration claim only in one of three situations:   (1) where the proceeding is dismissed and the parties referred to their judicial remedies or another dispute resolution forum, without prejudice; (2) for willful and intentional material failure to comply with an order of the arbitrators if lesser sanctions have proven ineffective; or (3) at the joint request of all parties.   Code rule 10305.   None of those three situations were present in the underlying Exchange Act arbitration.

31.   The award was not made in accordance with the terms and provisions of the Code as reviewed and approved by the Commission pursuant to the Exchange Act, and  therefore was in excess of the arbitrators' authority.

32.   As a further and alternate ground for vacating the arbitration award, the arbitrators manifestly disregarded federal law in that they were fully aware of the governing federal law as alleged in paragraph 30 hereinabove and refused to apply it, in reaching their decision.

33.   As a further and alternate ground for vacating the arbitration award, the arbitrators manifestly disregarded federal law and state law in that they were fully aware that the statute of limitations found in the California Code of Civil Procedures applied only in civil actions in court, and not in Exchange Act arbitration.  Despite so knowing, the arbitrators nonetheless applied the statute of limitations found in the California Code of Civil Procedure.

34. As a further and alternate ground for vacating the arbitration award, the arbitrators manifestly disregarded the law in that they were fully aware that that California law applies the four-year limitation period for an action on a written contract (found in California Code of Civil Procedure section 337(1)) to breaches of implied promises arising out of the contract.  Despite so knowing, the arbitrators nonetheless ruled that section 337(1) did not apply to implicit provisions of petitioner's employment agreement with respondents.

35.  The arbitrators were fully aware of the law as alleged in paragraphs 30,

7

1    32, 33 and 34 hereinabove and refused to apply it, in reaching their decision.

2            36.  Petitioner is not aware of any action filed by respondent seeking to

3    confirm, correct or vacate the arbitration award.

4            **WHEREFORE,** petitioner applies for an order:

5            1.   Vacating the arbitration award entered in the above-mentioned

6    arbitration proceeding and attached hereto as Exhibit C, and a rehearing ordered before a

7    new panel of arbitrators;

8            2.  That petitioner  be awarded his costs expended in this proceeding; and

9            3.  Such other and further relief as the Court may deem proper.

10

11   Dated:  May 24, 2007

12                                                Timothy A. Canning
                                                  Attorney for Petitioner Robert Knight
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                           8

Petition and Application to Vacate Arbitration Award

Law Offices of
# Timothy A. Canning

_____

Telephone: (415) 382-7899
Facsimile: (415) 382-9421
Website:  www.tclaws.com
Email:  tc@tclaws.com

Two Commercial Blvd., Suite 203
Novato, CA 94949

December 18, 2006

*Via facsimile (original) and overnight (3 copies)*

Fax: 301-527-4766
Panel of Arbitrators
c/o Derek Sorrells
NASD Dispute Resolution
300 S. Grand Avenue, Suite 900
Los Angeles, CA 90071

cc:  *via facsimile (1 copy) and overnight (1 copy)*

Fax: (601) 408-9050
Michael Fortunato
Patricia Bailey Tsipras
Rubin, Fortunato, Harbison
MCS Building, Suite 202
10 S. Leopard Rd
Paoli, PA 19301

Re:    Robert Knight  v Merrill Lynch, NASD Case No. **06-03430**
       Claimant's Opposition to Respondents' Motion to Dismiss

Dear Panel:

Respondents' motion to dismiss should be denied, for the following reasons:

(1) NASD rules do not permit arbitrators to decide a claim without a hearing, unless all parties agree to it;

(2) the limitations periods on which respondents rely do not apply in contractual arbitration, but only in court actions;  and

(3) as respondents know, the essence of this claim derives from an obligation in writing (i.e., a written employment agreement); hence, the applicable time period is **four years** from the date of termination; and respondents agree that this action was filed within four years of the date of termination.

Respondents have endeavored to keep the existence of the written employment agreement hidden from the panel, and from claimants' representatives.  Respondents do not mention  the written employment agreement in their answer, nor do they discuss it in connection with their motion to dismiss.  Respondents refused to provide any documents or substantive responses to claimant; the reason why is now obvious – such discovery would defeat their motion to dismiss.

_____

*North Coast Office*
1125 16th St., Suite 204  PO Box 4201,  Arcata, CA 95518   Telephone: (707) 825-1620  Fax: (707) 760-3523

December 18, 2006
Page 2
_____

**(1) NASD Rules  Prohibit Dismissal Without Hearing**

NASD rules **specifically prohibit** arbitrators from deciding public customer arbitration cases based only on the pleadings and documentary evidence – which is exactly what respondents request here -- unless all parties agree to such a procedure.  Claimant has not and does not agree to that procedure; hence NASD Rule 10303(a) specifically bars respondents' substantive motion.

Rule 10303(a) prohibits this panel from deciding claimant's case solely on the pleadings and documentary evidence.  To quote the rule verbatim:

> Any dispute, claim or controversy, except as provided by Rule 10203 (simplified industry arbitration) or Rule 10302 (Simplified arbitration) **shall require a hearing** unless the parties waive such hearing in writing and request that the matter be resolved solely on the pleadings and documentary evidence.

 NASD Code of Arbitration Rule 10303 (a) (emphasis added).

Rule 10303 (a) is not  ambiguous. Since only the "pleadings" have been presented to the panel, this panel cannot yet decide this claim.  This panel would be acting in contravention  of NASD arbitration rules if it were to grant respondents' motion to dismiss.

Other rules in the NASD Code support claimant's right to a hearing.   Rule 10305 only authorizes the panel to dismiss an action ***without prejudice***, and thereby refer the parties to their judicial remedies – in other words, send this matter to court.  That rule does not, however, permit a dismissal with prejudice by way of dispositive motion – which is what respondents now seek.  Respondents have not requested that this matter be sent into court or to another arbitration forum.

