# EXHIBIT 12



January 2007

# The Arbitrator's Manual

A publication of the Securities
Industry Conference on Arbitration

6 — 7

2. Arbitrator or any member, shareholder, or associate of, or of counsel to his or her law firm has been in the relation of attorney and client with, or adverse to, any party within three (3) years of the filing of the arbitration claim.

3. The arbitrator is currently a party to or the subject of a complaint, arbitration, or litigation involving a securities investment.

**Financial Interest**

Arbitrator knows that she/he has, individually or as a fiduciary, or her/his spouse or minor child residing in her/his household has a financial interest in the subject matter in controversy or in a party to the arbitration proceeding, or any other interest that could be substantially affected by the outcome of the arbitration proceedings.

Should information regarding an arbitrator be disclosed during the course of a hearing that was not disclosed previously, a party may challenge the arbitrator for cause. The arbitrator should then consider withdrawing in accordance with Canon II of the Code of Ethics. Arbitrators should not feel offended if they are challenged on a particular case since challenges are generally not based on the ability or competence of an arbitrator.

## The Party Who Is Not Represented by Counsel

Arbitrators should be sensitive to a party who is not represented by counsel. This individual most likely will not be experienced in either litigation or the arbitration process and will usually need some guidance from the panel. The panel should use its judgment to determine how much guidance to provide such a party. Although the panel at all times must be careful to maintain its

neutrality, it must often take an active role in such cases. The panel may at times find it helpful to:

- explain the purpose of an opening statement,

- assist the party in maintaining proper focus during the hearing,

- remind the party that cross examination should consist of specific questions, or ensure that the party has had an opportunity to present all evidence.

All efforts to assist a party should be balanced against the need to remain impartial.

## Representation by Counsel

Parties need not be represented by an attorney in arbitration. They may choose to appear pro se (on their own) or be represented by a person who is not an attorney, such as a business associate, friend, or relative. The attorney-client privilege does not attach to communications between a party and a non-attorney representative. The Uniform Code grants parties the absolute right to representation by counsel at any stage of the proceeding. If a party decides during the course of a hearing that he or she wants to obtain legal representation, an adjournment should be granted to permit counsel to appear. Parties sometimes decide to change counsel during the course of a proceeding. Generally, the arbitrators should permit such changes.

## Prehearing Motions

Although arbitration is an informal process, a variety of matters may be the subject of prehearing motions, such as the appropriateness of arbitration, hearing locale, and postponements.

8

9

## Motions Regarding the Appropriateness of Arbitration

Any party may challenge the appropriateness of arbitration. A party may request that the arbitrators dismiss the arbitration and refer the parties to their remedies at law. One type of case that may be appropriate for such a dismissal is a case in which claims are asserted against parties who have not agreed to arbitrate. Since such parties may not agree to participate in arbitration, a referral to legal remedies may avoid multiple proceedings and ultimately conserve legal resources.

## Motions to Dismiss Because of the Passage of Time

The Uniform Code contains an eligibility provision, which states that no dispute, claim, or controversy can be submitted to arbitration if six (6) years have elapsed from the occurrence or event giving rise to the claim. This time period may be extended by court proceedings. The arbitrators should also be aware that a statute of limitations may preclude the awarding of damages even though the claim is eligible for submission to arbitration.

## Motions to Sever or Consolidate Claims or Parties

The Uniform Code provides that the Director may determine preliminarily whether to join, consolidate, or sever various arbitration matters. All final determinations with respect to joinder, consolidation, or severance are made by the arbitration panel. When deciding such motions, arbitrators should consider commonality of time, parties, transactions, issues, or prejudice to any party. Each motion should be decided on its own merits.

The Uniform Code provides that persons may join in one action as claimants if they assert any right to relief jointly, severally, or arising out of the

same transaction, occurrence, or series of transactions or occurrences, and if any questions of law or fact common to all these claimants will arise in the same action. Persons also may be joined as respondents if there is asserted against them jointly or severally any right to relief arising out of the same transaction, occurrence, or series of transactions or occurrences, and if any questions of law or fact common to all respondents will arise in the action.