The Code of Arbitration Procedure simply does not allow dispositive motions of this sort to be determined by arbitrators without the benefit of a full and complete evidentiary hearing.  It is only **after** discovery is completed and **after** testimony is taken that arbitrators have the facts necessary to make informed and fair decision(s) regarding respondents' culpability.

The unfairness of an evidence-based dispositive motion in arbitration is that there are no rules or standards by which such motions should be resolved.   Should the standard be that respondents have to prove that claimant has failed to state a claim upon which relief should be granted (the standard for demurrers in state court)?  Or should the burden be on respondents to show that there are no triable issues of material fact?  Or is the burden on claimant to prove his case now, by a preponderance of the evidence, without the benefit of any testimony?   The NASD Code offers no guidance whatsoever on just what claimant needs to do to oppose such a dispositive motion, nor does it offer any guidance whatsoever on what standards the panel should apply in deciding it.

California law also does not support respondents' motion to dismiss.  There are  only two published California case involving pre hearing motions in arbitration:  *Reed v. Mutual Service*

December 18, 2006
Page 3
_____

*Corp.* (2003) 106 Cal.App.4th 1359.  and *Schlessinger v. Rosenfeld, Meyer & Susman* (1995) 40 Cal.App.4th 1096.  However, neither case authorizes substantive motions to dismiss in NASD arbitrations;  and respondents have not cited one single California statutory or case law to support their claim that claimant is not entitled to a hearing here.

In *Reed*, the court addressed an **eligibility** motion – i.e. whether an arbitration claim was eligible to be heard in NASD arbitration under the NASD's "six year rule".   Here, in contrast, respondents do not contend that this case is ineligibile for arbitration – for clearly it is eligibile (i.e., filed within 6 years).

*Schlessinger* also does not support respondents motion.  First, that case involved a contractual arbitration conducted under AAA arbitration rules, a different set of rules than the NASD arbitration rules.

Further, the parties in *Schlessinger* had an opportunity to take **extensive discovery,** including depositions.  In fact, the parties in *Schlessinger* had agreed that California's Civil Discovery Act would apply in their arbitration, which includes interrogatories, request for admissions, and other forms of discovery that require sworn responses, and which can be used as evidence.  *Schlessinger*, at 1101, fn 2. The *Schlessinger* court expressly limited its holding, stating:

> [W]e caution that our holding should **not** be taken as an endorsement of motions for summary judgment or summary adjudication in the arbitration context. . . .  Finally, **especially where the arbitration lacks an explicit procedure for dispositive motions, courts must ensure that the party opposing such a motion is afforded a fair opportunity to present its position.**

*Schlessinger*, 40 Cal.App.4th at 1111-12 (citations omitted, emphasis added).

In contrast to the facts of *Schlessinger*, claimant here has not had a fair opportunity to present his position.  Claimant has not had the opportunity to depose or cross-examine any witnesses under oath.  Neither party has had the same type of discovery rights permitted under California's Discovery Act, and to which the parties in *Schlessinger* had access.

In fact, here respondents have **blocked** claimant's efforts to obtain discovery, by refusing to produce **any** documents, and refusing to produce **any** information – including information surrounding the written employment agreement between the parties.

And, in further contrast to the AAA rules construed in *Schlessinger*, the NASD Code of Arbitration Procedure has **no explicit procedure** for dispositive motions.

The *Schlessinger* court broadly interpreted the arbitrators' obligation  "to hear evidence" under the California Arbitration Act (Code Civ. Proc. § 1286.2), but then noted that the statute permits parties to adopt a different procedure.  *Schlessinger,* 40 Cal.App.4th at 1106.

December 18, 2006
Page 4
_____

Here, the parties have adopted a ***different procedure***:  all parties agreed (when signing the Uniform Submission Agreement)  that a hearing would be required (NASD Rule 10303), with the "hearing" consisting of:  parties and their counsel present (NASD Rule 10317); pre hearing exchange of documents and witnesses (Rule 10321 (c)); sworn testimony (Rule 10327); and a verbatim transcript of the proceedings (NASD rule 10326).

To put it simply, respondents want all the benefits of litigation, with none of the procedures that would ensure that each party obtained a fair hearing.

## 2)  The Time Limitations Found in the Code of Civil Procedure Do Not Apply In Arbitrations Held in California

In support of their motion, respondents rely solely on statute of limitations found in Part 2, Title 2 of the California Code of Civil Procedure.  (Part 2, Title 2 encompasses sections 312 through 366.3;  respondents rely on sections 335.1, 339, and 340 in their motion).

 Part 2, Title 2  applies only to civil actions;  in fact, Part 2 is titled, "Of Civil Actions" and Title 2 is titled, "Of The Time of Commencing Civil Actions".  Section 312  – which immediately precedes  the statutes of limitations cited by respondents – is expressly limited in application  to **civil actions only**.  That section states:

> **Civil action**s, without exception, can only be commenced within the periods prescribed in this title, after the cause of action shall have accrued, unless where, in special cases, a different limitation is prescribed by statute.

Code Civ. Proc. § 312 (emphasis added).

This contractual arbitration is not a civil action, as that term is defined by statute.  Section 22 of the Code of  Civil Procedure defines an **action** as a

> **proceeding in a court of justice** by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense.

Code Civ. Proc.§ 22 (emphasis added).

Claimant does not contend that there are no time bars to arbitration claims.    The six year eligibility rule (NASD rule 10304), as well as other time periods that are not limited to proceedings in a court of justice,  may be applicable in particular cases. Further, the doctrine of laches (unreasonable delay in bringing a claim plus prejudice to the respondents as a result of the delay) may also be a time-bar to claims filed in arbitration.