## Motions to Change the Location of the Hearing

The Director determines the time and place of the initial hearing. Arbitrators decide the time and place of subsequent hearings. The general policy in cases involving customers is to conduct the hearing wherever the customer resided when the dispute arose or in the nearest major city. Parties may argue, however, that a case should be heard at another location based on the location of witnesses and documents and the convenience of the parties. Arbitrators always have the authority to change the location of a hearing.

## Motions to Bar a Responding Party from Presenting Any Facts or Defenses

The Uniform Code provides that any responding party who pleads only a general denial, who fails to specify all available defenses, or who fails to answer, may, upon written objection, be barred from presenting any facts or defenses at the time of the hearing. All parties should be given an opportunity to respond to such an application before the arbitrators bar the presentation of facts and defenses. Arbitrators should review the case history carefully when considering such a request. The prejudice to a party who has not received a timely answer should be weighed against the prejudice to a party who will be precluded from asserting any facts and/or defenses at the hearing.

12

The arbitrator(s) may request that the full panel be convened to decide prehearing issues. Some arbitrators desire to make these decisions with the benefit of the expertise of their colleagues who will be rendering the final decision.

Arbitrators presiding at prehearing conferences, or when called on to decide discovery disputes, should always give consideration to the arguments put forth by both sides, as well as the relevancy of the documents or information. They should not simply grant a request for the production of a document because it is listed above nor deny the request because it is not listed.

## Discovery

The effective use of discovery tools such as depositions rests in the careful exercise of judgment by the arbitrators. Care should be taken to avoid unnecessary expense or burdens to the parties and to avoid unnecessary delay. It is appropriate for arbitrators to consider whether the witness will be able to appear at the arbitration hearing, the necessity of preserving the witness's testimony, and other factors that bear on the efficiency and fairness of the proceeding. Once a deposition is ordered by the arbitrator(s) or agreed to by the parties, the deposition or excerpts therefrom may be offered into evidence by any party. If the offered portion of the deposition includes an objection to testimony by a party, the arbitrator(s) must rule on the objection.

Consideration should be given to the type of controversy and the issues involved in a particular case. Before ordering that a party produce a particular document, the arbitrator(s) should weigh a party's ability to fully develop his/her case against the reasonableness of the burden to produce the document. The arbitrator(s) may limit, as appropriate, the time periods of the documents covered by the order to the relevant time periods in the case.

13

## Discovery Guide

In October 1999, the National Association of Securities Dealers, Inc. (NASD®) made available a *Discovery Guide* (Guide) for use in customer cases. The Guide was the result of a consensus reached by a multi-partisan task force convened by the NASD. Although the Guide is not incorporated into the Code, it does provide expanded guidance to the parties and the arbitrators, and is aimed at expediting the arbitration process.

The Guide, which includes Document Production Lists, provides to parties in NASD arbitrations guidance on which documents they should exchange without arbitrator or staff intervention, and guidance to arbitrators in determining which documents customers and member firms or associated persons are presumptively required to produce in customer arbitrations. The Guide also discusses additional discovery requests, information requests, depositions, admissibility of evidence, and the use of sanctions.

The Guide is not intended for use in simplified arbitration proceedings. However, the arbitrator may, in his or her discretion, choose to use relevant portions of the Guide in a manner consistent with the expedited nature of simplified proceedings.

Prehearing conferences to resolve discovery disputes are becoming more numerous and time consuming. The same issues repeatedly arise. The following documents frequently have been produced by parties or ordered produced by arbitrators, where relevant, in other cases. This list is neither exhaustive nor are all of the documents necessary to every case.

18

On completion of the prehearing conference, the arbitrator should advise the staff of his or her decision on the preliminary issues, the stipulations, and any other matters. The staff will record the results of the prehearing conference and submit it for signature to the arbitrator and/or the parties where appropriate.

## Arbitrators' Power to Issue Orders

An arbitrator may be requested to issue a subpoena directing the appearance of a witness and/or the production of documents. This request will be communicated to the arbitrator with the subpoena and any other relevant materials.