However, respondents have not raised those other potential time bars in their motion.

*EX  A, p. 4 of 6*

Law Offices of
Timothy A. Canning

December 18, 2006
Page 5
_____

Instead, respondents rely solely on the statutes of limitations in the Code of Civil Procedure, which apply only to proceedings in a court of justice.

**3) The Applicable Statutes of Limitation Has Not Run**

But even if the statute of limitations found in Part 2, Title 2 of the Code of Civil Procedure applied to this contractual arbitration, this action was still timely filed, **for it is founded upon an instrument in writing** – **a written employment agreement**.  The applicable statute of limitation here is therefore **four** years.  Respondents admit – as they must -- that this action was filed within four years of the date of the wrongful termination. Hence, this claim was timely filed.

In making their motion, respondents conceal from this panel a crucial fact:  the employment agreement between claimant and respondents was in **writing.**  That fact is key – and fatal to respondents' motion – because California law provides a four-year time period for actions having its source in a written instrument.  Here, there is a written employment agreement between respondents and claimant.

California's Code of Civil Procedure section 337(1). provides for a 4-year period for bringing an "action upon any contract, obligation or liability founded upon an instrument in writing." (emphasis added).  This four year period runs from the date of the alleged breach.

The four-year limitation period for an action on a written contract (Code Civ. Proc. § 337(1)), applies not only to the breach of an express obligation under a written contract, but also to breach of an *implied* promise arising out of the contract.  *Amen v. Merced County Title Co.* (1962) 58 Cal.2d 528, 532; *Bruckman v. Parliament Escrow Corp.* (1987) 190 Cal.App.3d 1051, 1058; and see 3 Witkin, Cal. Procedure,  <u>Actions</u> (4th ed. 1997) §§ 475, 476 p 599 - 600.

 This same four year period also applies to claims of negligent performance of any obligation that arises out of this written instrument.  See *Bruckman v Parliament Escrow Corp.*, *supra*, 190 Cal.App.3d 1051, 1057-1058.

Or, to put it another way, claimant's claim here is not a tort-based negligence (ie, an obligation imposed by law, such as the obligation to drive safely), but a contract-based negligence (ie, an obligation created by contract).  Hence, claimant's claim for negligent performance of respondents' obligations founded upon an instrument in writing are also subject to a four-year time period.

Respondents know, of course, that Merrill had a written employment agreement with claimant, as they have undoubtedly reviewed his entire employment file by this stage of the proceedings.  Their motion dishonestly ignores the written agreement, and attempts to characterize the relationship between the parties as something other than it was, and the claim for something other than it is.

Law Offices of
Timothy A. Canning

December 18, 2006
Page 6

---

At best, respondents' motion is an attempt to re-write the claim to fit into respondents' ideas of what the statutes of limitations should be. If the panel feels that statutes of limitations should be applied, a point claimant does not in any way concede, then at least the panel should apply the time periods that apply to the actual facts of this matter; and the actual fact is there is a written employment agreement between the parties.

**Conclusion**

Respondents demand that this panel make a final decision in this matter without hearing any evidence. NASD arbitration rules do not allow dispositive motions of this sort without benefit of a full and complete evidentiary hearing. It is only after discovery is completed and after testimony is taken that arbitrators have the facts necessary to make informed and fair decision(s). That is what every party expects when they come to NASD arbitration. Claimant is entitled to an evidentiary hearing on his claim, not just a hearing limited to pleadings and documentary evidence. If for no other reason than this, respondents' motion should be denied.

But there are other reasons to deny respondents' motion. Even assuming that the limitations period found in the Code of Civil Procedure applies to this arbitration, the applicable period is **four years** (for breaches of obligations founded upon an instrument in writing). That four-year period begins to run no sooner than when claimant was terminated – which respondents admit was on July 26, 2002.

As this action was filed on July 20, 2006 – within four years – it was timely filed. Respondents motion should therefore be denied.

Respectfully submitted,

Timothy A. Canning

# TIMOTHY A. CANNING
## ATTORNEY AT LAW

'o Commercial Blvd., Suite 203
Novato, California 94949

Telephone: (415) 382-7899
Facsimile: (415) 382-9421
E-Mail: tc@tclaws.com
Website: www.tclaws.com

March 23, 2007

Panel of Arbitrators
NASD
c/o Derek Sorrells
300 S. Grand Avenue, Suite 900
Los Angeles, CA 90071

      Re:    Robert Knight *v.* Merrill Lynch, Pierce Fenner & Smith Inc.,
             Patricia Williams and Scott Ralston
             NASD Case No. 06-03430
             <u>Amended Statement of Claim</u>

Dear Panel:

      **Claimant Robert Knight** ("**Claimant**"), formerly an "Associated Person," initiated this proceeding with the filing of a statement of claim on July 20, 2006. Claimant was terminated by respondents on July 26, 2002, within four years from the date of his termination.

      Pursuant to an order of the arbitration panel dated January 15, 2007, claimant respectfully amends the statement of claim as follows:

      1)     Claimant restates and reaffirms each and every allegation and request for relief contained in the statement of claim.

      2)     On or about September 9, 1992 claimant entered into a written agreement with Respondent Merrill Lynch with respect to his employment. A true copy of this agreement, entitled: <u>Financial Consultant Employment Agreement and Restrictive Covenants</u> is attached hereto as Exhibit A.

      3)     That agreement, which provides the terms and conditions of claimant's employment at Merrill Lynch, includes, in relevant part:

           a. *I agree that at all times during my employment, I owe Merrill Lynch a duty of loyalty and a duty to act in good faith."*

*EX B, p. 1 of 13*

4)     Claimant asserts that, at all times relevant hereto, he was a loyal employee who acted with good faith toward Merrill Lynch, its employees and its customers. In truth, the evidence will show that he was an exemplary employee

5)     Claimant asserts, that under California law, Merrill Lynch owes a similar duty of loyalty and to act in good faith at all times. Otherwise, claimant will be rendered unable to fulfill his end of the contractual bargain which he entered into with respondents in or about September 1992.