The arbitrators may also direct the appearance of a member or an employee of any member firm of an SRO and direct that a member or member firm produce any documents in its possession or control. Accordingly, arbitrators may consider using an Order of Production or Appearance in lieu of a subpoena if the party being directed to produce is a member or person associated with a member. Failure to honor an order of an arbitrator may subject a member or person associated with a member to disciplinary action.

The arbitrator should read all the materials supplied as well as the pleadings in the case before executing the subpoena. The arbitrator should consider the propriety and relevance of the materials requested as well as the timeliness of the subpoena request. It is the obligation of the party requesting a subpoena to serve it in accordance with the law. The person on whom the subpoena is served must have a reasonable opportunity to comply with or contest the subpoena.

An arbitrator may decline to issue a subpoena that he or she feels is inappropriate or which may unreasonably delay the hearing.

19

Subsequent to the issuance of a subpoena or order for the production of documents or information, the arbitrator(s) may be advised that the party to which the order was directed has not complied with its terms. Arbitrators have wide discretion in addressing such noncompliance. For example, the arbitrator(s) may draw an adverse inference against any party who did not comply with the order; assess adjournment fees, forum fees, or other costs and expenses, including attorneys' fees, caused by noncompliance; initiate a disciplinary referral in the instance of noncompliance by a member firm or associated person of a member firm; or take other appropriate action to expedite the proceedings or assist any party to develop fully its case. In extraordinary cases the arbitrators may dismiss a claim, defense, or proceeding with prejudice as a sanction for willful or intentional failure to comply with an order of the arbitrators, if lesser sanctions have proven ineffective. Prudent use of the discovery procedures is designed to reduce the prejudice to parties unable to obtain voluntary production of documents and information without imposing undue costs. Arbitrators should generally not allow parties to reargue the merits of the original order when resolving such compliance disputes.

## Before the Hearing

The staff will send the pleadings to the arbitrators upon appointment to a particular case. The arbitrator is required to read the pleadings thoroughly before the hearing begins. While reading the pleadings, the arbitrator should look for any potential conflicts. Arbitrators should know that attorneys are often retained by parties shortly before a hearing commences, creating last-minute conflicts for the arbitrators. Such conflicts should be disclosed immediately.

22 —————————————————————                      ————————————————————— 23

## At the Hearing

The Uniform Code gives the Director the power
to appoint the Chair, unless all parties agree
upon a Chair. The Chair holds a key position in
the conduct of the arbitration and directs the
proceeding. An arbitrator who does not desire
to perform this function should decline the
appointment.

At the beginning of the hearing, the arbitrators,
the parties, and witnesses will be sworn. The
panel should ensure that a verbatim record of
the proceeding is kept.

The Chair will be provided by the staff with a
written opening statement that should be read
into the record after the panel has been sworn.
This statement acknowledges that the arbitrators
have read all the pleadings submitted by the
parties and outlines the manner in which the
hearing should proceed. Among the items
mentioned is the order in which the parties
may make opening and closing statements
and present evidence. At the conclusion of
the hearing, the parties are instructed to leave
together and are advised that they will be
informed of the arbitrators' decision in writing.
This procedure is a guide that should be used
by the Chair. However, it may be modified to
accommodate special circumstances that arise
during a particular hearing.

The Chair should remember that all arbitrators
share an equal status. The Chair should neither
make, nor appear to make, unilateral rulings
on key issues. It is incumbent on the other
arbitrators to call any occurrence of this nature
to the Chair's attention. (See Executive Sessions,
p. 25.)

Each arbitrator should carefully consider requests
made by the parties. Arbitrators should be
guided by the concepts of fairness in determining
what evidence or testimony should be admitted.

When in doubt, rulings are more appropriately
made on the side of allowing rather than
restricting evidence. The panel is not bound by
the Rules of Evidence. (See Admissibility of
Evidence, p. 27.) Each case must be judged solely
on the written and testimonial evidence. Each
arbitrator has a right to question witnesses.
While it is certainly proper for an arbitrator to ask
questions, every effort should be made to avoid
taking over a hearing or becoming an advocate.
Parties and their attorneys should be permitted to
try their own cases. Generally, arbitrators should
refrain from questioning a witness until both
parties have finished their examination.