*"There is implied in every contract a covenant by each party not to do anything which will deprive the other parties thereto of the benefits of the contract. ... This covenant not only imposes upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, but also the duty to do everything that the contract presupposes that he will do to accomplish its purpose."* Harm v. Frasher (1960) 181 C.A.2d 405, 417; and see 1 Witkin, Summary of California Law, Contracts. §798 (10th ed. 2005)

6)     Claimant asserts and alleges that Respondent Merrill Lynch breached its duty of loyalty and good faith, by terminating his employment without good cause, and for asserting, falsely, that it had good cause to terminate him. Claimant alleges that Merrill Lynch breached the specific terms of the written employment contract, namely that each party owed the other party a duty of loyalty and a duty to act in good faith.

7)     Implicit in the written employment contract was the requirement that claimant follow Merrill's written policies and procedures (first paragraph). Equally implicit is the requirement that Merrill act in accordance with its own written policies and procedures as well.

8)     At the time of his employment, claimant was given a policy manual entitled: Working at Merrill Lynch: An Employee's Guide. Portions of that Guide are set forth as Exhibit B. These pages set forth the "inappropriate actions" that *"might"* lead Merrill to immediately discharge an employee. They include:

1) theft
2) threats
3) refusal to follow management's instructions
4) damaging Merrill Lynch property
5) proof or admission of a crime
6) falsely filling out pre-employment forms
7) possession of drugs and similar serious infractions.

**EX  B, p. 2 of 13**

9)    Claimant reasonably believed that Merrill would not terminate his employment "for cause" unless he engaged in one of these inappropriate acts, or an act or acts of similar severity. Claimant clearly did not violate any of the above listed "inappropriate actions".

10)    Claimant's U-5 states *"Mr. Knight was terminated on July 26, 2002, after it was determined that he failed to timely and fully inform management of allegations made by an individual who was not a firm client relating to wrong doing by a firm client"*.

11)    Claimant asserts that that the reason set forth for his termination: that *"he failed to timely and fully inform management"* is factually incorrect, but even if it were correct, it does not meet the burden that each party to the written employment contract *"owed the other a duty of loyalty and a duty to act in good faith"*. What respondents will be unable to demonstrate is that claimant's actions in any way harmed Merrill Lynch, or any of its clients, a most significant point. Further, Merrill Lynch will be unable to provide any back up to prove that what claimant was accused to have done, represented any violation of any policy at Merrill Lynch, thereby rendering his termination as orchestrated in bad faith.

12)    Claimant asserts that the reason for his termination: that *"he failed to timely and fully inform management, management of allegations made by an individual who was not a firm client relating to wrong doing by a firm client"*, fails to meet the standard of "inappropriate actions", provided to claimant in writing by Merrill Lynch, sufficient for dismissal under his contract. Claimant asserts that such an action does not even exist in any Merrill Lynch compliance or other supervisory documentation.

13)    Claimant further asserts that the customs and standards of the securities industry would consider a broker's termination for the reason listed above, just a few months short of claimant's tenth year of employment, qualifying claimant for certain retirement benefits (page 27 of exhibit B) also violates the letter, if not the spirit of claimant's employment contract.

14)    Claimant therefore asserts that Merrill Lynch breached his contract of employment when:

a) it terminated him for an inappropriate action that did not occur,
b) it arbitrarily determined that *"that he failed to timely and fully inform management of allegations made by an individual who was not a firm client relating to wrong doing by a firm client"* was grounds for termination.

4

**Discussion**

Under California law a termination can be wrongful where the termination violates the **covenant of good faith and fair dealing**, which can exist in an employment contract, regardless of whether the contract is express or implied, written or oral. *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654. One term of the implied contract is that claimant would not be terminated except for good cause. "Good cause" has been judicially defined as "*a fair and honest cause or reason, regulated by good faith on the part of the party exercising the power.*" *Pugh v. See's Candies Inc. ("Pugh I")* (1981) 116 Cal.App.3d 311, 330. If the panel determines that respondents' reasons for terminating claimant were "*trivial, capricious, or pre-textual,*" then the termination was not made for a fair and honest cause or reason" *Pugh v. See's Candies, Inc. ("Pugh II")* (1988) 203 Cal.App.3d 743, 769.

The evidence to be presented here will show that respondents did not have good cause to terminate claimant. Indeed, once claimant shows that there was an express employment contract, and that his performance was adequate, the burden falls on respondents to show that they conducted a reasonable investigation and reached an honest belief that that was good cause for terminating claimant. See *Binder v. Aetna* (1999) 75 Cal.App.4th 832 and see also *Cotran v. Rollins Hudig Hall International, Inc.* (1998) 17 Cal.4th 93, 108. Claimant has alleged and will prove that his termination and the subsequent destruction of his career could in no way be considered as reasonable.

Therefore, the terms that each party owes the "*other a duty of loyalty and a duty to act in good faith*" would implicitly be taken to mean that firing any employee for a trumped up charge, destroying a career and made out to be a scapegoat, would violate the first "object and purpose" of NASD's very existence, namely "*...to promote therein high standards of commercial honor, and to encourage and promote among members observance of Federal and State securities laws*". That language, and the language found in claimant's U-4, (item 2) require that each party comply with these NASD rules as they are binding upon all associated persons.