Arbitrators must always conduct the entire
hearing in a neutral fashion. They should avoid
comments or body language that indicate a
preference for either side. Care should be
exercised, particularly when questioning a
witness, so that the arbitrator does not indicate
disbelief. Grimaces, frowns, or hand signals
should all be avoided. Casual conversations with
parties or counsel should be held to a minimum.
The arbitrators should strive to conduct
themselves appropriately. All parties should be
given a fair opportunity to present their case.

During a hearing, a party may object to an
arbitrator's continued participation. The objection
may arise after a new disclosure is made by an
arbitrator or if a party does not feel it is receiving
a fair hearing. When considering such an
objection the arbitrator should refer to the
guidance under the Code of Ethics for
Arbitrators. (See Appendix A, Code of Ethics for
Arbitrators in Commercial Disputes, Canon II,
Section [E] [1] and [2].)

# EXHIBIT 13

# Rule on Dispositive Motions

Many of these motions may require examination of the facts. Consequently, the panel may defer ruling on any dispositive motion until the panel makes a determination of the relevant facts.

Although arbitration is an informal process, any party may file a *dispositive motion*—that is, a motion to dismiss all or part of a claim—prior to hearing. The most common arguments for dismissing a claim are:

- ✗ Eligibility.
- ✗ Statutes of limitations.
- ✗ Appropriateness of the forum.

We'll review each of these motions separately, beginning with cases eligible for arbitration.

## Eligibility

Generally, a respondent might ask the arbitrators to dismiss a case because of eligibility under Rule 10304 of the Code. Rule 10304 states that no dispute, claim, or controversy shall be eligible for submission to arbitration where six years have elapsed from the occurrence or event giving rise to the dispute.

*Although the six-year eligibility standard resembles a statute of limitations, the standard is separate from any state and federal limitation periods for filing a claim. We will discuss statute of limitations issues shortly.*

"Without prejudice" means that the dismissal does not prohibit the party from seeking another existing legal remedy.

If, in the panel's review of the facts, you conclude a claim was filed after the six-year eligibility cut-off, dismiss the claim without prejudice and refer the parties to their legal remedies. Before you dismiss a claim, however, carefully consider each party's arguments.

If there is a genuine question as to eligibility, ask the parties to brief the issue. You might find that there is a continuing occurrence or event giving rise to the dispute. For example, although a customer purchased stock 10 years ago, you might find that there are allegations of ongoing fraud starting with the purchase, but continuing to date within six years of the date the claim was filed. You may or may not decide to hear this case based on the arguments of the parties.

The panel should review Rule 10304, the pleadings, motions, and responses. If your authority to judge the case is unclear, ask the parties to brief the issue further.

© 2005. NASD Panel Course Preparation Guide. Version 1.3

Module 1: Prepare to Conduct a Fair and Impartial Hearing

Of course, once the panel has made its ruling, inform NASD Dispute Resolution of your decision.

Page 17

Lesson 3: Deliberate on Specific Motions

## Statutes of Limitations

Even when a claim is filed within the six-year eligibility period provided in the Code, federal or state law may still preclude a monetary award for events in that same period of time, or a shorter period.

This time limit—or statute of limitations—depends on the type of allegations and the applicable jurisdiction.

Statutes of limitation can be tolled (extended) either by law or equity. For example, a statute of limitations may be extended if there's evidence of a continuing misrepresentation.

The statute of limitations refers to a prescribed time limit after which a cause of action or claim may not be brought. If the arbitration is brought after the statute of limitations has run and the time period cannot be tolled (extended), the claim should be dismissed with prejudice. Tolling, or the extension of the statute, could occur where you find fraudulent concealment.

Just as we saw with issues of eligibility, respondents may ask NASD Dispute Resolution in its answer to dismiss a case based on the relevant statute of limitations. NASD Dispute Resolution then informs the requesting party that because the motion is substantive and dispositive, it must be heard by the entire panel.