In interpreting a contract, when there is a custom or standard practice in a certain industry, those engaged in that industry are deemed to have contracted in reference to that practice unless the contrary appears. The prevailing industry custom binds those engaged in the business. The industry practice becomes part of the contract, and the evidence of that custom is admissible to supply a missing term or to aid in interpretation if it does not alter or vary the terms of the contract. *Midwest Television, Inc. v. Scott, Lancaster, Mills & Atha, Inc.* (1988) 205 Cal. App. 3d 442; see also *Elite Show Services, Inc. v. Staffpro, Inc.*, (2004) 119 Cal. App. 4th 263. No sane associated person would knowingly work for Merrill Lynch, or any other brokerage company, if they knew that that firm routinely terminated individuals without cause, or for a trumped up cause. That is the industry standard and without that, no one could build a career in the securities industry.

Merrill Lynch has stonewalled claimant on discovery. It has refused to provide discovery for a number of reasons, but perhaps one of the reasons is because the evidence may show that Merrill Lynch likely knew about the problems regarding Steve Fertitta, a Merrill Lynch client, stealing money from his clients and depositing these monies in his Merrill Lynch account, back in October 2001, long before claimant was alleged to have failed to notify Merrill Lynch in a timely manner of a non client's problem (April 2002). Claimant believes that because the first suit involving Mr. Fertitta stealing from his clients was filed in Santa Clara County Superior Court in October 2001, by Dr. Siegel's brother, the victim referred to as the non Merrill client on Claimant's U-5. If this is indeed the case, then Merrill Lynch has lied to claimant and lied to this panel about the reasons for terminating claimant, apart from what has already been stated in the pleadings.

Claimant had a written employment contract the terms of which were violated, namely, that each party owed the *"other a duty of loyalty and a duty to act in good faith"*. Merrill Lynch made a number of promises in that agreement (first paragraph) that include *"the supervision of my career"*. Claimant alleges that supervising his career does not imply or provoke the termination and destruction of his career for pre textual reasons. In California parties have four years in which to file a claim for breach of written contract. Claimant was terminated on July 26, 2002, and filed this claim on July 20, 2006, clearly inside of four years. Respondents' motion that this claim be dismissed because it is time barred is incorrect and should be denied.

Respectfully submitted,

Richard Sacks
Securities Arbitration Consultant

Timothy A. Canning
Attorney for Claimant

Enclosures

cc:    Patricia Bailey Tsipras, Esq.

# Exhibit A

# FINANCIAL CONSULTANT

# EMPLOYMENT AGREEMENT AND RESTRICTIVE COVENANTS

In consideration of Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch") employing me; compensating me; providing to me employment related benefits; training me; sponsoring me for the General Securities Examination; registering me with various exchanges; licensing me in various states; providing me with office facilities and sales support; executing, processing and clearing transactions; providing research and investment recommendations; supervising the development of my career; and other good and valuable consideration, the adequacy, sufficiency and receipt of which is hereby acknowledged, and intending to be legally bound, I hereby agree that:

1.    All records, whether original, duplicated, computerized, memorized, handwritten, or in any other form, and all information contained therein, including names, addresses, phone numbers, and financial information of any account, customer, client, customer lead or prospect ("Account"), are confidential and are the sole and exclusive property of Merrill Lynch. This information, whether provided to me by Merrill Lynch or by any Account, is entrusted to me as an employee and sales representative of Merrill Lynch. I will not use this information or remove any such records from the Merrill Lynch office except for the sole purpose of conducting business on behalf of Merrill Lynch. I agree not to divulge or disclose this information to any third party and under no circumstances will I reveal or permit this information to become known by any competitor of Merrill Lynch either during my employment or at any time thereafter.

This information is extremely valuable to Merrill Lynch and Merrill Lynch takes all reasonable measures to maintain its confidentiality and to guard its secrecy. This information is not generally known outside Merrill Lynch and within Merrill Lynch this information is confidential and used only on a "need to know" basis. This information is developed and acquired by great expenditures of time, effort, and money. This information is unique and cannot be lawfully duplicated or easily acquired. Consequently, I agree that these records and the information contained therein are the property of Merrill Lynch and are deserving of trade secret status and protection.

2.    If, at any time, I resign from Merrill Lynch, provoke my termination, or am terminated for cause, I agree that for a period of one year following my termination I will not solicit by mail, by phone, by personal meeting, or by any other means, either directly or indirectly, any Account whom I served or whose name became known to me during my employment at Merrill Lynch in any office and in any capacity. My agreement "not to solicit" means that I will not, during my employment and for a period of one year thereafter, initiate any contact or communication, of any kind whatsoever, for the purpose of inviting, encouraging or requesting any Account:

    (a)    to transfer from Merrill Lynch to me or to my new employer, or

    (b)    to open a new account with me or with my new employer, or

    c)    to otherwise discontinue its patronage and business relationship with Merrill Lynch.

TSJM

ML RK 00001

3.      I agree that at all times during my employment I owe Merrill Lynch a duty of loyalty and a duty to act in good faith. I agree that during my employment I will not individually, or in combination with any other employee or competitor of Merrill Lynch, violate or breach the terms of this agreement.

4.      In the event I breach any of the covenants of paragraphs 1, 2 or 3, I agree that Merrill Lynch will be entitled to injunctive relief. I recognize that Merrill Lynch will suffer immediate and irreparable harm and that money damages will not be adequate to compensate Merrill Lynch or to protect and preserve the status quo. Therefore, I CONSENT TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER or A PRELIMINARY or PERMANENT INJUNCTION ordering:

      (a)      that I immediately return to Merrill Lynch all records whether original, duplicated, computerized, handwritten, or in any other form whatsoever, and that I be enjoined and restrained from using or disclosing any information contained in such records; and

      (b)      that, for a period of one year, I be enjoined and restrained from soliciting any Account whom I served or whose name became known to me while employed by Merrill Lynch, in any office and in any capacity; and

      (c)      that I be further enjoined and restrained, for a period of one year, from accepting business from any Account who was solicited in violation of paragraph 2 or whose records and information was used in violation of paragraph 1.