© 2005. NASD Panel Course Preparation Guide. Version 1.3

# EXHIBIT 14

FINANCIAL CONSULTANT

EMPLOYMENT AGREEMENT AND RESTRICTIVE COVENANTS

In consideration of Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch") employing me; compensating me; providing to me employment related benefits; training me; sponsoring me for the General Securities Examination; registering me with various exchanges; licensing me in various states; providing me with office facilities and sales support; executing, processing and clearing transactions; providing research and investment recommendations; supervising the development of my career; and other good and valuable consideration, the adequacy, sufficiency and receipt of which is hereby acknowledged, and intending to be legally bound, I hereby agree that:

      1.    <u>All records</u>, whether original, duplicated, computerized, memorized, handwritten, or in any other form, <u>and all information</u> contained therein, including names, addresses, phone numbers, and financial information of any account, customer, client, customer lead or prospect ("Account"), are confidential and are the sole and exclusive property of Merrill Lynch. This information, whether provided to me by Merrill Lynch or by any Account, is entrusted to me as an employee and sales representative of Merrill Lynch. I will not use this information or remove any such records from the Merrill Lynch office except for the sole purpose of conducting business on behalf of Merrill Lynch. I agree not to divulge or disclose this information to any third party and under no circumstances will I reveal or permit this information to become known by any competitor of Merrill Lynch either during my employment or at any time thereafter.

      This information is extremely valuable to Merrill Lynch and Merrill Lynch takes all reasonable measures to maintain its confidentiality and to guard its secrecy. This information is not generally known outside Merrill Lynch and within Merrill Lynch this information is confidential and used only on a "need to know" basis. This information is developed and acquired by great expenditures of time, effort, and money. This information is unique and cannot be lawfully duplicated or easily acquired. Consequently, I agree that these records and the information contained therein are the property of Merrill Lynch and are deserving of trade secret status and protection.

      2.    If, at any time, I resign from Merrill Lynch, provoke my termination, or am terminated for cause, I agree that for a period of one year following my termination I will not solicit by mail, by phone, by personal meeting, or by any other means, either directly or indirectly, any Account whom I served or whose name became known to me during my employment at Merrill Lynch in any office and in any capacity. My agreement "not to solicit" means that I will not, during my employment and for a period of one year thereafter, initiate any contact or communication, of any kind whatsoever, for the purpose of inviting, encouraging or requesting any Account:

          (a)    to transfer from Merrill Lynch to me or to my new employer, or

          (b)    to open a new account with me or with my new employer, or

          (c)    to otherwise discontinue its patronage and business relationship with Merrill Lynch.

ISJM

ML RK 00001

3.      I agree that at all times during my employment I owe Merrill Lynch a duty of loyalty and a duty to act in good faith. I agree that during my employment I will not individually, or in combination with any other employee or competitor of Merrill Lynch, violate or breach the terms of this agreement.

4.      In the event I breach any of the covenants of paragraphs 1, 2 or 3, I agree that Merrill Lynch will be entitled to injunctive relief. I recognize that Merrill Lynch will suffer immediate and irreparable harm and that money damages will not be adequate to compensate Merrill Lynch or to protect and preserve the status quo. Therefore, I CONSENT TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER or A PRELIMINARY or PERMANENT INJUNCTION ordering:

     (a)      that I immediately return to Merrill Lynch all records whether original, duplicated, computerized, handwritten, or in any other form whatsoever, and that I be enjoined and restrained from using or disclosing any information contained in such records; and

     (b)      that, for a period of one year, I be enjoined and restrained from soliciting any Account whom I served or whose name became known to me while employed by Merrill Lynch, in any office and in any capacity; and

     (c)      that I be further enjoined and restrained, for a period of one year, from accepting business from any Account who was solicited in violation of paragraph 2 or whose records and information was used in violation of paragraph 1.

     The above restraints shall apply to each and every Account whom I served or whose name became known to me while employed at Merrill Lynch, in any office and in any capacity, including without limitation, reassignments, walk-ins, call-ins, write-ins, transfers, referrals, prospects, cold-calls, seminars, mailers, lead lists, and etc. During my employment, some of the accounts I expect to develop and acquire are likely to be those of individuals I knew or was familiar with prior to joining Merrill Lynch ("Prior Acquaintances"). Nevertheless, because I will be acting as a representative of Merrill Lynch and I will be utilizing and benefiting from Merrill Lynch's goodwill, reputation, name recognition, and other assets and resources, I further agree that the Accounts of such Prior Acquaintances will be subject to the same restraints as all the other Accounts. The only exception will be my family and relatives.