      The above restraints shall apply to each and every Account whom I served or whose name became known to me while employed at Merrill Lynch, in any office and in any capacity, including without limitation, reassignments, walk-ins, call-ins, write-ins, transfers, referrals, prospects, cold-calls, seminars, mailers, lead lists, and etc. During my employment, some of the accounts I expect to develop and acquire are likely to be those of individuals I knew or was familiar with prior to joining Merrill Lynch ("Prior Acquaintances"). Nevertheless, because I will be acting as a representative of Merrill Lynch and I will be utilizing and benefiting from Merrill Lynch's goodwill, reputation, name recognition, and other assets and resources, I further agree that the Accounts of such Prior Acquaintances will be subject to the same restraints as all the other Accounts. The only exception will be my family and relatives.

5.      For the purposes of paragraph 4, I agree to submit to, and confer exclusive jurisdiction on, the United States District Court or the State Court which has original jurisdiction for judicial district or county in which I last worked for Merrill Lynch. This Agreement shall be construed, governed by, and enforced in accordance with the laws of said jurisdiction.

6.      If after issuance of a TEMPORARY RESTRAINING ORDER or a PRELIMINARY or PERMANENT INJUNCTION, the parties voluntarily agree, or are ordered, to arbitrate a dispute arising out of this Agreement, each party agrees and demands that any such arbitration be conducted in strict compliance with the applicable written

*continued*

ML RK 10002

Rules of Arbitration, as published, amended, effective, and in force at the time of my termination. The parties further agree that any Order of the Court shall stay in full force and effect until a Panel of Arbitrators can be properly constituted in accordance with the above referenced written Rules of Arbitration and until said Panel renders a full and final decision.

7.      NOTHING HEREIN IS A PROMISE OF EMPLOYMENT FOR A FIXED TERM. MERRILL LYNCH MAY TERMINATE MY EMPLOYMENT FOR ANY REASON OR FOR NO REASON, JUST AS I MAY RESIGN AT ANY TIME.

8.      I HAVE READ AND REVIEWED THIS EMPLOYMENT AGREEMENT AND RE-STRICTIVE COVENANTS IN ITS ENTIRETY. I HAVE BEEN GIVEN AN OPPORTUNITY TO ASK MERRILL LYNCH QUESTIONS ABOUT IT. I HAVE ALSO BEEN GIVEN AN OPPORTUNITY TO CONSULT WITH AN ATTORNEY OF MY CHOICE. I FULLY UNDER-STAND THE TERMS OF THIS DOCUMENT AND KNOWINGLY AND FREELY AGREE TO ABIDE BY THEM.

IN ADDITION TO THE FOREGOING, I UNDERSTAND THAT I HAVE AN ADDITIONAL THIRTY DAYS FROM THE DAY I SIGN THIS AGREEMENT TO CONTINUE TO REVIEW IT AND SEEK LEGAL COUNSEL. AT ANY TIME WITHIN THIS THIRTY DAYS, I MAY RESCIND THIS AGREEMENT BY DISCONTINUING MY EMPLOYMENT WITH MERRILL LYNCH WITHOUT ANY OF THE PROVISIONS HEREIN BEING ENFORCED AGAINST ME. TO THE CONTRARY, HOWEVER, IF I CONTINUE MY EMPLOYMENT WITH MERRILL LYNCH BEYOND SAID THIRTY DAYS, MY CONTINUATION OF EMPLOYMENT WILL CONSTITUTE MY RATIFICATION AND COMPLETE ACCEPTANCE OF THE TERMS OF THIS AGREEMENT.

Date:      09-09-92

_Robert J. Knight_
Financial Consultant

Date:      9-16-92

_R. Carminiti_
For Merrill Lynch, Pierce,
Fenner & Smith Inc.

ML RK 00003

# Exhibit B

*Working
At
Merrill Lynch:*

*An
Employee's
Guide*

Leaving Merrill
Lynch

## Resignation

If for any reason you plan to resign, please talk it over with your supervisor or manager before making a final decision. The talk may be helpful to you both; many problems can be resolved through such a discussion.

If you definitely decide to leave, submit a formal letter of resignation to your department or office manager at least two weeks in advance of your departure. The letter should include your reasons for leaving the firm.

## Termination

When the firm finds it necessary to release an employee, the individual is informed by the supervisor or manager. During this meeting, the reasons for release should be discussed and the benefits to which the employee may be entitled should be explained.

Specific inappropriate actions that may lead to immediate discharge include but are not limited to:

- theft;

- unprovoked threats to anyone during working hours or on Merrill Lynch premises;

- refusal to follow management's directions;

- damaging Merrill Lynch property;

- proof or admission of any crime that presents a substantial risk of injury to any person or to Merrill Lynch;

- falsely filling out pre-employment or employment forms;

- possession, sale, use or purchase of illegal drugs or marijuana;

- selling or distributing material (except United Way, U.S. Savings Bond and Merrill Lynch Blood Drive) during working hours or on Merrill Lynch premises;

EG - 1/90

- failure to qualify for a fidelity bond from a private, public, or government source; and

- misinforming management about the reason for an absence.

**Staff Reduction**

In some rare cases, jobs may be discontinued due to certain business conditions. However, termination will only occur as a last resort. If you are released, you may be eligible to receive salary continuation according to your length of service. Any such payment programs vary according to business conditions.

**Retirement**

Generally, once you have completed 10 years of service, you may elect to retire at age 55 or later. Please refer to the Retirement section of this manual for further information.