5.      For the purposes of paragraph 4, I agree to submit to, and confer exclusive jurisdiction on, the United States District Court or the State Court which has original jurisdiction for judicial district or county in which I last worked for Merrill Lynch. This Agreement shall be construed, governed by, and enforced in accordance with the laws of said jurisdiction.

6.      If after issuance of a TEMPORARY RESTRAINING ORDER or a PRELIMINARY or PERMANENT INJUNCTION, the parties voluntarily agree, or are ordered, to arbitrate a dispute arising out of this Agreement, each party agrees and demands that any such arbitration be conducted in strict compliance with the applicable written

*continued*

ML RK 00002

Rules of Arbitration, as published, amended, effective, and in force at the time of my termination. The parties further agree that any Order of the Court shall stay in full force and effect until a Panel of Arbitrators can be properly constituted in accordance with the above referenced written Rules of Arbitration and until said Panel renders a full and final decision.

7.    NOTHING HEREIN IS A PROMISE OF EMPLOYMENT FOR A FIXED TERM. MERRILL LYNCH MAY TERMINATE MY EMPLOYMENT FOR ANY REASON OR FOR NO REASON, JUST AS I MAY RESIGN AT ANY TIME.

8.    I HAVE READ AND REVIEWED THIS EMPLOYMENT AGREEMENT AND RE-STRICTIVE COVENANTS IN ITS ENTIRETY. I HAVE BEEN GIVEN AN OPPORTUNITY TO ASK MERRILL LYNCH QUESTIONS ABOUT IT. I HAVE ALSO BEEN GIVEN AN OPPORTUNITY TO CONSULT WITH AN ATTORNEY OF MY CHOICE. I FULLY UNDER-STAND THE TERMS OF THIS DOCUMENT AND KNOWINGLY AND FREELY AGREE TO ABIDE BY THEM.

IN ADDITION TO THE FOREGOING, I UNDERSTAND THAT I HAVE AN ADDITIONAL THIRTY DAYS FROM THE DAY I SIGN THIS AGREEMENT TO CONTINUE TO REVIEW IT AND SEEK LEGAL COUNSEL. AT ANY TIME WITHIN THIS THIRTY DAYS, I MAY RESCIND THIS AGREEMENT BY DISCONTINUING MY EMPLOYMENT WITH MERRILL LYNCH WITHOUT ANY OF THE PROVISIONS HEREIN BEING ENFORCED AGAINST ME. TO THE CONTRARY, HOWEVER, IF I CONTINUE MY EMPLOYMENT WITH MERRILL LYNCH BEYOND SAID THIRTY DAYS, MY CONTINUATION OF EMPLOYMENT WILL CONSTITUTE MY RATIFICATION AND COMPLETE ACCEPTANCE OF THE TERMS OF THIS AGREEMENT.

Date:    09-09-92

_Robert J. Knight_
Financial Consultant

Date:    9-16-92

_R J Carmenati_
For Merrill Lynch, Pierce,
Fenner & Smith Inc.

ML RK 00003

# EXHIBIT 15

*Working
At
Merrill Lynch:*

*An
Employee's
Guide*

**Working At Merrill Lynch: An Employee's Guide**

---

**Name** _____

This is your personal copy of *Working at Merrill Lynch: An Employee's Guide*. Because this is the only copy that will be given to you, you may want to write your name in the space provided above.

The material contained in this guide is solely intended as general information for employees. None of its provisions grants a legal right or privilege of any nature to any future or current employee of Merrill Lynch & Co., Inc. and affiliates (hereafter referred to as Merrill Lynch or the firm).

Since employment with the firm is "at will" in all cases, each employee has the right to resign at any time. Conversely, the firm has the right to terminate employees at any time, in its sole discretion, with or without cause.

This guide is subject to periodic change or modification.

EG - 1/90