28

EG - 1/90

**Award**
**NASD Dispute Resolution**

In the Matter of the Arbitration Between:
Robert J. Knight, Claimant v. Merrill Lynch, Pierce, Fenner & Smith Incorporated, Patricia Gail Williams and George Scott Ralston, Respondents

<u>Case Number</u>:  06-03430                        <u>Hearing Site</u>:  San Francisco, California

Nature of the Dispute:  Associated Person vs. Member and Associated Persons

## <u>REPRESENTATION OF PARTIES</u>

For Claimant:                                    Timothy A. Canning, Esq.
                                                 Attorney At Law
                                                 Novato, California

For Respondents:                                 Patricia Bailey Tsipras, Esq.
                                                 Rubin, Fortunato & Harbison P.C.
                                                 Paoli, Pennsylvania

## <u>CASE INFORMATION</u>

Statement of Claim filed:  July 20, 2006

First Amended Statement of Claim filed:  March 23, 2007

Claimant's Opposition to Respondents' Motion to Dismiss filed:  December 18, 2006

Claimant's Uniform Submission Agreement signed:  July 6, 2006

Joint Statement of Answer of Respondents Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch"), Patricia Gail Williams and George Scott Ralston filed: October 2, 2006

Respondents' Motion to Dismiss filed:  October 25, 2006

Respondents' Reply in Support of Their Motion to Dismiss filed:  December 29, 2006

Respondents' Supplemental Brief in Support of Their Motion to Dismiss filed:  March 23, 2007

*EX C, p. 1 of 9*

NASD Dispute Resolution
Arbitration No. 06-03430
Award  Page 2 of 6

Respondents' Answer and Affirmative Defenses to Claimant's Amended Statement of Claim filed:  April 2, 2007

Respondent Merrill Lynch's Uniform Submission Agreement signed:  August 12, 2006

Respondent Patricia Gail Williams' Uniform Submission Agreement signed:  September 28, 2006

Respondent George Scott Ralston's Uniform Submission Agreement signed: September 14, 2006

## CASE SUMMARY

Claimant alleged wrongful termination with respect to his employment with Merrill Lynch. Claimant also alleged discharge in breach of implied contract, breach of the covenant of good faith and fair dealing, tortious discharge in violation of public policy, defamation and trade libel, intentional infliction of emotional distress and intentional interference with prospective economic advantage.

Respondents denied Claimant's allegations of wrongdoing and denied any liability to Claimant. Respondents also asserted affirmative defenses.

## RELIEF REQUESTED

Claimant requested the following relief:
1. As to all Respondents, for compensatory damages, including lost wages and benefits, $800,000.00 in specific forfeited benefits and $1,700,000.00 for lost wages to date, or that amount proven at hearing;
2. As to all Respondents, $7,500,000.00 or that amount Claimant would have reasonably earned over the remainder of his career, based upon his partnership, and the present value of over $500,000,000.00 in client assets under management at the time of his termination;
3. As to all Respondents, for emotional distress, an amount this Panel deems appropriate, according to proof;
4. As to punitive damages, an amount this Panel deems appropriate;
5. Reimbursement of the reasonable costs associated with the prosecution of this matter, including expert witness fees, attorney fees, and arbitration fees in the arbitrators' discretion; and
6. Such other and further relief that the arbitrators consider proper.

Respondents requested that Claimant's claims be denied in their entirety and that Respondents be awarded all other relief that the Panel deems reasonable and appropriate under the circumstances presented in this proceeding.

NASD Dispute Resolution
Arbitration No. 06-03430
Award   Page 3 of 6

## <u>OTHER ISSUES CONSIDERED AND DECIDED</u>

On January 15, 2007, the Panel permitted Claimant to amend his claim to assert discharge in breach of a written contract.

The Panel agreed that the Award in this matter may be executed in counterpart copies or that a handwritten, signed Award may be entered.

## <u>AWARD</u>

After considering the pleadings, and positions of the parties relative to Respondents' Motion to Dismiss, the Panel decided in full and final resolution of the issues submitted for determination as follows:

1.      Respondents' Motion to Dismiss, with prejudice, the claims filed by Claimant Robert J. Knight in his initial Statement of Claim and in his Amended Statement of Claim is Granted. Accordingly, all claims by Claimant, including the claim for punitive damages, are dismissed.

NASD Code of Arbitration Procedure Rule 10304 expressly contemplates the applicability of California Statutes of Limitation. Claimant filed his initial claim with NASD Dispute Resolution within four years of his termination, but more than three years after his termination. Mr. Knight claims Wrongful Termination, Violation of Public Policy, Defamation and Trade Libel, Intentional Infliction of Emotional Distress, and Intentional Interference with Prospective Economic Advantage. With the exception of a claim founded on a written contract, all of Mr. Knight's claims are time-barred.

California Code of Procedure Section 337 provides that an action upon any contract, obligation or liability founded upon an instrument in writing must be filed within four years. None of the writings submitted by Claimant in support of his claim expressly provides for a cause of action for breach of his employment agreement. Mr. Knight's claim rests on implicit provisions of his employment agreement and other documents; implicit agreements are not written agreements and therefore are not within the scope of CCP 337.

2.      Each party shall bear its own costs, including attorney's fees.

3.      All other relief requested and not expressly granted is denied.

*EX C, p. 3 of 9*

NASD Dispute Resolution
Arbitration No. 06-03430
Award   Page 4 of 6

## FEES

Pursuant to the Code, the following fees are assessed:

### Filing Fees

NASD Dispute Resolution received or will collect the non-refundable filing fees for each claim as follows:

| | |
|---|---|
| Initial claim filing fee | = $600.00 |

### Member Fees

Member fees are assessed to each member firm that is either a party in the matter or an employer of a respondent associated person at the time of the events that gave rise to the dispute, claim, or controversy.  Accordingly, Merrill Lynch is a party and the following fees are assessed:

| | |
|---|---|
| Member Surcharge | = $3,350.00 |
| Pre-Hearing Process Fee | = $ 750.00 |
| Hearing Process Fee | = $5,500.00 |
| Total Member Fees | = $9,600.00 |

### Forum Fees and Assessments

The Panel assessed forum fees for each session conducted or each decision rendered on a discovery-related motion on the papers.  A session is any meeting between the parties and the arbitrator(s), including a pre-hearing conference with the arbitrator(s), that lasts four (4) hours or less.  Fees associated with these proceedings are:

| | | | |
|---|---|---|---|
| (3) Pre-hearing conference sessions with the Panel @ $1,200.00/session | | | = $3,600.00 |
| Pre-hearing conferences: | December 4, 2006 | 1 session | |
| | January 15, 2007 | 1 session | |
| | May 10, 2007 | 1 session | |

| | |
|---|---|
| **Total Forum Fees** | = **$3,600.00** |

The Panel assessed the $3,600.00 in forum fees to Respondent Merrill Lynch.

NASD Dispute Resolution
Arbitration No. 06-03430
Award   Page 5 of 6

## Fee Summary

1. Claimant Robert J. Knight is charged with the following fees and costs:

   Initial Filing Fee pursuant to Armendariz v. Foundation
   Health Psychcare Services, Inc. 24 Cal.4th 83     = $    200.00

   Less Payments     = $( 3,700.00)

   **Refund Due Claimant**     = $( 3,500.00)

2. Respondent Merrill Lynch is charged with the following fees and costs:

   Balance due for Claimant's Filing Fee pursuant to
   Armendariz v. Foundation Health Psychcare
   Services, Inc. 24 Cal.4th 83     = $    400.00

   Member Fees     = $ 9,600.00

   Forum Fees     = $ 3,600.00

   Total Fees     = $ 13,600.00

   Less Payments     = $( 9,600.00)

   **Balance Due NASD Dispute Resolution**     = $ 4,000.00

All balances are payable to NASD Dispute Resolution and are payable upon the receipt
of the Award pursuant to Rule 10330(g) of the Code.

*EX C, p. 5 of 9*

NASD Dispute Resolution
Arbitration No. 06-03430
Award  Page 6 of 8

## ARBITRATION PANEL

| Thomas D. Reese | - | Public Arbitrator, Presiding Chair |
| Michael Garcia | - | Public Arbitrator |
| Linda H. Perry-Cabrera | - | Non-Public Arbitrator |

### Concurring Arbitrators' Signatures

_Thomas D Reese_

Thomas D. Reese
Chair, Public Arbitrator

5/17/07
Signature Date

_____
Michael Garcia
Public Arbitrator

_____
Signature Date

_____
Linda H. Perry-Cabrera
Non-Public Arbitrator

_____
Signature Date

05/18/07
Date of Service

*EX  C, p. 6 of 9*

NASD Dispute Resolution
Arbitration No. 06-03430
Award  Page 6 of 6

## ARBITRATION PANEL

Thomas D. Reese        -        Public Arbitrator, Presiding Chair
Michael Garcia         -        Public Arbitrator
Linda H. Perry-Cabrera -        Non-Public Arbitrator

## Concurring Arbitrators' Signatures

Thomas D. Reese
Chair, Public Arbitrator

_____        _____
                               Signature Date

*Michael Garcia* (signature)        *May 17, 2007* (signature)
Michael Garcia                 Signature Date
Public Arbitrator

_____        _____
Linda H. Perry-Cabrera         Signature Date
Non-Public Arbitrator

                               05/18/07
                               _____
                               Date of Service

*EX C, p. 7 of 9*

NASD Dispute Resolution
Arbitration No. 06-03430
Award   Page 5 of 6

## ARBITRATION PANEL

Thomas D. Reese          -          Public Arbitrator, Presiding Chair
Michael Garcia           -          Public Arbitrator
Linda H. Perry-Cabrera   -          Non-Public Arbitrator

### Concurring Arbitrators' Signatures

_____                    _____
Thomas D. Reese                             Signature Date
Chair, Public Arbitrator


_____                    _____
Michael Garcia                             Signature Date
Public Arbitrator

_____                    _5/17/07_____
Linda H. Perry-Cabrera                      Signature Date
Non-Public Arbitrator

                                            _5/18'07_____
                                            Date of Service



# Proof of Service

State of California, County of Los Angeles

I am employed in the county of Los Angeles. I declare that I am over the age of eighteen (18) and not a party to this action. My business address is:

**NASD Dispute Resolution**
**300 South Grand Avenue, Suite 900**
**Los Angeles, California 90071**

On May 18, 2007, I served the following documents described as:

**Award, Cover Letters, and Invoice Statement for Arbitration Case No. 06-03430** on the interested parties in this action by placing the true copies thereof enclosed in the sealed envelopes as follows:

Timothy A. Canning, Esq., Attorney At Law, Two Commercial Blvd., Suite 203, Novato, CA 94949; Fax number: 415-382-9421

Patricia Bailey Tsipras, Esq., Rubin, Fortunato & Harbison P.C., 10 South Leopard Road, MCS Building, Suite 202, Paoli, PA 19301; Fax number: 610-854-4301

⊠   I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

☐   By Personal Service, I caused such envelope to be delivered by hand to the individuals at the addressee(s) listed.

☐   By overnight courier, I caused the above-referenced documents to be delivered to an overnight courier service (Federal Express), for delivery to the above addressees.

⊠   By facsimile machine, I caused the above-referenced documents to be transmitted to the above-named persons at the numbers above.

⊠   (STATE) I declare under penalty of perjure under the laws of the State of California that the above is true and correct.

☐   (FEDERAL) I declare that I am employed in the office of a member of the bar on this court at whose direction the service was made.

Executed this May 18, 2007, at Los Angeles, California.

*Rosemenie Famos*

Rosemenie Famos

*EX C, p. 9 of 9*