# APPENDIX A
## IN SUPPORT OF MERRILL LYNCH'S MOTION TO CONFIRM

<u>Case</u>                                                                                    <u>Tab #</u>

<u>Allen v. RBC Dain Rauscher, Inc.</u>,
    No. C06-05163 RJB, 2006 U.S. Dist. LEXIS 27974
    (W.D. Wash. May 9, 2006) ........................................................................ 1

<u>Cartwright v. Roxbury Capital Management, LLC</u>,
    No. 5:06-cv-283-Oc-10GRJ, 2007 U.S. Dist. LEXIS 32656
    (M.D.Fla. May 3, 2007) ............................................................................. 2

<u>Deluxe Lab., Inc. v. International Alliance of Theatrical Stage Employees, Local 683</u>,
    No. CV 01-3469 RJK, 2001 U.S. Dist. LEXIS 18099
    (C.D.Cal. Aug. 30, 2001) .......................................................................... 3

<u>Fortier v. Morgan Stanley DW, Inc.</u>,
    No. C-06-3715 SC, 2006 U.S. Dist. LEXIS 79027
    (N.D.Cal. Oct. 23, 2006) ........................................................................... 4

<u>Goldman, Sachs & Co. v. Patel</u>,
    [no number in original], 1999 N.Y. Misc. LEXIS 681
    (N.Y. Aug. 18, 1999) ................................................................................ 5

<u>Grosso v. Salomon Smith Barney, Inc.</u>,
    No. 03-MC-115, 2003 U.S. Dist. LEXIS 20208 (E.D.Pa. Oct. 24, 2003),
    <u>aff'd</u>, 115 Fed. Appx. 600 (3rd Cir. 2004) ............................................... 6

<u>High Country Linens v. Block</u>,
    No. C 01-02180, 2002 U.S. Dist. LEXIS 16043 (N.D.Cal. 2002) ................... 7

<u>Katz v. Round Hill Securities, Inc.</u>,
    No. C 05-1453 PJH, 2005 U.S. Dist. LEXIS 37288
    (N.D.Cal. Sept, 16, 2005) ......................................................................... 8

<u>Keiser v. Lake County Superior Court</u>,
    No. C05-02310MJJ, 2005 U.S. Dist. LEXIS 40378
    (N.D.Cal. Dec. 12, 2005) ........................................................................... 9

<u>Perna v. Barbieri</u>,
    No. CIV 97-5943, 1998 U.S. Dist. LEXIS 5365 (E.D.Pa. Apr. 16, 1998),
    <u>aff'd</u>, 176 F.3d 472 (3rd Cir. 1999)........................................................... 10

1

2

Randell v. Levi Strauss & Co.,
    No. C 05-1047 CW, 2006 U.S. Dist. LEXIS 32177
    (N.D.Cal. May 12, 2006) ................................................................................. 11

3

4

5

The Edward Mellon Trust v. UBS PaineWebber, Inc.,
    No. 2:06-cv-0184, 2006 U.S. Dist. LEXIS 80922
    (W.D.Pa. Nov. 6, 2006) ................................................................................. 12

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Appendix A in Support of Merrill Lynch's Motion to Confirm – CV 07-02753 SC

1

2 of 2 DOCUMENTS

**BURRELL MARSH ALLEN and HELEN ALLEN, Petitioners, v. RBC DAIN RAUSCHER, INC. and ROBERT LANCE POSNER, Respondents.**

Case No. C06-5163 RJB

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON

*2006 U.S. Dist. LEXIS 27974*

May 9, 2006, Decided
May 9, 2006, Filed

**CORE TERMS:** arbitration panel, arbitration, manifest, arbitration award, arbitrator, statute of limitations, irrational, pre-hearing, motion to vacate, vacate, Federal Arbitration Act, breach of contract, oral argument, six-year, statement of claim, vacating, investor, exceeded, motion to dismiss, misinterpretation, misinterpreted, issuing, interpreting, participated, prevails, arbitrary and capricious, breach of fiduciary duty, arbitration agreement, underlying contract, authority to award

**COUNSEL:** [*1] For Burrell Marsh Allen, Helen Allen, Plaintiffs: Ari Y Brown, BERGMAN & FROCKT, SEATTLE, WA.

For RBC Dain Rauscher Inc., Robert Lance Posner, Defendants: Julie K Thrall, LANE POWELL PC (SEA), SEATTLE, WA.

**JUDGES:** Robert J. Bryan, United States District Judge.

**OPINION BY:** Robert J. Bryan

**OPINION:**

### ORDER DENYING PETITIONERS' MOTION TO VACATE ARBITRATION AWARD

This matter comes before the Court on Petitioners' Motion to Vacate Arbitration Award. Dkt. 2. The court has considered the pleadings filed in support of and in opposition to the motion and the file herein.

### FACTUAL AND PROCEDURAL HISTORY

Petitioners' motion to vacate arises from an arbitration award issued on December 29, 2005, through the National Association of Securities Dealers ("NASD"), in favor of Respondents RBC Dain Rauscher, Inc. ("Dain Rauscher") and Robert Posner. Dain Rauscher is one of the nation's largest securities broker-dealers, with its headquarters in Minneapolis, Minnesota, and branches in Washington State. Among other things, Dain Rauscher is in the business of offering financial advice to private investors regarding stocks, bonds, and similar investments. Mr. Posner was a licensed financial consultant [*2] (i.e., stock broker) working for Dain Rauscher during the period of time pertinent to this dispute. Petitioners Burrell Allen and Helen Allen had an investment account with Dain Rauscher between 1994 and 2002, during which time Mr. Posner provided financial guidance and advice to Mr. and Mrs. Allen as their financial consultant.

The NASD Dispute Resolution program frequently resolves disputes between investors and securities firms by assigning the claim to an arbitration panel. The panel, which usually consists of three members, reviews the evidence and statements by both parties before issuing a final binding decision. Panel members are not necessarily attorneys or former judges with a legal background, and the panel often includes at least one person with investment expertise, such as a former stock broker. The arbitration process is authorized by the underlying contract between an investor and the securities firm, which is usually signed by the investor when the account is opened. Moreover, because the arbitration panel's decision is usually binding on the parties under the terms and conditions of the contract, such decisions are seldom vacated in a court of law. Occasionally, [*3] a court may overturn the arbitration panel's decision when certain criteria are met, such as a manifest disregard of the law, as discussed in greater detail below.

The facts leading up to the NASD Arbitration Award in question can be briefly summarized as follows: Beginning in the late 1990s, Petitioners made several investments through their account at Dain Rauscher that ultimately declined in value. In April 2002, Petitioners transferred their account from Dain Rauscher to another

securities firm, and wrote a letter to Dain Rauscher's compliance department complaining about the losses and demanding their money back. On June 30, 2005, Petitioners filed a Statement of Claim with the NASD Dispute Resolution program, seeking arbitration of their claims. Dkt. 8 at 4. In their Statement of Claim, Petitioners asserted the following causes of action: (1) breach of fiduciary duty, (2) breach of contract, (3) violation of the federal Securities Exchange Act, (4) violation of the Washington Securities Act, (5) negligence, and (6) failure to supervise. *Id.* In their Statement of Claim, Petitioners alleged that their losses were due to Mr. Posner's failure to properly invest their assets, [*4] as well as inappropriate purchases of "B share" mutual funds. *Id.* B share mutual funds are commonly called "back-end"mutual funds because investors are charged a fee when they sell these funds, rather than when they purchase them. Petitioners sought $ 200,000 in compensatory damages, $ 600,000 in punitive damages, and attorney's fees. *Id.*

On August 25, 2005, Respondents Dain Rauscher and Mr. Posner filed a motion to dismiss with the NASD, arguing that Petitioners' claims were time-barred by the applicable statutes of limitations. Dkt. 1(8) at 2-11. Specifically, Respondents argued that each claim was untimely under Washington law, except for the breach of contract claim, which has a six-year statute of limitations pursuant to *RCW 4.16.040*. *Id.* Respondents further argued that the breach of contract claim should be dismissed as "vague and baseless," and as a "failed attempt to create a cause of action that will survive a statute of limitations attack." *Id.* at 3-4. On November 10, 2005, Petitioners filed a response in opposition to Respondents' motion to dismiss. Dkt. 8 at 5. On December 21, 2005, the arbitration panel and the parties participated [*5] in a telephonic pre-hearing conference during which the panel heard oral argument from the parties regarding the motion to dismiss. *Id.*

On December 29, 2005, the arbitration panel issued an Arbitration Award that states (1) Petitioners' claims are dismissed with prejudice, and (2) Petitioners are liable for $ 13,944.60 in attorney's fees and $ 905.61 in costs, pursuant to the Washington State Securities Act. *Id.* at 5-6. In the section of the Arbitration Award entitled "Other Issues Considered and Decided," the award also states: "After due deliberation, the Panel granted Respondents' motion on the grounds that [Petitioners'] claims are barred by applicable statutes of limitation." *Id.* at 5. No other reasons or explanations for the arbitration panel's decision are provided in the Arbitration Award. *Id.* at 4-10.

On March 28, 2006, Petitioners filed this motion to vacate the NASD Arbitration Award in federal court. Dkt. 2. In support of their motion, Petitioners argue that the award should be set aside for the following reasons: (1) the panel exceeded its authority because the arbitration code does not permit summary dismissal, (2) summary dismissal lacks discernable [*6] standards and is therefore arbitrary and capricious, (3) the panel dismissed the statement of claim in manifest disregard of the law by ignoring the applicable statutes of limitations, and (4) the panel awarded attorney's fees in manifest disregard of the law by citing the wrong statute as authority. Dkt. 2(1) at 4-12.

With regard to Petitioners' statute of limitations argument, Petitioners contend that the arbitration panel ignored their breach of contract claim, which has a six-year statute of limitations under *RCW 4.16.040*, and barred as untimely along with the other claims, which have shorter statutes of limitations. A review of the record shows that several transactions, each pertinent to this dispute, occurred within six years of Petitioners' filing date with the NASD. Petitioners also contend that the arbitration panel similarly erred when they dismissed Petitioners' claims for breach of fiduciary duty and violation of NASD rules as barred by the applicable statutes of limitations. With regard to attorney's fees, Petitioners argue that the panel's award of attorney's fees and costs was made in error, because the statute cited in the Arbitration [*7] Award only permits attorney's fees when a plaintiff prevails in a securities law suit, and not when a defendant prevails in a securities law suit. *See RCW 21.20.430(1)* (Securities Act of Washington).

In their Response to the motion to vacate, Respondents advance several arguments in favor of the Arbitration Award, including (1) the arbitration panel found that the breach of contract claim was a veiled attempt at avoiding a statute of limitations problem, and therefore dismissed it on its merits, and (2) the panel may award attorney's fees without an authorizing statute, and therefore the award should stand regardless of whether the panel misinterpreted the statute in question. Dkt. 10 at 2; Dkt. 7(1) at 11-12.

## STANDARDS FOR VACATING OR MODIFYING AN ARBITRATION AWARD

The Federal Arbitration Act (FAA) gives the federal courts a very limited power to review arbitration awards. *See 9 U.S.C. § § 10-11*. The FAA provides that a federal court may vacate an arbitration award (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption by the [*8] arbitrators; (3) where the arbitrators were guilty of misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. *See 9 U.S.C. § 10;*

*Coutee v. Barington Capital Group, L.P., 336 F.3d 1128, 1133 (9th Cir. 2003).* The FAA also sets forth the grounds for modification of an arbitration award, which is permitted (1) where there was an evident material miscalculation of figures, or (2) where the arbitrators have awarded upon a matter not submitted to them. *See 9 U.S.C. § 11.*

Neither *Section 10 of the FAA,* which governs vacation of arbitration awards, nor *Section 11,* which governs modification, expressly provide the courts with the power to vacate or modify an arbitration award on the grounds that the arbitration panel disregarded the law. The Ninth Circuit is one of the circuits that recognize "manifest disregard of the law" as a basis for judicial intervention with an arbitration award. *See G.C. & K.B. Invs., Inc. v. Wilson, 326 F.3d 1096, 1105 (9th Cir. 2003);* [*9] *Todd Shipyards Corp. v. Cunard Line, Ltd., 943 F.2d 1056, 1060 (9th Cir. 1990).* In the Ninth Circuit, a federal court may vacate an arbitration award "*only* if that award is completely irrational, exhibits a manifest disregard of law, or otherwise falls within one of the grounds set forth in [the FAA]." *See Coutee v. Barington Capital Group, L.P., 336 F.3d at 1133* (emphasis in original) (quoting *G.C. & K.B. Invs., Inc. v. Wilson, 326 F.3d at 1105).* Manifest disregard of the facts is not an independent ground for vacatur in this circuit. *See Coutee v. Barington Capital Group, L.P., 336 F.3d at 1133.*

A federal court must confirm arbitration awards even when they are attributable to "erroneous findings of fact or misinterpretations of law." *French v. Merrill Lynch, Pierce, Fenner & Smith, 784 F.2d 902, 906 (9th Cir. 1986)* (quoting *American Postal Workers Union, AFL-CIO v. United States Postal Service, 682 F.2d 1280, 1285 (9th Cir. 1982), cert. denied, 459 U.S. 1200, 103 S. Ct. 1183, 75 L. Ed. 2d 431 (1983)).* "It is not even enough that the [Arbitration] Panel failed to understand or apply [*10] the law. . . An arbitrator's decision must be upheld unless it is completely irrational, or it constitutes a manifest disregard of the law." *French v. Merrill Lynch, 784 F.2d at 906* (citations and notes omitted).

## DISCUSSION

Petitioners' arguments for vacating the NASD Arbitration Award are as follows: (1) the panel exceeded its authority because the arbitration code does not permit summary dismissal, (2) summary dismissal lacks discernable standards and is therefore arbitrary and capricious, (3) the panel dismissed the statement of claim in manifest disregard of the law by ignoring the applicable statutes of limitations, and (4) the panel awarded attorney's fees in manifest disregard of the law by citing the wrong statute as authority. Dkt. 2(1) at 4-12. Each of these arguments will be discussed in turn.

## A. SUMMARY DISMISSAL AND THE NASD ARBITRATION PROCESS

Petitioners' argue that the NASD arbitration panel exceeded its authority by dismissing Petitioners' claims without first holding an evidentiary hearing. In support of their argument, Petitioners cite NASD Code of Arbitration Procedure § 10303(a), which states: "Any dispute, claim or controversy [*11] . . . shall require a hearing unless all parties waive such hearing in writing and request that the matter be resolved solely upon the pleadings and documentary evidence." Petitioners' argument is without merit for two reasons. First, it appears that the parties actually participated in a hearing before a decision was rendered by the arbitration panel. Second, questions of summary dismissal, including when and how it should be rendered, are questions of procedure to be determined by the NASD arbitration panel.

The NASD Uniform Submission Agreement signed by all parties obligates them to conduct the arbitration in accordance with the NASD Code of Arbitration Procedure. The Code, which sets forth the ground rules of arbitration, contains no provisions expressly prohibiting summary dismissal. Moreover, the section of the Code cited by Petitioners, NASD Code of Arbitration Procedure § 10303(a), does not define or explain the term "hearing," which can be interpreted to mean several things. A careful review of the record shows that the arbitration panel held a telephonic "pre-hearing conference" on December 21, 2005, during which the panel *heard oral argument* from the parties regarding [*12] Respondents' Motion to Dismiss. Prior to this conference, both parties submitted several pleadings to the arbitration panel, including Petitioners' Statement of Claim and Respondents' Answer, as well as briefs regarding Respondents' Motion to Dismiss. It appears from the record that the arbitration panel members were well-briefed when they held their conference, at which time they heard oral argument from both parties, deliberated the merits of Respondents' motion, and dismissed all claims in this matter. In other words, the parties participated in a hearing before a decision was reached.

Petitioners are interpreting the NASD Code of Arbitration Procedure to preclude summary dismissal by focusing on the wording of Section 10303(a), and interpreting it to mean that the panel must hold a "hearing," rather than a "pre-hearing conference" in every situation before rendering a decision. However, it is the role of the arbitration panel, not the parties or the Court, to interpret and apply NASD procedural rules to arbitration. NASD Code of Arbitration Procedure § 10324 states that "arbitrators shall be empowered to interpret and determine the applicability of all provisions under this Code [*13] . . ." Moreover, in *Howsam v. Dean Witter Reynolds, Inc., 537*

U.S. 79, 85, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002), the U.S. Supreme Court discussed its reasons for permitting NASD arbitrators to interpret NASD procedural rules:

> [T]he NASD arbitrators, comparatively more expert about the meaning of their own rule, are comparatively better able to interpret and to apply it. In the absence of any statement to the contrary in the arbitration agreement, it is reasonable to infer that the parties intended the agreement to reflect that understanding. And for the law to assume an expectation that aligns (1) decisionmaker with (2) comparative expertise will help better to secure a fair and expeditious resolution of the underlying controversy.

Because it is up to the arbitration panel to interpret the NASD Code of Arbitration Procedure and apply it to the proceedings, the Court declines to take a stance on whether a NASD arbitration panel should or should not allow summary dismissal as a general rule. Nor does the Court take a position on when or how such a decision should be made. Instead, the Court holds that these are procedural questions to be determined by the NASD arbitration panel. Absent [*14] a showing of separate and independent grounds for vacating or modifying an arbitration award under the Federal Arbitration Act, summary dismissal by a NASD arbitration panel is not grounds for vacating or modifying an award.

It should be noted that at least two other federal district courts have held that NASD arbitrators have authority to decide and grant a pre-hearing motion to dismiss, without first holding an evidentiary hearing or allowing discovery. *See Warren v. Tacher, 114 F. Supp. 2d 600, 602 (W.D. Ky. 2000); Griffin Industries, Inc. v. Petrojam Ltd., 58 F. Supp. 2d 212, 219-20 (S.D.N.Y. 1999)* (denying motion to vacate arbitration award based on pre-hearing dismissal of claims, and noting that "arbitrators are not compelled to conduct oral hearings in every case"). Moreover, at least two federal district courts have recognized the authority of NASD arbitrators to decide pre-hearing dismissals for failure to state a claim under the NASD Code of Arbitration Procedure. *See Prudential Securities, Inc. v. Dalton, 929 F. Supp. 1411, 1417 (N.D.Okla. 1996); Max Marx Color & Chemical Co. Employees' Profit Sharing Plan v. Barnes, 37 F. Supp. 2d 248, 250-51 (S.D.N.Y. 1999).* [*15]

It is apparent that Petitioners used the phrase "exceeded their authority" in their motion to vacate because the Federal Arbitration Act allows the Court to vacate an arbitration award when arbitrators have "exceeded their

powers." *See 9 U.S.C. § § 10(a).* The U.S. Court of Appeals for the Ninth Circuit interpreted this portion of the FAA in the following manner:

> We have held that arbitrators "exceed their powers" in this regard not when they merely interpret or apply the governing law incorrectly, but when the award is completely irrational, or exhibits a manifest disregard of law (internal citations and quotations omitted).

*See Kyocera Corp. v. Prudential-Bache T Services, Inc., 341 F.3d 987, 997 (2003).*

It is clear to the Court that the arbitration panel did not exceed its powers by interpreting the NASD Code of Arbitration Procedure to allow dismissal of Petitioners' claims during, or immediately following, the pre-hearing conference. In order to exceed its powers, pursuant to the terminology of the FAA, the arbitration panel would have had to issue a completely irrational award or exhibit a manifest disregard of the law, [*16] which has not occurred in this case.

## B. SUMMARY DISMISSAL IS NOT BY ITSELF ARBITRARY AND CAPRICIOUS; *FIFTH AMENDMENT* DUE PROCESS PROTECTIONS DO NOT APPLY TO PRIVATE ARBITRATION

Petitioners argue at length that if the NASD Code of Arbitration Procedure can be interpreted to allow summary dismissal, then the entire process violates the *Fifth* and *Fourteenth Amendments of the U.S. Constitution* because no standards exist to protect a party from arbitrary and capricious dismissals of claims. Petitioners' argument is without merit.

First and foremost, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. at 83* (quoting *Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960)).* Once the parties have agreed to arbitrate a claim, they are obligated to do so pursuant to the terms of the arbitration provision and the rules of the arbitration organization incorporated by reference in the provision. Unless specified in the arbitration agreement, arbitrators are not required to explain or justify their [*17] decision.

Petitioners' argument that the NASD Code of Arbitration Procedure violates the *Due Process Clause of the Fifth* and *Fourteenth Amendment* fails because the arbi-

tration panel, which often consists of non-attorneys, is not the judiciary and is not bound to the same extent by federal or state statutes and common law when issuing a decision. Rather, the arbitration panel is bound to apply the rules and procedures *previously agreed upon* by the parties. And, in this case, these rules do not require a reasoned opinion, they do not preclude summary dismissal, and they do not require a record of the proceedings that can be reviewed by an "appellate" body. Simply stated, the parties agreed upon the rules ahead of time, the rules provide for a binding decision without a reasoned opinion, and that is what the parties received.

Second, a federal court in this circuit may vacate an arbitration award if the award is completely irrational, or exhibits a manifest disregard of the law, or otherwise falls within one of the grounds set forth in the Federal Arbitration Act. *See Coutee v. Barington Capital Group, L.P., 336 F.3d at 1133* (quoting *G.C. & K.B. Invs., Inc. v. Wilson, 326 F.3d at 1105*). [*18] Parties to an arbitration are therefore not without due process in the court system. They are, however, bound to a large extent by the provisions in their contract and by the Federal Arbitration Act itself, which has been repeatedly upheld by the U.S. Supreme Court. The FAA specifically prevents the Court from reviewing an arbitration award on its merits, and only allows the Court to intervene under very limited circumstances, none of which exist in this case. Therefore, Petitioners have not been denied their due process rights, they have only been held to the terms of their contract, which can hardly be seen as unfair under the circumstances.

In sum, the *Fifth* and *Fourteenth Amendments of the U.S. Constitution* guarantee due process through the public court system, but not in private arbitration, which is governed by the terms of the arbitration agreement. To hold otherwise would prohibit parties from entering into contracts to arbitrate disputes on their own terms, which is one of the primary reasons that arbitration exists.

## C. STATUTE OF LIMITATIONS AND MANIFEST DISREGARD OF THE LAW

Petitioners argue that the NASD arbitration panel dismissed several of their claims as [*19] barred by the applicable statutes of limitations in manifest disregard of the law. In support of their argument, Petitioners cite the portion of the NASD Arbitration Award that states "After due deliberation, the Panel granted Respondents' motion on the grounds that [Petitioners'] claims are barred by applicable statutes of limitation." Dkt. 8 at 5. Petitioners argue that the panel erred in its decision because (1) Petitioners' claim for breach of contract has a six-year statute of limitations under both Washington and Minnesota law, (2) their claim for breach of fiduciary duty has a six-year statute of limitations under Minnesota law, and

(3) their claim alleging violation of NASD and NYSE "exchange rules" has a six-year statute of limitations under NASD Code of Arbitration Procedure § 10304. Petitioners' correctly point out that several of the disputed investments were purchased and/or sold within six years of Petitioners' filing date with the NASD. It should be noted that the underlying contract is governed by Minnesota law, and the parties have cited both Washington and Minnesota law in their briefs.

In the Ninth Circuit, a federal court may vacate an arbitration award " [*20] *only* if that award is completely irrational, exhibits a manifest disregard of law, or otherwise falls within one of the grounds set forth in [the FAA]." *See Coutee v. Barington Capital Group, L.P., 336 F.3d at 1133* (emphasis in original) (quoting *G.C. & K.B. Invs., Inc. v. Wilson, 326 F.3d at 1105*). A federal court must confirm arbitration awards even when they are attributable to "erroneous findings of fact or misinterpretations of law." *French v. Merrill Lynch, Pierce, Fenner & Smith, 784 F.2d. at 906* (quoting *American Postal Workers Union, AFL-CIO v. United States Postal Service, 682 F.2d at 1285 (9th Cir. 1982), cert. denied, 459 U.S. 1200, 103 S. Ct. 1183, 75 L. Ed. 2d 431 (1983)*). "It is not even enough that the [Arbitration] Panel failed to understand or apply the law. . . An arbitrator's decision must be upheld unless it is completely irrational, or it constitutes a manifest disregard of the law." *French v. Merrill Lynch, 784 F.2d. at 906* (citations and notes omitted).

First, it should be noted that the NASD Arbitration Award is ambiguous regarding how the arbitration panel's decision was reached. The award itself [*21] has several sections. Dkt. 8. The above language quoted by Petitioners regarding the statutes of limitations appears in a section titled "Other Issues Considered and Decided." *Id.* at 5. A separate section, titled "Award," simply states that "Claimants' claims are dismissed with prejudice," but does not mention anything regarding statutes of limitations. *Id.* No other reasons or explanations for the arbitration panel's decision are provided in the award. *Id.* at 4-10. A transcription of the pre-hearing conference does not exist (to the knowledge of the Court), and, to confuse the issue further, it is also unclear whether the panel applied Washington or Minnesota law. In short, the Court has no way of knowing how the arbitration panel's decision was made

The fact that the award states in one section that the claims were dismissed on statute of limitations grounds does not mean that *all* claims were dismissed *solely* on this basis. The separate section titled "Award" simply dismisses the claims outright without any mention of the statutes of limitation. Moreover, the record show that prior to issuing its decision, the panel held a conference, heard oral argument by both [*22] parties, and reviewed

the parties' pleadings (which discussed in detail the merits of each claim). Because the award is ambiguous, it is very possible that the arbitration panel dismissed some of the claims based on statutes of limitations grounds, and some of the claims on their merits. Indeed, the panel may have decided that several of the claims were baseless.

Arbitration awards are not judicial opinions, and arbitrators are not required to give their reasons unless so directed by the underlying contract. Simply stated, there is no evidence to suggest *manifest* disregard of the law when the laws are not cited and the reasoning for the decision is not clear. Manifest disregard of the law requires a showing that the arbitrator knew the law, knew he or she was required to apply the law, and deliberately chose to ignore it. *See e.g., DiRussa v. Dean Witter Reynolds, 121 F.3d 818 (2nd Cir. 1997); Montes v. Shearson Lehman Bros., Inc., 128 F.3d 1456, 1461 (11th Cir. 1997).* In this case, the record suggests that the panel *may* have misinterpreted the law when they applied the applicable statutes of limitations to some of the claims. However, it [*23] also suggests that they *may* have deliberated those claims on their merits prior to issuing the award, especially given the fact that oral argument was heard and several lengthy briefs were submitted by both parties. In sum, Petitioners have failed to show that the panel's decision constitutes a manifest disregard of the law, and Petitioners' motion to vacate should be denied.

## D. AWARD FOR ATTORNEY'S FEES AND MANIFEST DISREGARD OF THE LAW

Petitioners argue that the panel's award of attorneys fees and costs constitutes a manifest disregard of the law, because the panel cited the Securities Act of Washington (*RCW 21.20 et. seq.*) as authority for the award. The NASD Arbitration Award states that "Claimants are liable to and shall pay Respondents the sum of $ 13,944.60 in attorney's fees and $ 905.61 in costs, pursuant to the Washington State Securities Act." Dkt. 8 at 5. The Securities Act of Washington allows the *purchaser* of a security to recover attorney's fees and costs when he or she prevails in an action brought under the Act. *See RCW 21.20.430(1).* There is no provision in the Act that allows recovery of attorney's fees on behalf [*24] of the brokerage firm when they successfully defend against such a claim.

Respondents argue that the NASD Arbitration Panel is authorized to award attorney's fees under NASD Code of Arbitration Procedure § 10330, which indicates that arbitrators may award "damages and other relief." Respondents further argue that because the panel has the authority to award attorney's fees, it does not matter if the panel misinterpreted the Securities Act of Washington, and the award should therefore stand.

First, the Court agrees with Respondents that the NASD arbitration panel is authorized to award attorney's fees under NASD Code of Arbitration Procedure § 10330. The U.S. Supreme Court has held that this section of the NASD Code of Arbitration Procedure "strongly implies" that an arbitration panel has the authority to award punitive damages, despite the fact that the state law in that case prohibited punitive damages. *See Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 60-61, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995).* Given the *Mastrobuono* decision, it follows that a NASD arbitration panel has the authority to award attorney's fees and costs.

Second, the Court concludes that the Securities Act of [*25] Washington does not expressly authorize a brokerage firm to recover attorney's fees when the firm successfully defends against such a claim. However, as already discussed, a federal court in this circuit may vacate an arbitration award "*only* if that award is completely irrational, exhibits a manifest disregard of law, or otherwise falls within one of the grounds set forth in [the FAA]." *See Coutee v. Barington Capital Group, L.P., 336 F.3d at 1133* (emphasis in original) (quoting *G.C. & K.B. Invs., Inc. v. Wilson, 326 F.3d at 1105*).

It appears that the arbitrators in this case may have misinterpreted the Securities Act of Washington (only one of the three panel members appears to be a lawyer). This misinterpretation does not, however, rise to a level of exhibiting a manifest disregard of the law, nor is such an interpretation of the Securities Act of Washington completely irrational, nor does it fall within one of the grounds expressly set forth in the FAA. Moreover, because the arbitration panel is authorized to award attorney's fees and costs under NASD Code of Arbitration Procedure § 10330, any such misinterpretation is not grounds for vacating [*26] the award.

## E. RESPONDENTS' REQUEST FOR ATTORNEY'S FEES

Respondents request an order awarding attorney's fees and costs in this matter, alleging that Petitioners' motion to vacate undermines the purpose and spirit behind the Federal Arbitration Act, which encourages and upholds binding arbitration. However, Respondents have not provided any authority in the Ninth Circuit or the State of Washington to support such an award, and the Court declines to make such an award at this time.

## ORDER

Therefore, it is hereby

**ORDERED** that Petitioners' Motion to Vacate Arbitration Award (Dkt. 2) is **DENIED** with prejudice, and that this case is **DISMISSED** with prejudice.

2006 U.S. Dist. LEXIS 27974, *

The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 9th day of May, 2006.

Robert J. Bryan

United States District Judge

**2**

1 of 13 DOCUMENTS

JACK T. CARTWRIGHT, Plaintiff, -vs- ROXBURY CAPITAL MANAGEMENT, LLC, Defendant.

Case No. 5:06-cv-283-Oc-10GRJ

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLOR-IDA, OCALA DIVISION

2007 U.S. Dist. LEXIS 32656

May 1, 2007, Decided
May 3, 2007, Filed

COUNSEL: [*1] For Jack T. Cartwright, Plaintiff: Robert E. Austin, Jr., LEAD ATTORNEY, Robert E. Austin, Jr. Law Offices, Leesburg, FL.

For Roxbury Capital Management, LLC, Defendant: Matthew Triggs, LEAD ATTORNEY, Proskauer Rose LLP, Boca Raton, FL; Ronald J. Tomassi, Jr., LEAD ATTORNEY, Proskauer Rose, LLP*, Boca Raton, FL.

JUDGES: Wm. Terrell Hodges, UNITED STATES DISTRICT JUDGE.

OPINION BY: Wm. Terrell Hodges

OPINION:

ORDER

The Plaintiff's Petition to Vacate, Modify and Cor-rect Arbitration Award and Order (Doc. 2) is before the Court for consideration of the Plaintiff's Motion for Summary Judgment (Doc. 13), to which the Defendant has responded (Doc. 19). The Petition and Motion are ripe, and both are due to be denied.

Background and Facts

The Plaintiff, a retiree, contracted with A.G. Ed-wards & Sons, Inc. ("Edwards"), a member of the NASD, for investment services. Through a contact initi-ated by an investment advisor at Edwards, Cartwright signed an agreement to receive investment advice from Roxbury Capital Management LLC ("Roxbury"), which is not a member of the NASD. The contract between Roxbury and the Plaintiff contained an agreement to ar-bitrate disputes before the American Arbitration [*2] Association in Los Angeles, California.

On June 17, 2005, the Plaintiff filed a Statement of Claim with the NASD against both Edwards and Rox-bury, thus beginning NASD arbitration proceedings against those entities. Within the period provided by the NASD arbitration rules for an answer to the Statement of Claim, Roxbury contacted the Plaintiff's counsel and informed him that Roxbury was not subject to the NASD's jurisdiction and requested that the Plaintiff dis-miss the Claim insofar as it related to Roxbury. A series of contacts between counsel ensued and the parties agreed to several stipulations extending the deadline for Roxbury to answer the Claim. During this period of al-most a year, the Plaintiff's counsel not only had difficulty contacting his elderly client, but also, despite numerous requests from Roxbury, did not provide any hint as to the legal basis of his refusal to dismiss the NASD action against Roxbury. After numerous fruitless contacts be-tween the parties, on February 1, 2006, Roxbury filed with the NASD a timely motion to dismiss the arbitration action, and the Plaintiff responded in opposition to that motion.

The NASD originally scheduled the initial arbitra-tion [*3] hearing for April 3, 2006, but, as that date ap-proached, the hearing was rescheduled to April 18, 2006 at the request of the Plaintiff. Although the NASD did not provide any form of official notice that the Panel would consider the motion to dismiss at that initial hear-ing, the NASD informed the Plaintiff that it had referred the motion to dismiss to the Panel and, on April 6, 2006, Roxbury informed the Plaintiff that it planned to raise the motion at that hearing. One day before the initial hearing, the Plaintiff contacted the NASD by phone and by letter and complained that he had not received sufficient notice that the Panel would consider the motion to dismiss at the initial hearing. The NASD informed the Plaintiff that a hearing on the motion to dismiss was not currently scheduled, but that a party could request the Panel to hear the motion or defer determination on the motion,

and the Panel would take any such request under consideration.

On April 18, 2006, the Panel held its initial hearing. At the outset of the hearing, the Plaintiff objected to the participation of Roxbury's counsel on the ground that they were not licensed to practice law in the State of Florida. The Panel [*4] considered the Plaintiff's objection, but determined that Roxbury's counsel could proceed to argue the motion to dismiss. The Panel also denied the Plaintiff's request that the hearing on the motion be postponed so that the Plaintiff could secure the testimony of a "material witness." Accordingly, at the request of Roxbury the Panel addressed the motion to dismiss, heard the argument of the parties, and issued a written order. That Order states, in part, that:

> Roxbury is not a member of the NASD, has not filed a submission agreement and does not consent to the jurisdiction of the NASD. In order to expedite this case, the panel determined to consider the Motion [to Dismiss] based upon the written pleadings and oral argument. After due deliberation and consideration, the Motion to Dismiss Roxbury Capital Management was granted.

April 18, 2006 NASD Order.

On May 17, 2006, the Plaintiff's counsel wrote to the NASD stating in detail his dissatisfaction with the Panel's Order and requesting that the NASD contact him to "discuss an alternative to court action to assure [his] client's rights." On May 25, 2006, in response, the NASD briefly addressed the issues raised by [*5] the Plaintiff and advised him that he may move the Panel for reconsideration or seek other appropriate relief.

On July 17, 2006, the Plaintiff filed his Petition and Motion to Modify or Vacate the Arbitration Award and Order in the Fifth Judicial Circuit, in and for Lake County, Florida. Roxbury filed a timely Notice of Removal (Doc. 2) and, shortly thereafter, it responded in opposition the Plaintiff's Petition. On September 9, 2006, the Magistrate Judge held an initial hearing, at which time he ordered that this case be re-designated as a Track One case and directed that the Plaintiff's Petition be addressed through summary judgment proceedings. Accordingly, on December 7, 2006, the Plaintiff filed the motion for summary judgment now under consideration.

## Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when

the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, [*6] and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). As the Supreme Court held in Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. Moreover, conclusory allegations and unwarranted deductions of fact are not accepted as true. See Eidson v. Arenas, 837 F. Supp. 1158, 1160 (M.D. Fla. 1993).

## Discussion

"Judicial review of commercial arbitration awards is narrowly limited under the Federal [*7] Arbitration Act." B.L. Harbert Int'l, LLC v. Hercules Steel Co., 441 F.3d 905, 909 (11th Cir. 2006). It is well settled in this Circuit that "[t]he FAA presumes the confirmation of arbitration awards and federal courts should defer to a arbitrator's decision whenever possible." Id. (citations omitted). The FAA provides four bases upon which a district court may vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;

> (2) where there was evident partiality or corruption in the arbitrators, or either of them;

> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award

upon the subject matter submitted was not made.

9 U.S.C. § 10. In addition, the Eleventh Circuit has stated three, narrow non-statutory grounds for the vacation of an arbitration [*8] award: "An award may be vacated if it is arbitrary and capricious, if enforcement of the award is contrary to public policy, or if the award was made in manifest disregard for the law." Hercules Steel, 441 F.3d at 910 (citations omitted).

The Plaintiff requests that the Court vacate the Panel's Order dismissing Roxbury because (a) the Panel violated NASD rules, (b) the Panel denied the Plaintiff's request to postpone the hearing to obtain the testimony of a material witness, and (c) Roxbury's counsel were permitted to participate in the hearing despite the fact that they were not licensed to practice in the State of Florida. The Plaintiff attempts to couch those three factual issues as providing numerous grounds for vacation of the Panel's Order, however, none of these grounds come within "shouting distance" of providing a basis to vacate the decision of the Panel in this case. The Court will address seriatim each factual issue.

As an initial matter, however, the Court finds that this case is such that, even assuming the truth of all of the Plaintiff's allegations, the unavoidable result of the issuance of a vacatur by this Court would simply be another dismissal [*9] by the NASD of the Plaintiff's claim against Roxbury. Accordingly, any error by the Panel in reaching its decision was harmless. No interpretation of the facts in this case would provide the NASD with jurisdiction over Roxbury in an arbitration proceeding. Indeed, it is undisputed that Roxbury is not a member of the NASD and never submitted to the jurisdiction of the NASD. To the contrary, the agreement between Roxbury and the Plaintiff provided for arbitration before the American Arbitration Association. Even if, as alleged by the Plaintiff, the arbitration provision in his contract with Roxbury was hopelessly ambiguous, such a finding would not subject Roxbury to arbitration before the NASD.

Moreover, the Plaintiff has failed to acknowledge any Eleventh Circuit precedent regarding the deferential standard by which this Court must review an arbitration award. This is exactly the kind of challenge to an arbitration award that the Eleventh Circuit in Hercules Steel cautioned against, and for the prosecution of which that court suggested sanctions - the Circuit's concern in that case is apropos here:

By attacking the arbitration award in this case Harbert has shown [*10] at best an indifference to the law of our circuit governing the subject. Harbert's refusal to accept that there is no basis in the law for attacking the award has come at a cost to the party with whom Harbert entered into the arbitration agreement and to the judicial system. In litigating this case without good basis through the district court and now through this Court, Harbert has deprived Hercules and the judicial system itself of the principal benefits of arbitration. Instead of costing less, the resolution of this dispute has cost more than it would have had there been no arbitration agreement. Instead of being decided sooner, it has taken longer than it would have to decide the matter without arbitration. Instead of being resolved outside the courts, this dispute has required the time and effort of the district court and this Court. When a party who loses an arbitration award assumes a never-say-die attitude and drags the dispute through the court system without an objectively reasonable belief it will prevail, the promise of arbitration is broken.

Id. at 913-14.

*I. Violation of NASD rules.*

The Plaintiff asserts in a conclusory fashion that [*11] the Court should vacate the Panel's Order dismissing Roxbury because the Panel acted contrary to law and exceeded their powers by violating two NASD rules during the course of the arbitration. Namely, the Plaintiff asserts that the Panel violated NASD Rule 10315 by failing to provide adequate notice of the hearing on the motion to dismiss and that the Panel violated NASD Rule 10326(1)(a) by failing to keep a verbatim record of the hearing.

The Plaintiff's claim is without merit because the NASD's violation of its procedural rules, without more, does not support the allegation that the Panel acted "contrary to law" because those rules are not law. See Max Marx Color & Chem. Co. Employees' Profit Sharing Plan v. Barnes, 37 F. Supp. 2d 248, 253 (S.D.N.Y. 1999) ("[T]o the extent that petitioners' claim is that the Panel disregarded NASD rules, it is meritless. NASD rules are not "law. Petitioners must point to a statutory violation to warrant vacatur of an arbitral award, not a violation of the code of arbitration procedure.") n1 Moreover, the Plaintiff's abbreviated argument that the Panel "exceeded their powers" by issuing a decision on the motion to dis-

Case 3:07-cv-02753-SC    Document 25-2    Filed 08/24/2007    Page 15 of 50

Page 4
2007 U.S. Dist. LEXIS 32656, *

miss without [*12] having made a verbatim recording of the hearing on that motion is wholly without legal support, and the Plaintiff provides no explanation as to how the absence of that recording has harmed him.

> n1 The Plaintiff states that: "Failure to provide notice of a hearing to customers was grounds for the court in Austern v. CBOE, 898 F.2d 882 (2d Cir. 1990) to vacate the award." The Plaintiff grossly mischaracterizes Austern. The Second Circuit did not vacate an arbitration award in Austern, nor did it pass on the question of whether failure to provide notice was grounds to vacate an award. The question in Austern concerned arbitral immunity, namely: "whether a commercial organization sponsoring a contractually agreed upon arbitration is immune from civil liability for improperly noticing the arbitration hearing and improperly selecting the arbitration panel.

In addition, the Court is not convinced that the NASD violated Rule 10315. Rule 10315 requires that the NASD "shall give notice of the [*13] time and place at least 15 days prior to the date fixed for the first meeting by personal service . . . ." Here, it is undisputed that the NASD gave such notice of the first meeting. The Plaintiff's argument that Rule 10315 requires that the NASD provide him with written notice 15 days in advance of any other hearing - such as a hearing on a motion to dismiss - is disingenuous at best. In any case, the Plaintiff had fully briefed the motion to dismiss and was well aware that Roxbury would raise the motion at the April 18, 2006 hearing. Not only did Roxbury's counsel inform the Plaintiff on April 6, 2006 that they planned to raise the motion to dismiss at the April 18, 2006 hearing, but the NASD also informed the Plaintiff that Roxbury may raise the motion at that hearing.

## II. Denial of a Postponement to Obtain Witness Testimony

The Plaintiff asserts that the Court should vacate the Panel's Order dismissing Roxbury because the Panel engaged in misconduct by refusing to postpone the hearing to allow the Plaintiff to present the testimony of a "material witness" and by entering its Order without hearing the testimony of that witness. Specifically, the Plaintiff sought [*14] the testimony of Greg Sutfin, an Edwards broker who allegedly knew material facts related to the procurement of the contract between Cartwright and Roxbury.

As in Schmidt v. Finberg, 942 F.2d 1571, 1574 (11th Cir. 1991), "[t]he issue [] comes down to the ques-

tion [of] whether there was any reasonable basis for the arbitrators to refuse to postpone the hearing or to continue it in order to receive [the witness'] testimony." In Schmidt, the Eleventh Circuit found that "there were several good and sufficient reasons to support the panel's action." Id. at 1574. Three of those four reasons are also applicable in this case. First, the Plaintiff did not, and still has not, indicated what testimony Sutfin would give that would be material to the issue before the Panel, i.e. whether the NASD had jurisdiction over Roxbury. See id. Second, if the Plaintiff really believed that Sutfin's testimony was material, the Plaintiff had ample opportunity to have obtained that testimony, whether by affidavit, deposition, or otherwise. See id. Third, the Panel may have decided that the proceeding, already pending for almost a year, had been protracted [*15] so long as to violate the policy of expeditious handling of such disputes. See id. Indeed the Panel stated that: "In order to expedite this case, the panel determined to consider the Motion based upon the written pleadings and oral argument."

Moreover, the Court notes that not only did the Plaintiff submit his brief in opposition to the motion to dismiss several weeks before the initial hearing, that hearing was postponed twelve days at the request of the Plaintiff. In addition, the Panel had before it Roxbury's motion to dismiss based upon an asserted a lack of jurisdiction; a motion the decision of which would not necessitate the taking of evidence, especially where the dispositive facts were not even in dispute, i.e. Roxbury is not a NASD member and never submitted to the jurisdiction of the NASD. Finally, even taking the Plaintiff's allegations of fact as true in regards to the procurement of his contract with Roxbury, the Plaintiff failed to make - and still fails to make - any viable legal argument as to why Roxbury should be subject to the jurisdiction of the NASD. n2 Accordingly, Sutfin's testimony would not have been material evidence and, as such, the de facto [*16] exclusion of that testimony by the Panel's decision not to grant the Plaintiff another postponement did not prejudice the Plaintiff.

> n2 The Plaintiff asserts that: "As Cartwright's grounds for bringing Roxbury under the jurisdiction of the NASD revolves around exceptions and equitable considerations of the general arbitrability and enforcement of arbitration forum clauses, Greg Sutfin's testimony is material and essential." The Plaintiff provides the Court with no citation of law concerning these asserted "exceptions and equitable considerations," nor any legal authority for his proposition that Roxbury may be subject to the jurisdiction of the NASD.

2007 U.S. Dist. LEXIS 32656, *

### III. Participation of Counsel Not Licensed in Florida.

The Plaintiff asserts that the Court should vacate the Panel's Order dismissing Roxbury because the Order was procured by undue means, is against public policy, and was issued in manifest disregard of the law. To establish that an arbitration award was obtained by corruption, fraud or undue means, [*17] a "(1) Plaintiff must produce clear and convincing evidence (2) of fraud that was undiscoverable through the exercise of due diligence at arbitration (3) which materially related to an issue in the arbitration." See Liberty Securities v. Fetcho, 114 F. Supp. 2d 1319, 1321-22 (S.D. Fla. 2000) (citing Bonar v. Dean Witter Reynolds, Inc., 835 F.2d 1378, 1383 (11th Cir.1988)). An arbitration award is against public policy "where enforcement would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." Brown v. Rauscher Pierce Refsnes, Inc., 994 F.2d 775, 782 (11th Cir. 1993). A showing that an arbitration award was issued in manifest disregard of the law "requires clear evidence that the arbitrator was 'conscious of the law and deliberately ignored it.'" Hercules Steel, 441 F.3d at 910 (quoting Montes v. Shearson Lehman Bros., Inc., 128 F.3d 1456, 1461 (11th Cir. 1997)). "A showing that an arbitrator merely misinterpreted, misstated, or misapplied the [*18] law is insufficient." Hercules Steel, 441 F.3d at 910. Implicit in the foregoing standards is the showing of materiality; in order for the petitioner to obtain relief, the alleged arbitral error must have been material to the arbitral action about which the petitioner complains.

The Plaintiff's arguments are based entirely upon his assertion that Roxbury's counsel appeared at the April 18, 2006 arbitration hearing in violation of Rule 1-3.11 of the Rules Regulating the Florida Bar. Rule 1-3.11 provides that:

> A lawyer currently eligible to practice law in another United States jurisdiction or a non-United States jurisdiction may appear in an arbitration proceeding in this jurisdiction if the appearance is: (1) for a client who resides in or has an office in the lawyer's home state . . . . Such lawyer shall comply with the applicable provisions of this rule and of rule 4-5.5.

The "applicable provisions" of Rule 1-3.11 consist of the requirement that the out-of-state attorney file with the Florida Bar and serve upon opposing counsel a verified statement and pay to the Florida Bar a $ 250.00 filing fee. Moreover, Rule 4-5.5 states that:

> A lawyer [*19] admitted and authorized to practice law in another United States jurisdiction who has been neither disbarred or suspended from practice in any jurisdiction, nor disciplined or held in contempt in Florida by reason of misconduct committed while engaged in the practice of law permitted pursuant to this rule, may provide legal services on a temporary basis in Florida that: . . . (2) are in or reasonably related to a pending or potential proceeding before a tribunal in this or another jurisdiction, if the lawyer or a person the lawyer is assisting is authorized by law or order to appear in such proceeding or reasonably expects to be so authorized . . . .

The crux of the Plaintiff's argument is that this Court should vacate the Panel's Order dismissing Roxbury from the arbitration for lack of jurisdiction because Roxbury's counsel appeared at the arbitration hearing and argued its motion to dismiss without having filed the verified statement and without having paid the filing fee specified in Rule 1-3.11. However, no matter how the Plaintiff couches his argument (whether "undue means," "against public policy," or "manifest disregard of the law"), he provides the Court with no legal [*20] authority for his proposition that the violation of a bar rule provides ground for the vacatur of an arbitration award, especially, as here, where there is no nexus between the purported violation and the grounds upon which the arbitration award was entered. n3

> n3 To attempt to establish some connection between the violation of the bar rule and the Order, the Plaintiff asserts that if the Panel would have postponed the hearing to allow Roxbury's counsel to comply with Rule 1-3.11, then the Plaintiff would have been able to present the testimony of Mr. Sutfin when the Panel reconvened.

Moreover, the Plaintiff suffered no prejudice by the Panel's decision to allow Roxbury's counsel to proceed with the hearing on the motion to dismiss, as there is no evidence that a delay to allow Roxbury's counsel to comply with the rule would have affected the Panel's decision. To the extent that Roxbury's counsel violated the Rules Regulating the Florida Bar, the remedy for such a violation is an action against those attorneys [*21] by

the Bar, and not the vacatur of the Panel's Order by this Court.

**Conclusion**

Accordingly, upon due consideration, it is ordered that:

(1) the Plaintiff's Motion for Summary Judgment (Doc. 13) is DENIED;

(2) the Plaintiff's Petition to Vacate, Modify and Correct Arbitration Award and Order (Doc. 2) is DENIED;

(3) the Clerk is directed to enter judgment in favor of Defendant Roxbury Capital Management LLC and against the Plaintiff with costs to be assessed according to law; and

(4) the Clerk is directed to terminate any pending motions and close the file.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 1st day of May, 2007.

Wm. Terrell Hodges

**UNITED STATES DISTRICT JUDGE**

3

LEXSEE

**DELUXE LABORATORIES, INC., Petitioner, v. INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES, LOCAL 683, Respondent. and related counterclaim.**

**Case No. CV 01-3469 RJK**

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**2001 U.S. Dist. LEXIS 18099; 168 L.R.R.M. 2317; 145 Lab. Cas. (CCH) P11,204**

**August 30, 2001, Decided**
**August 31, 2001, Filed, Entered**

**SUBSEQUENT HISTORY:** judgment entered in Deluxe Labs. v. Int'l Alliance, Local 683, 2001 U.S. Dist. LEXIS 18101 (Sept. 13, 2001, C.D. Cal)

**DISPOSITION:** [*1] Petitioner's motion to vacate arbitration award was denied; respondent's motion to confirm arbitration award was granted and respondent's motion for sanctions was granted.

**COUNSEL:** For DELUXE LABORATORIES INC., petitioner: Teresa R Tracy, Kimberly Renee Wells, Baker & Hostetler, Los Angeles, CA.

For INTERNATIONAL ALLIANCE OF THEATRICAL STATE EMPLOYEES LOCAL 683: Ira L Gottlieb, David Adelstein, Steven Kenneth Ury, Geffner & Bush, Burbank, CA.

For INTERNATIONAL ALLIANCE OF THEATRICAL STATE EMPLOYEES LOCAL 683, counterclaimant: Ira L Gottlieb, David Adelstein, Steven Kenneth Ury, Geffner & Bush, Burbank, CA.

For DELUXE LABORATORIES INC., counterdefendant: Teresa R Tracy, Kimberly Renee Wells, Baker & Hostetler, Los Angeles, CA.

**JUDGES:** ROBERT J. KELLEHER, United States District Judge.

**OPINION BY:** ROBERT J. KELLEHER

**OPINION**

**ORDER GRANTING MOTION TO CONFIRM ARBITRATION AWARD AND MOTION FOR SANCTIONS**

This case requires the Court to review an arbitrator's award entered pursuant to a collective bargaining agreement ("CBA") between Deluxe Laboratories, Inc. ("Deluxe"), the employer, and International Alliance of Theatrical Stage Employees, Local 683 (the "Union"). The arbitration arose out of a dispute over the [*2] discharge of three employees under Deluxe's current attendance policy. The arbitrator concluded, *inter alia*, that the attendance policy was not *per se* invalid under the CBA. However, the arbitrator found that Deluxe's termination of the three employees, on a case by case basis, violated the CBA's "just cause" provision. Accordingly, the arbitrator reversed the terminations. Deluxe commenced this judicial proceeding to vacate the award.

On August 27, 2000, the Court heard Deluxe's motion to vacate the arbitration award, the Union's motion to confirm the arbitration award and the Union's motion for sanctions. After the hearing, the Court took the motions under submission. After the considering the papers submitted by the parties, the case file and argument of counsel, the Court GRANTS the Union's motion to confirm, DENIES Deluxe's motion to vacate and GRANTS the Union's motion for sanctions.

2001 U.S. Dist. LEXIS 18099, *; 168 L.R.R.M. 2317;
145 Lab. Cas. (CCH) P11,204

## II. BACKGROUND

### A. Summary of Underlying Dispute Over the Employee Terminations

In 1997, Deluxe implemented a new attendance policy. Among the changes made by this attendance policy was an increase in the number of permissible hours of absenteeism from 80 to 100 hours during [*3] a rolling 52 week period (the "100 hour provision"). The new policy also adopted a "no fault" approach for certain types of absences. For example, absences with a doctor's certificate were no longer excused under this policy beyond those absences that qualify for protection "under the state or federal family/medical leave acts." (Supplemental Decl. of Tony Franklin in Support of Deluxe's Motion to Vacate ("Supp. Franklin Decl."), Ex. 1; see Arbitration Opinion and Award dated January 4, 2001 (hereinafter "Arbitration Award") at 3.) When the policy was implemented, the Union wrote a letter protesting the policy. The Union did not file a grievance action at the time. It decided to commence formal grievance actions after Deluxe actually applied the policy to an employee's detriment.

During the period of November 4, 1999 though April 19, 2000, Deluxe terminated four employees pursuant to the attendance policy. The employees had medical reasons for their absences. Nevertheless, under the "no fault" policy, each of those employees exceeded 100 "unexcused" hours of absenteeism within a 52 week period. The Union protested the terminations. [1]

> 1 One employee's case settled before the arbitrator issued his award. The arbitrator's award addresses only the remaining three employees.

### [*4] B. Collective Bargaining Agreement

The Union represents laboratory and film video technicians working for Deluxe Laboratories. Deluxe is a signatory to the CBA effective August 1, 1996 through July 31, 2000. The CBA establishes a grievance and arbitration procedure, set forth in Article 7, which provides that the "arbitrator's decision shall be final and binding upon the parties thereto and upon any employees concerned." (The Union's Counterclaim, Ex. A ("CBA") at 4.) The signatories to the CBA agreed to establish a panel of neutral arbitrators. For cases involving the type of employer-employee dispute at issue here, the CBA expressly identifies Fred Horowitz, the arbitrator who issued the award at issue, as the primary "impartial arbitrator in all cases submitted to arbitration." (Id. at P 68(h)(3).) The CBA also specifies an alternate impartial arbitrator. (Id.)

### C. The Arbitration

On or about May 1, 2000, the parties agreed to consolidate the multiple grievances in one arbitration proceeding. The parties agreed that the case would be presented to Arbitrator Horowitz. Tony Franklin, Deluxe's General Counsel and Vice President, handled the underlying [*5] arbitration on behalf of Deluxe. The following issues were raised in the arbitration proceeding:

> (1) Whether the Union waived its right to challenge the Employer's attendance policy by failing to file a timely grievance?
>
> (2) If no, whether the Employer's attendance policy violates the CBA?
>
> (3) Whether the Employer violated the CBA when it terminated James Gallardo, Jerry Ochoa and Janice Downey?
>
> (4) If yes, what should be the remedy?

The grievances were heard by the arbitrator on September 18 and 19, 2000. The parties submitted their post-arbitration briefs on or about October 16, 2000. On January 4, 2001, the arbitrator issued a detailed opinion reversing the termination of the three employees and ordering them all reinstated.

First, the arbitrator rejected Deluxe's contention that the Union had waived its right to challenge the implementation of the attendance policy. (See Arbitration Award at 14-15.) The arbitrator found that Deluxe had waived the timeliness defense through the NLRB deferral process. (See id.)

Second, the arbitrator rejected the Union's contention that the implementation of the attendance policy itself violated various provisions [*6] of the CBA. (See id. at 15-21). Specifically, the arbitrator held that Deluxe did not violate its duty to bargain with the Union and that Deluxe was within its rights to change the attendance policy without prior discussion with the Union. (See id. at 17-18.) The arbitrator also declined to find that the attendance policy's 100 hour provision and the "no fault" approach was per se unreasonable. (See id. at 18-20.) Instead, with respect to the validity of the 100 hour provision, the arbitrator concluded that "resolution of any conflict between the [CBA] and the Attendance Policy is better handled by the parties on a case-by-case basis." (Id. at 20.) With respect to the "no fault" provision of the attendance policy, the arbitrator struggled with the tension created by his recognition that such "no fault" attendance plans have been adopted "to control excessive absenteeism" and his understanding that traditional notions

2001 U.S. Dist. LEXIS 18099, *; 168 L.R.R.M. 2317;
145 Lab. Cas. (CCH) P11,204

of "just cause requires an employer to take into account the employee's individual circumstances and record when determining excessive absenteeism." (*See id.* at 21.) The arbitrator concluded that the issue of whether the attendance policy violates [*7] the terms of the CBA was best determined on an individual case-by-case basis. (*See id.* at 23.)

The arbitrator then addressed the merits of the individual terminations. The arbitrator concluded that the way Deluxe applied the policy in each case violated the "just cause" provision of the CBA. For example, in one case, the arbitrator found that the employee was "forced to return to work . . . from an otherwise legitimate absence caused by a broken leg before he was declared medically fit to handle his job duties" after he had received notice from the company that future absences may cause him to violate the attendance policy. (*See id.* at 24.) The arbitrator found that the employee was not medically fit to resume his duties at the time of that notice. (*See id.*) "As a result, [the employee] was unable to maintain regular attendance, accumulated additional unexcused hours in excess of the 100 hour standard, and was terminated." (*Id.*) The arbitrator concluded that the doctrine of just cause required the management to consider the nature or circumstances of this employee's absences at the time of his termination. (*See id.* at 23-24.)

The parties could not resolve their [*8] difference over the remedy after the January 4, 2001 award. Thereafter, the parties held several conferences with the arbitrator to resolve the remedial issues. On February 26, 2001, the arbitrator issued a supplemental award in which he awarded backpay and granted Deluxe's request that it be permitted to subject each returning employee to medical clearance.

**D. Allegation of Bias**

As previously stated, Mr. Franklin, Deluxe's General Counsel and Vice President, represented Deluxe in the underlying arbitration. Mr. Franklin knew Arbitrator Horowitz approximately 20 years ago, when Mr. Franklin represented Continental Airlines in its dealings with the Pilots' Association, and Arbitrator Horowitz represented the Pilot's Association. (Declaration of Tony Franklin in Support of Motion to Vacate Award ("Franklin Decl."), P 2.) Prior to and during the arbitration proceedings, neither the arbitrator nor Mr. Franklin disclosed their prior relationship to the Union's counsel. Mr. Franklin has acknowledged that Arbitrator Horowitz's name was identified in the CBA. According to his declaration, Mr. Franklin remained silent because he "had no reason to be certain that [Arbitrator Horowitz] [*9] harbored any lingering personal animosity against me or my company as the result of our interactions approximately twenty years ago." (*Id.* at P 3.)

During a post-award telephone conference with the arbitrator held on January 31, 2001, the arbitrator made a comment that led Mr. Franklin to believe that the arbitrator was biased against Mr. Franklin. According to Mr. Franklin, Arbitrator Horowitz "stated that he knew he was really tough on me personally." (*Id.* at P 11.) Mr. Gottlieb, the Union's attorney, states that he does not recall the specifics of the arbitrator's comments, but does recall that the discussion was at times quite "heated." (Declaration of Ira Gottlieb in Support of Motion to Confirm Award ("Gottlieb Decl."), P 9; *but see* Supp. Franklin Decl. P 11 ("At no time did I raise my voice, use profanity, or say or do anything other than to exercise my right as an advocate to put my arguments and concerns before the Arbitrator")). Mr. Gottlieb also states that he recalls that the arbitrator "stated his regret that his decision had been the occasion for [Mr. Franklin's] severe reaction." (Gottlieb Decl., P 9.)

On or about February 26, 2001, Mr. Franklin first [*10] expressed his concern about bias during another telephone conference with the arbitrator and Mr. Gottlieb He informed the arbitrator and Mr. Gottlieb that he intended to bring an action to set aside the arbitration award. At that time, Mr. Franklin did not tell Mr. Gottlieb the basis for his bias claim. Mr. Gottlieb learned about the 20 year old history between Mr. Franklin and the arbitrator in June 2001, during a conversation with Deluxe's outside counsel, Ms. Teresa Tracy. (*See id.* at P 11.)

**E. Procedural History**

On April 17, 2001, Deluxe commenced this action by filing a petition to vacate the arbitration award. On June 14, 2001, the Union filed a counterclaim to confirm the award. On July 10, 2001, the Union filed a motion to confirm the arbitration award and a motion for sanctions. On July 26, 2001, Deluxe filed an *ex parte* application to continue the hearing on the Union's motions to give Deluxe additional time to take the deposition of Arbitrator Horowitz or to file a counter-motion to vacate the award. The Court denied the *ex parte* application on July 31, 2001. On August 3, 2001, Deluxe filed its motion to vacate the award. On August 9, 2001, the Court, [*11] on its own motion, continued the hearing on the Union's motions to coincide with the hearing on Deluxe's motion.

**III. DISCUSSION**

**A. Motion to Vacate Award and Motion to Confirm Award**

**1. Standard of Review**

The law in this area is well established. Courts play only a limited role when asked to review a labor-arbitration decision pursuant to a collective bargaining

agreement. *Major League Baseball Players Ass'n v. Garvey,* 532 U.S. 504, 121 S. Ct. 1724, 1728, 149 L. Ed. 2d 740 (2001) ("*Garvey*"). "Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Id.* Indeed, if an "arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." *Id.* (citations and internal quotations omitted).

An arbitration award will be set aside only in those instances where it "fail[s] to draw its essence from" the collective bargaining agreement. *Sprewell v. Golden State Warriors,* 231 F.3d 520, 526 (9th Cir. 2000). [*12] An award fails to draw its essence from the agreement when the arbitrator ignores the plain language of the contract and "'dispense[s] his own brand of industrial justice.'" *Garvey,* 121 S. Ct. at 1728 (citation omitted); [2] *accord Sprewell,* 231 F.3d at 526.

> 2    During oral argument, counsel for Deluxe suggested the Court ignore Garvey's holding for two reasons. First, counsel stated that *Garvey* was "decided after our petition." It is true that the *Garvey* opinion was issued a month after Deluxe's April 17, 2001 petition to vacate the award. However, counsel neglected to mention that Deluxe's motion to vacate the award was filed a month and a half after the decision. Moreover, *Garvey* does not involve new law. *Garvey* emphasizes that the principles concerning judicial review of labor-arbitration decisions are well established and quotes liberally from prior Supreme Court decisions. *See* 121 S. Ct. at 1728. Second, counsel referred to comments made in Garvey's single dissenting opinion and argued that courts have not provided sufficient guidance in this area of law. This argument has no merit.

[*13] The Supreme Court has repeatedly stated that "'courts . . . have no business weighing the merits of the grievance [or] considering whether there is equity in a particular claim.'" *Garvey,* 121 S. Ct. at 1728 (citation omitted). "When the judiciary does so, 'it usurps a function which . . . is entrusted to the arbitration tribunal.'" *Id.* "When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's 'improvident, even silly, factfinding' does not provide a basis for a reviewing court to refuse to enforce the award." *Id.*

## 2. Analysis

Deluxe raises three main arguments in support of its motion to vacate and in opposition to the Union's motion

to confirm. First, Deluxe argues that the award should be set aside based on the arbitrator's failure to disclose potential bias and evidence of actual bias. Second, Deluxe argues that the award does not "draw its essence" from the CBA for various reasons. Finally, Deluxe argues that the arbitrator exceeded the scope of his authority. None of Deluxe's arguments have merit.

### a. *Alleged Bias*

Deluxe argues that the Court should vacate the award [*14] because the arbitrator had a duty to disclose potential bias and his failure to do so in this case created an impression of "evident partiality." Deluxe also argues that there is evidence of actual bias. The only evidence Deluxe identifies is the award itself, to the extent that the arbitrator ruled against Deluxe, and the single post-award comment made by the arbitrator acknowledging that his award was "hard" on Mr. Franklin "personally."

With respect to the "evident partiality" argument, Deluxe relies on the line of cases dealing with arbitrators' failure to disclose potential bias in support of its argument. (*See, e.g.,* Motion to Vacate at 14-15 (citing *Commonwealth Coatings Corp. v. Continental Case. Co.,* 393 U.S. 145, 21 L. Ed. 2d 301, 89 S. Ct. 337 (1968) and *Schmitz v. Zilveti,* 20 F.3d 1043 (9th Cir. 1994).) Deluxe's reliance on these cases is misplaced.

Both *Commonwealth Coating* and *Schmitz* involved petitioners seeking to set aside the arbitration award after discovering an undisclosed business relationship between the arbitrator (or his law firm) and the opposing side, the side that prevailed in the underlying arbitrator. Here, [*15] in contrast, the party seeking to set aside the arbitration award was represented by an attorney who had the former relationship with the arbitrator. That attorney, Mr. Franklin, describes the former relationship -- dating back approximately 20 years -- as a particularly contentious one: "There were numerous adversarial proceedings . . . in which Mr. Horowitz and I were representing opposing parties in arbitration, and I prevailed in each of those proceedings." (Franklin Decl., P 2.) Indeed, as Mr. Franklin states, "I was so successful that the Pilots' Association brought in Mr. Horowitz' superior to handle matters in his place due to lack of confidence." (*Id.*) Yet Mr. Franklin remained silent when he learned the name of the arbitrator; and he said nothing throughout the arbitration proceedings. Mr. Franklin first raises the bias challenge after he receives an adverse ruling.

This is a classic case of waiver. [3] A party "cannot remain silent, raising no objection during the course of the arbitration proceeding, and when an award adverse to him has been handed down complain of a situation of which he had knowledge from the first." *In re Cook Industries., Inc.,* 449 F.2d 106, 107-08 (2d Cir. 1971) [*16] (holding that appellant was not entitled to relief on the-

2001 U.S. Dist. LEXIS 18099, *; 168 L.R.R.M. 2317;
145 Lab. Cas. (CCH) P11,204

ory that there was "evident partiality" due to arbitrator's failure to disclose his employer had business dealings with appellee when appellant was aware of relationship before the arbitration); *accord United Steelworkers of Am., AFL-CIO v. Smoke-Craft, Inc.*, 652 F.2d 1356, 1360 (9th Cir. 1981). A claim of bias is waived when the party alleging bias fails to protest the selection of the arbitrators either before the arbitration proceedings commenced or during the arbitration. *See Marino v. Writers Guild of Am., East, Inc.*, 992 F.2d 1480, 1484-85 (9th Cir. 1993); *Kodiak Oil Field Haulers, Inc. v. Teamsters Union Local No. 959*, 611 F.2d 1286, 1290 (9th Cir. 1980). Under the circumstances, the Court holds that Deluxe has waived its right to challenge the award on the basis of arbitrator bias.

> 3  The Court notes that Deluxe cites no authority to support its contention that no waiver occurred here. (*See* Motion to Vacate at 17-18.)

[*17]  b. *Whether the Award Draws its Essence from the CBA*

Deluxe asserts several grounds in support of the argument that the award does not draw its essence from the agreement. None of them has any merit.

First, Deluxe argues that the arbitrator wrongly considered the individual terminations after he concluded that the attendance policy did not violate the CBA. Deluxe refers to paragraph 68 of the CBA, which permits employers to discharge employees "for cause" as well as for "'unauthorized leave of absence.'" (*See* Motion to Vacate at 7-8.) Quoting a statement from the arbitration award that refers to the attendance policy's lack of conflict with "Paragraph 68," Deluxe contends that "the only possible conclusion to be drawn from this statement is that the Arbitrator considered" both grounds when he concluded that the policy did not violate "Paragraph 68" of the CBA. (*Id.*) Therefore, Deluxe contends that arbitrator erred when he overturned the terminations based solely on the ground that they violated the "just cause" provision. Deluxe mischaracterizes the record.

The arbitrator did not consider the "unauthorized leave of absence" provision because the parties did not [*18] raise it in the arbitration proceeding. Paragraph 68 of the CBA is lengthy and its terms are set forth in 14 pages of the CBA. A review of the underlying briefs and the arbitration award clearly indicates that the parties never addressed this particular provision of paragraph 68; rather, the parties disputed the application of two other provisions. (*See, e.g.*, Arbitration Award at 19-20 (only discussing the "one year absence for illness provisions" set forth in paragraph 68(d)(ii)(F) and paragraph 68 (e)(i); Franklin Decl., Ex. 2 [Deluxe's Arbitration Brief] (no reference to the "unauthorized leave of ab-

sence provision" set forth in paragraph 68(d)(ii)(I)); Franklin Decl., Ex. 3 [the Union's Arbitration Brief] (same).) Deluxe cannot raise the "unauthorized leave of absence" claim for the first time before this Court as a ground for setting aside the award. *See Smoke-Craft, Inc.*, 652 F.2d at 1360 ("Parties to arbitration proceedings cannot . . . seek to attack the award collaterally on grounds not raised before the arbitrator").

Second, Deluxe contends that the arbitrator injected a new requirement of "reasonableness" into the CBA. Deluxe argues that the term [*19] "reasonableness" is found nowhere in the CBA. However, the concept of "just cause" necessarily encompasses a consideration of reasonableness of the employer's termination. *See, e.g., United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 98 L. Ed. 2d 286, 108 S. Ct. 364 (1987) (noting that the arbitrator considered, among other things, "the reasonableness of the employer's position," when evaluating whether the company has "'just cause" to terminate the employee).

More importantly, it is obvious from Deluxe's arbitration brief that it understood that the "just cause" determination is intertwined with a "reasonableness" determination. (*See* Franklin Decl., Ex. 1 [Deluxe's Arbitration Brief] at 7-13.) Indeed, a major portion of Deluxe's arbitration brief is devoted to the "reasonableness" argument. (*See id.*) Contrary to Deluxe's assertion, Deluxe did not raise their reasonableness argument as an alternative argument in support of its contention that the attendance policy does not violate the CBA. (*See* Motion to Vacate Award at 8, n.4 (explaining that it simply addressed all issues out of an abundance of caution, and the reference to "reasonableness" [*20] "certainly did not serve to concede that there was any 'reasonableness' standard.") Instead, Deluxe's arbitration brief shows it understood that the reasonableness standard was the only applicable standard if the arbitrator permitted the Union to challenge the attendance policy. For instance, Deluxe stated in its arbitration brief:

> As discussed above, the Union failed to make a timely challenge to the implementation of the Policy. As such, the Arbitrator should extend a presumption of *reasonableness* to the terms and conditions of the Policy. Should the Arbitrator decide to look beyond the presumption of *reasonableness*, the record clearly supports a finding that the Policy is *reasonable.*

*(Id.* at 7-8 (emphasis added); *see also id.* at 12 ("However, the Company submits that a 'no fault' approach provides the fundamental prerequisites for estab-

2001 U.S. Dist. LEXIS 18099, *; 168 L.R.R.M. 2317;
145 Lab. Cas. (CCH) P11,204

lishing good cause. . . . [P] The reasonableness of the 'no fault' aspect of the Policy *also* can be found in the fact that employees have [certain] protection[s]. . . . [P] Clearly, Deluxe's 'no fault' approach . . . is not arbitrary or capricious [(*i.e.*, unreasonable)].")

Third, Deluxe contends that [*21] the award should be set aside because it is internally inconsistent. Deluxe argues that the arbitrator cannot, on the one hand, hold that the "no fault" provision of the attendance policy does not violate the CBA and conclude, on the other hand, that each particular instance of termination violated the "just cause" provision of the CBA when those terminations were made pursuant to the "no fault" attendance policy. This argument is meritless.

Deluxe cites no authority that supports its contention that internal inconsistencies provide a sufficient basis for the Court to vacate the award. Indeed, if factual errors and misinterpretation of the collective bargaining agreement are not proper grounds for setting aside arbitration awards, it is untenable for Deluxe to argue that an award may be vacated simply because it is internally inconsistent. *See Garvey*, 121 S. Ct. at 1728. Moreover, the award is not necessarily internally inconsistent. The arbitrator held that Deluxe's attendance policy, as written, was not *per se* unreasonable and therefore not violative of the CBA on its face. The arbitrator concluded that he must assess each termination on a case by case basis [*22] to determine if each application of the attendance policy violated the CBA's just cause requirement. (*See* Arbitration Award at 21-23.)

Finally, Deluxe also raises numerous arguments concerning the arbitrator's evidentiary rulings, *e.g.*, whether the arbitrator ignored undisputed evidence, and whether the arbitrator erred in his consideration of the merits. Aside from the fact that much of this argument is supported by inadmissible hearsay (*see, e. g.*, the declaration of Mr. Franklin purporting to describe Deluxe's employees' testimony during the arbitration), these alleged errors, without more, do not provide a basis for the Court to overturn the award.

### c. *Whether the Arbitrator Exceeded His Authority*

Deluxe argues that the arbitrator improperly considered the issue of "reasonableness" (because the term is not expressly stated in the CBA). As discussed above, Deluxe's argument concerning whether a "reasonableness" standard was properly before the arbitrator is baseless.

In sum, neither the facts nor the law support Deluxe's arguments that the arbitration award should be vacated. The record shows that the arbitrator was arguably construing or applying the contract [*23] and acting within the scope of his authority. Therefore, Deluxe's

motion to vacate has no merit and the Union is entitled to an order confirming the award.

### B. Motion for Sanctions

The Union requests that the Court award sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927. The Union seeks sanctions in the amount of $ 19,045.01 to cover the attorney's fees and costs it incurred from June 15, 2001 (the day after it served the motion for sanctions) through the hearing on these motions. (*See* Second Supplemental Declaration of Ira L. Gottlieb In Support of Motion for Sanctions ("Second Supp. Gottlieb Decl."), P 2.) The papers submitted by the parties and the record in this case support the Union's request for sanctions.

Rule 11 authorizes sanctions against any attorney or party who signs a "pleading, written motion, or other paper" presented to the Court. Fed. R. Civ. P. 11(b). The Court has the authority to impose monetary sanctions against attorneys who violate Rule 11 or any represented party who is "responsible for the violation" of Rule 11. Fed. R. Civ. P. 11(b)-(c). The party seeking Rule 11 sanctions must [*24] comply with a safe harbor provision, which gives the other side an opportunity to withdraw the motion or papers at issue. *See* Fed. R. Civ. P. 11(c)(1). Here, the Union complied with the safe harbor provision with respect to its request for sanctions against Deluxe. (*See* Gottlieb Decl., PP 10-12.)

As the Court held above, Deluxe's legal and factual contentions are without merit. The facts clearly establish that Deluxe waived the right to challenge the award on the ground of arbitrator bias under existing law. Nevertheless, throughout its papers and during oral argument, Deluxe and its counsel maintained the position that Deluxe may properly raise this challenge at this late date. Additionally, the bias argument is based on nothing more than an unfavorable award and the arbitrator's post-award comment to Mr. Franklin, Deluxe's General Counsel and Executive Vice President, acknowledging that the award was "tough on [Mr. Franklin] personally." Deluxe's bias argument is frivolous.

Moreover, Deluxe misconstrues the underlying record in two respects. First, Deluxe argues that the arbitrator must have considered the "unauthorized leave of absence" provision. However, the record [*25] shows that he did not because the parties never addressed that provision. Second, Deluxe argues that the arbitrator exceeded his authority when he applied the "reasonableness" standard. However, Deluxe's arbitration brief indicates it understood that the reasonableness standard was applicable if the arbitrator permitted the Union to challenge the validity of the attendance policy.

Page 7

2001 U.S. Dist. LEXIS 18099, *; 168 L.R.R.M. 2317;
145 Lab. Cas. (CCH) P11,204

Further, the record indicates that Deluxe's papers in this judicial proceeding were presented, at least in part, for an improper purpose: to soothe the bruised ego of Mr. Franklin. This is demonstrated throughout Mr. Franklin's declarations. For example, in addition to boasting that he (not his client) "prevailed" in each of those 20 year old proceedings involving Arbitrator Horowitz as opposing counsel, Mr. Franklin states:

> I was so successful that the Pilots' Association brought in Mr. Horowitz' superior to handle matters in his place due to a lack of confidence. I believe that at the time, Mr. Horowitz believed that my success jeopardized his position with the Pilots' Association and that he harbored personal animus toward me as the result. He ultimately left the Pilots' Association to pursue [*26] another career.

(Franklin Decl., P 2 (emphasis added).) Because Mr. Franklin authored the attendance policy at issue, he "believe[s] that Mr. Horowitz' 'just cause' ruling and discussion was a *direct attempt to embarrass and humiliate me.*" (*Id.*, P 9 (emphasis added).) It is clear that Mr. Franklin took the arbitrator's unfavorable ruling as a personal attack. It is also clear that Deluxe's papers were filed in part as either a retaliation or an attempt to vindicate Mr. Franklin after his defeat in arbitration. Mr. Franklin's statements, coupled with the wholly meritless motion to vacate, support a finding that Deluxe's filings were presented for an improper purpose within the meaning of Rule 11(b)(1). Under the circumstances, and because of Mr. Franklin's statements as Deluxe's General Counsel and Executive Vice President, the Court finds that Deluxe was responsible for the violation of Rule 11(b)(1) and (b)(3).

The conduct of Deluxe's counsel of record in this case, attorneys from the law firm of Baker & Hostetler, also warrants sanctions. No reasonable attorney, after making a reasonable inquiry, could have concluded that the factual and legal contentions set forth [*27] in Deluxe's papers were warranted by existing law or supported by the record. However, the Union's initial moving papers seeking Rule 11 sanctions only mentions Deluxe and not Deluxe's counsel. Therefore, the Court declines to sanction counsel under Rule 11. *See* Fed. R. Civ. P. 11(c)(1).

However, the Court has authority to impose sanctions against Deluxe's counsel under 28 U.S.C. § 1927. Pursuant to this statute:

> Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Deluxe's attorneys are responsible in part for unreasonably multiplying proceedings in this lawsuit and wasting judicial resources. Accordingly, sanctions against Baker & Hostetler are also warranted.

The Union requests monetary sanctions in the amount of $ 19,045.01. (*See* Second Supp. Gottlieb Decl., P 2 & Ex. R.) This amount represents the attorney's fees and costs the Union incurred after June 14, 2001, the day it [*28] served the motion for sanctions. Having reviewed the declaration of counsel and the attached billing records, the Court finds that the amount of fees and costs are properly documented.

## III. DISPOSITION

For the foregoing reasons, the Court hereby orders that: (1) Deluxe's motion to vacate arbitration award is DENIED; (2) the Union's motion to confirm arbitration award is GRANTED; and (3) the Union's motion for sanctions is GRANTED. The Court further orders that Deluxe and Baker & Hostetler shall jointly pay the Union $ 19,045.01 in monetary sanctions. This payment shall be made within 21 days of the date of this order. The Union shall submit a proposed judgment within 14 days of the date of this order.

IT IS SO ORDERED.

DATED: August *30*, 2001.

ROBERT J. KELLEHER

United States District Judge

**4**

LEXSEE 2006 US DIST LEXIS 79027

**DUNCAN FORTIER and JASCAN INVESTMENTS, INC., a Canadian corporation, Plaintiffs, v. MORGAN STANLEY DW, INC., a Delaware Corporation, ANTONY GORDON, MARGARET BLACK, and WILLIAM LAPPAS, Defendants.**

No. C-06-3715 SC

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

2006 U.S. Dist. LEXIS 79027

**October 23, 2006, Decided**
**October 23, 2006, Filed**

**COUNSEL:** [*1] For Duncan Fortier, Jascan Investments, Inc, a Canadian corporation, Petitioners: Timothy A. Canning, LEAD ATTORNEY, Law Offices of Timothy A. Canning, Arcata, CA.

For Morgan Stanley DW, Inc., a Delaware Corporation, Margaret Black, William T. Lappas, Respondents: Eric G. Wallis, LEAD ATTORNEY, Reed Smith Crosby Heafey LLP, Oakland, CA; Boyd C. Sleeth, Reed Smith LLp, Oakland, Ca.

For Antony Gordan, Respondent: Judith T. Alvarado, LEAD ATTORNEY, Kern & Gonzalez, Los Angeles, CA.

**JUDGES:** Samuel Conti, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Samuel Conti

**OPINION**

*ORDER DENYING PLAINTIFFS' MOTION TO VACATE AND GRANTING DEFENDANTS' MOTION TO CONFIRM ARBITRATION AWARD*

**I. INTRODUCTION**

Before the Court are opposing motions concerning NASD Arbitration Award No. 04-00355 (the "Award"). Plaintiffs Duncan Fortier and Jascan Investments, Inc. ("Plaintiffs") move to vacate the Award. Defendants Morgan Stanley DW, Antony Gordon, Margaret Black, and William Lappas ("Defendants" or "Morgan Stanley") move to confirm the Award. For the reasons stated herein, the Court DENIES Plaintiffs' Motion to Vacate and GRANTS Defendants' Motion to Confirm.

**II. BACKGROUND**

The underlying dispute [*2] involves shares of an Internet startup which Plaintiffs deposited in a securities account with Morgan Stanley in early 2000. Plaintiffs contend that Defendants promised to deliver, but failed to implement, a hedging strategy to protect the value of the shares. When the stock market declined in the Spring of 2000, Plaintiffs' investment lost roughly half its original value. *See* Wallis Decl., Exh. 1. Nearly four years later, on January 20, 2004, Plaintiffs filed their Statement of Claim with the National Association of Securities Dealers ("NASD") alleging that Defendants committed fraud, negligence, breach of contract, and breach of fiduciary duty. *See* Mot. to Vacate, Exh. A. The arbitration process continued through the Winter of 2006 when arbitrators evaluated Plaintiffs' claims. *See* Opp'n to Mot. to Vacate, 2-5.

On March 16, 2006, the three-member NASD arbitration panel (the "Panel") signed and served the Award that dismissed Plaintiffs' claims as time-barred. *See* Mot. to Vacate, Exh. A. After a hearing on Defendants' motion to dismiss, the Panel granted the motion based on its finding that the applicable statute of limitations had run for each of Plaintiffs' legal [*3] claims. *See id.* at 3. On June 9, 2006, Plaintiffs filed their Petition and Application to Vacate the Award. *See* Mot. to Vacate. Plaintiffs alleged two general grounds for vacatur: (1) the Panel was biased and (2) the Panel exceeded its powers by failing to conduct a full hearing and dismissing the claims with prejudice. *Id.* at PP 24, 25, 28. Defendants opposed the motion and subsequently filed their Motion to Confirm, which Plaintiffs opposed. *See* Mot. to Confirm. In short, Defendants assert that Plaintiffs received a fair

hearing and that their claims of arbitrator bias are unsubstantiated. *See id.*

## III. LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), federal courts have limited powers to vacate arbitration awards. Judicial review of an arbitration award is "both limited and highly deferential." *Sheet Metal Workers' Int'l Ass'n Local 359 v. Madison Indus., Inc.*, 84 F.3d 1186, 1190 (9th Cir. 1996). The FAA states that district courts may overturn an award under four conditions:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the [*4] arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10(a).

Under section 9 of the FAA, a district court must confirm the award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11." 9 U.S.C. § 9. The Ninth Circuit has interpreted sections 9 and 10 narrowly, but has indicated that vacatur is appropriate under subsection 10(a)(4) when there has been a manifest disregard for law or the award is completely irrational. *See Lapine Tech. Corp. v. Kyocera Corp.*, 130 F.3d 884, 888 (9th Cir. 1997) ("It is beyond peradventure that . . . a federal court may vacate or modify an arbitration award only if that award is 'completely irrational,' exhibits [*5] a 'manifest disregard of law,' or otherwise falls within one of the grounds set forth in 9 U.S.C. §§ 10 or 11."). Confirmation of an award is required even in the face of incorrect interpretations of law. "It is not even enough that the Panel may have failed to understand or apply the law." *French v. Merrill Lynch*, 784 F.2d 902, 906 (9th Cir. 1986).

## IV. ANALYSIS

### 1. Arbitrator Bias

The party challenging an arbitration award has the burden of showing partiality by establishing "specific facts which indicate improper motives on the part of the Board. The appearance of impropriety, standing alone, is insufficient." *Sheet Metal Workers Int'l Ass'n Local 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 746 (9th Cir. 1985). In this case, Plaintiffs bear the burden because they allege that each of the three arbitrators demonstrated bias by failing to disclose prior arbitration decisions. *See* Mot. to Vacate at PP 21-23.

In evaluating these claims, the FAA provides that the court may vacate an arbitration award "where there was evident partiality or corruption in the arbitrators." 9 U.S.C. § 10(a)(2) [*6] . In non-disclosure cases such as this, vacatur is appropriate where the arbitrator's failure to disclose information gives the impression of bias in favor of one party. *See Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 150, 89 S. Ct. 337, 21 L. Ed. 2d 301 (1968) (holding that the reasonable impression of bias is sufficient to vacate an award pursuant to 9 U.S.C. § 10(a)(2)); *Schmitz v. Zilveti*, 20 F.3d 1043, 1047 (9th Cir. 1994) (stating that the standard for determining evident partiality in non-disclosure cases is whether there is a "reasonable impression of partiality"). This standard is used because "[t]he parties can choose their arbitrators intelligently only when facts showing potential partiality are disclosed." *Id.* Whether the Panel's actual decision is faulty is not necessarily relevant. *Id.*

Plaintiffs claim that arbitrator Stanford Hirata failed to disclose that he arbitrated another case involving Defendant Morgan Stanley. *See* Mot. to Vacate at P 21. This argument fails for two reasons. First, the information was disclosed to the parties in a letter from the NASD Senior Arbitration Administrator on July 15, 2005. [*7] *See* Wallis Decl., Exh. 11. The letter stated that the other Morgan Stanley case was scheduled for hearing in December 2005 and that Mr. Hirata believed it would not affect his ability to be impartial in this case. *Id.* Plaintiffs later acknowledged this fact in their Opposition to Defendants' Motion to Confirm. *See* Pls.' Opp'n to Mot. to Confirm, 12. Thus, from July 15, 2005 onward Plaintiffs were aware of the other case but chose not to challenge and disqualify Mr. Hirata under NASD Rule 10308(d). Plaintiffs' actual knowledge of the potential conflict waives their objection. *See Fidelity Federal Bank, FSB v. Durga Ma Corp.*, 386 F.3d 1306, 1313 (9th Cir. 2004). Second, Mr. Hirata's arbitration of another Morgan Stanley case does not create a reasonable impression of partiality. By arbitrating the prior case, Mr. Hirata did not acquire a relationship to the company that impugned his ability to be impartial in this case. *See e.g., International Produce, Inc. v. A/S Rosshavet*, 638 F.2d 548, 551-52 (2d Cir. 1981) (explaining that prior expo-

sure to a party does not necessarily show bias). Thus, Plaintiffs have failed to show that Mr. Hirata [*8] was a biased arbitrator.

Plaintiffs also claim that arbitrator Kathryn Toronto failed to disclose the December 2005 arbitration of *Taylor v. Banc of America Investment Services*, NASD no. 04-08301. *See* Mot. to Vacate at P 22. Plaintiffs assert that non-disclosure of an award which granted a motion to dismiss in favor of the NASD firm demonstrates bias. *Id.* On the contrary, the *Taylor* award bears no relationship to this case: it involved different parties and different issues. Furthermore, NASD Rules did not require arbitrator Toronto to disclose her participation in the *Taylor* case because it did not create any potential conflict of interest. *See* NASD Code of Arbitration Procedure § 10312(a) (describing the direct personal and financial interests and relationships that mandate disclosure). Thus, Plaintiffs have failed to show that Ms. Toronto's non-disclosure demonstrates a reasonable impression of partiality.

Plaintiffs also claim that arbitrator Mario Barsotti failed to disclose that he had arbitrated cases for the Pacific Stock Exchange, specifically the 1995 case of *Turney v. Prudential Securities*, Pacific Stock Exchange no. 03173. *See* Mot. to [*9] Vacate at P 23. The *Turney* award was issued nearly ten years prior to the filing of Plaintiffs' case. Moreover, it did not involve any of the same issues or parties as the present case. As Justice White wrote, an arbitrator "cannot be expected to provide the parties with his complete and unexpurgated business biography." *Commonwealth Coatings*, 393 U.S. at 151 (White, J., concurring). The non-disclosure of an old and unrelated arbitration fails to create any reasonable impression of bias with respect to Arbitrator Barsotti.

Plaintiffs have failed to carry their burden under 9 U.S.C. § 10(a)(2) because they have been unable demonstrate any reasonable impression of bias on the part of any of the arbitrators. Further discovery on this issue is unnecessary as Plaintiffs have had ample opportunity to examine the arbitrators' prior rulings.

### 2. Arbitrator Powers

Under section 10 of the FAA, an award may be vacated if the arbitrators exceeded their powers. 9 U.S.C. § 10(a)(4). Plaintiffs assert that the Panel exceeded its powers by failing to hold an appropriate hearing and by dismissing the case with prejudice. *See* [*10] Mot. to Vacate at P 25-28.

Contrary to Plaintiffs' assertions, the Panel held sufficient hearings. On February 24, 2006, both parties submitted Hearing Briefs in anticipation of the commencement of arbitration proceedings. *See* Wallis Decl., Exh. 14, 15. The hearing was then held in San Francisco

on March 7 and March 8, 2006. *See* Wallis Decl. at P 16. At the outset, Defendants moved to dismiss the case asserting that the statute of limitations had expired. *Id.* Over the course of two days, the parties argued the motion, Plaintiff Fortier testified, Plaintiffs submitted an additional brief on the issue, and the matter was submitted for decision. *Id.* at P 17-28. Plaintiffs do not dispute that this hearing was held on the statute of limitations issue. Instead, they argue that the Panel should have also allowed a full hearing on their substantive claims. *See* Pls.' Opp'n to Mot. to Confirm at 16.

Under NASD regulations, any case requires a hearing unless the parties waive their right, though the components of a "hearing" are not specified. *See* NASD Code of Arbitration Procedure ("NASD Code") § 10303(a). Section 10324 states that "arbitrators shall be empowered to [*11] interpret and determine the applicability of all provisions under this Code. . . ." The Supreme Court has stated that courts should defer to the arbitrators' interpretation of procedural rules because "NASD arbitrators, comparatively more expert about the meaning of their own rule, are comparatively better able to interpret and to apply it." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002). Viewed in this deferential light, the hearings and procedures that the Panel employed to decide Plaintiffs' claims were sufficient.

Section 10305 of the NASD Code allows the Panel to dismiss a case with or without prejudice based on its evaluation of the case and the parties' behavior. In this case, the Panel determined that Plaintiffs' claims were time-barred and dismissed the case with prejudice. *See* Mot to Vacate, Exh. A at 3. The Ninth Circuit has held that procedural issues are "part of the bundle of issues committed to decision by the arbitrator." *Sheet Metal Workers 420*, 756 F.2d at 744; *see also Toyota of Berkeley v. Auto. Salesmen's Union, Local 1095*, 834 F.2d 751, 754 (9th Cir. 1987) ("[P]rocedural questions [*12] related to substantive issues that are arbitrable under the agreement are for the arbitrator to decide in the absence of a contrary provision."). When dismissing the case, the Panel interpreted the NASD Code of Arbitration Procedure and decided that a dismissal with prejudice was appropriate in light of the circumstances. The Panel's actions were within their broad procedural powers under the NASD Code. Thus, the Panel's decision to hold a hearing on Defendants' motion and dismiss the case with prejudice is not a basis for vacating the Award under section 10(a)(4) of the FAA.

### V. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Vacate the Arbitration Award is DENIED and Defendants'

Motion to Confirm, the Arbitration Award is GRANTED. The Award is hereby CONFIRMED.

    IT IS SO ORDERED.

Dated: October 23, 2006

Samuel Conti

UNITED STATES DISTRICT JUDGE

**5**

3 of 3 DOCUMENTS

**GOLDMAN, SACHS & CO. v. PATEL QDS:224S164**

[NO NUMBER IN ORIGINAL]

**SUPREME COURT OF NEW YORK, NEW YORK COUNTY**

**1999 N.Y. Misc. LEXIS 681; 222 N.Y.L.J. 35**

August 18, 1999

**JUDGES:** [*1] Justice Sklar

**OPINION BY:** Sklar

**OPINION**

The petition entitled Goldman, Sachs & Co. v. Patel, Index 121261/98, and the petition entitled Credit Suisse First Boston Corp. v. Patel, Index 120490/98, are consolidated for disposition only, and are disposed of in accordance with the following decision, order and judgment.

Petitioners move to confirm an award of the National Association of Securities Dealers ("NASD") arbitration panel, dated October 22, 1998. Respondent cross-moves to vacate the award, and for full consolidation of these proceedings.

Facts

On October 22, 1996 respondent commenced the underlying arbitration before the NASD against Credit Suisse First Boston Corporation, his former employer, and Raymond J. Dorado, a member of First Boston's legal department (collectively referred to as "First Boston") Exhibit B to Affidvit of Jeffrey L. Liddle ("Liddle Aff."). On January 28, 1997, respondent amended his statement of claim to add Goldman, Sachs & Co., his employer after First Boston, as a respondent in the arbitration, Exhibit C to Liddle Aff.

The arbitration arose from [*2] events immediately preceeding and following respondent's termination from First Boston's employ. In March 1996, respondent claims that because he was unsatisfied with his bonus at First Boston, he sought and accepted a position with Goldman, Sachs. Affidavit of Jay N. Patel, at P 11. At his end interview with First Boston, which Dorado and other First Boston employees attended, respondent claims he was "interrogated" with respect to three incidents that occurred at the firm. Two of the incidents involved anonymous e-mail messages transmitted throughout the firm, containing a poem, which, the e-mail author suggested, alluded to betrayal and fraud upon the workers, and foreshadowed the death of the president and the Chief Operating Officer. They also contained information about the compensation of certain top executives. The third incident involved the unauthorized ordering of computer equipment using the corporate credit card of the manager of respondent's department at the firm. Patel aff., at PP 12-21.

On March 18, 1996, respondent began working at Goldman, Sachs, Id. at 22. On April 19, First Boston filed a Form U-S with respect to respondent, stating that he was currently, or at [*3] termination, under internal review for fraud or wrongful taking of property, or violating investment related statutes, regulations, rules or industry standards of conduct. Id. at P 30. On that same date, respondent was placed on leave by Goldman, Sachs. Id. at 29. On May 10,1996, Goldman, Sachs officially terminated respondent's employment. Id. at 37.

In respondent's amended statement of claim, he asserted claims against First Boston for:

(1) defamation based on First Boston's disclosure in the Form U-S and statements allegedly made by Dorado to Goldman, Sachs: (2) tortious interference with prospective economic advantage; (3) injurious falsehood: (4) intentional infliction of emotional distress; and (5) conversion of property and unpaid bonus compensation. Exhibit B to Liddle Aff. Respondent's claim against Goldman, Sachs sought damages for wrongful termination. First Boston asserted counterclaims for libel, Exhibit D to Liddle Aff., Goldman Sachs requested dismissal of the claims against it on the ground that the employment relationship was at will, and, thus, that there was no basis, as alleged by respondent, for requiring "just cause" before termination was appropriate. Exhibit [*4] E to Liddle Aff.

1999 N.Y. Misc. LEXIS 681, *; 222 N.Y.L.J. 35

On March 3, 1998, the first day of scheduled hearings, the arbitration panel was advised that the parties were in the process of attempting to negotiate a settlement, and wanted to postpone the arbitration. Exhibit D to Declaration of Robin D. Fessel ("Fessel Aff."). The panel took its oath and made the disclosures required by NASD regulations. Specifically, the chair person, Sharon T. Nelson stated that a friend of hers, whom she had not talked to in many years, was an attorney with Goldman, Sachs. Id. at 3-4. Counsel for both sides accepted the panel on the record, id. at 4. The panel set March 6 as a deadline by which, if no settlement was reached, the arbitration was to begin promptly. id. By letter dated March 6, respondent's counsel informed the panel that they were unable to reach a settlement, and requested that the hearings commence on March 10, 1998. Exhibit E to Fessel Aff. On March 9, the panel ruled that, absent a settlement agreement, the parties were to provide the NASD with four sets of mutually agreeable hearing dates by March 10, and to arrive at NASD offices on March 12 prepared to present arguments on pending motions including Goldman, Sachs' motion [*5] to dismiss, Exhibit F to Fessel Aff.

On March 12, at the hearing on the motions, respondent's counsel, Mr. Allan Bloom, stated that he could not argue in opposition to the motion because his colleague, Mr. Jeffrey Liddle, was not present and because they wanted to file an additional brief on the issue. Exhibit G to Fessel Aff., at 23-24. The panel stated that its "preliminary decision" was to dismiss Goldman, Sachs as a party, but, because of Mr. Liddle's absence, respondent was given another opportunity to oppose the motion at a hearing by telephone to be scheduled within the following week. Id. at 32-33.

On March 18, the panel heard oral argument by telephone on Goldman, Sachs' motion to dismiss. Exhibit H to Fessel Aff. Mr. Liddle was not available for the argument, so Mr. Bloom argued respondent's opposition. Basically, Goldman, Sachs contended that respondent's employment was at will, submitting, inter alia, its employee handbook which explicitly states that employment was at will. Respondent countered that the Fourth U-4 he signed, a form submitted by securities industry employees in which the employee designates NASD arbitration as the forum for the resolution of disputes, [*6] created an obligation on Goldman, Sachs' part to terminate him only for "just cause." Goldman, Sachs responded that, under New York law, an employment relationship remains at will absent an express provision to the contrary, which was not present in this case. By order dated March 18, 1996, the panel granted Goldman, Sachs' motion, dismissing it as a party. Exhibit 1 to Fessel Aff.

The next scheduled date for hearings on pending motions was April 16, 1998. On April 18, 1998, respondent filed a motion seeking recusal of the panel, Exhibit Y to Liddle Aff. At the April 16, 1998 pre-hearing conference, after oral argument, the panel denied the motion to recuse. Exhibit Z to Liddle Aff., at 58-59. Mr. Liddle then said he was withdrawing respondent's previous acceptance of the panel, and requested either dismissal of the case, or a continuance to allow him to discuss with his client the possibility of proceeding with other counsel. Id. at 59-60. The panel denied those requests, and directed counsel to proceed with arguments. Id. at 62. Respondent's counsel then walked out of the conference while it was still in session, before the panel reached other, previously scheduled matters, leaving [*7] respondent unrepresented. Id. at 62-76. The panel ruled on the pending motions, since they had been fully briefed, denying inter alia, respondent's counsel's motion to postpone hearings on various grounds. Exhibit AA to Liddle Aff. The panel also ordered respondent to supply a brief summary as to what each of his fifty-nine prospective witnesses would testify to, and a proffer as to how long their direct testimony would take. Id. This order respondent never complied with. The panel also noted in its October 22, 1998 award, that respondent did not submit proposed dates on which to hold rescheduled evidentiary hearings, despite written orders and on-the-record requests by the panel to do so. Exhibit A to Petitions. October 22, 1998 Award, at 4.

On April 24, 1998, First Boston filed a motion seeking (1) sanctions against Mr. Liddle and Mr. Bloom and their firm for their actions throughout the proceedings; (2) dismissal of the case with prejudice for frivolous conduct and failure to prosecute and (3) costs and attorney's fees incurred in appearing at the March 12 and April 16 pre-hearing conferences. On May 5, 1998, respondent's counsel filed their opposition to the motion. By written [*8] Interim Order dated June 12, 1998, the panel assessed amount of $ 2,000.00 against the law firm of Liddle & Robinson, Mr. Bloom and Mr. Liddle, jointly and severally, "for their unprofessional and outrageous conduct in walking out of the hearing and failing to prosecute their case when the Panel's rulings did not go their way." Exhibit DD to Liddle Aff. The requests for dismissal, fees and costs were denied. Id. The June 12 Order directed that the sanctions be paid to the NASD Regulation by July 24, 1998, and stated that failure to do so would result in dismissal of the action. Id. The order further stated that the panel was "confident that this matter will now proceed smoothly." Id.

On July 20, 1998, respondent's counsel wrote to the NASD Regulation requesting (1) a final order or award regarding the panel's order dismissing Goldman, Sachs as a party; and (2) an extension of time to play the sanctions. On July 21, First Boston filed its objectives. By

1999 N.Y. Misc. LEXIS 681, *; 222 N.Y.L.J. 35

letter dated July 22, 1998, the parties were notified that respondent's requests were denied.

By letter dated July 23, 1998, Mr. Liddle declined to pay the sanctions, and requested relief under Rule 10305 (a) of the **NASD** Code of Arbitration [*9] Procedure, contending that the dismissal for failure to pay the sanctions constituted "larceny by extortion," and that attorney sanctions are reserved for the courts. Exhibit EE to Liddle Aff.

On July 24, 1998, First Boston moved to dismiss the case with prejudice. In response to a telephonic request by respondent's counsel, the panel granted respondent a response to that motion, Res' Respondent, however, failed to file a response. By interim Order dated August 24, 1998, the panel modified its earlier order, to require that respondent, rather than his counsel pay the sanctions. Exhibit FF to Liddle Aff. The August 24 Interim Order required that the sanctions be paid by September 14, 1998. Id. By Letter dated September 14, 1998, Mr. Liddle informed the panel that respondent refused to pay the sanctions. Exhibit GG to Liddle Aff. By letter dated September 17, 1998, First Boston renewed its request for dismissal of the case with prejudice.

On October 22, 1998, the panel issued its final award, Exhibit A to Petitions. The panel found that respondent had failed to comply with its August 24, 1998 Interim Order. It further found that respondent and his counsel had failed to prosecute the [*10] arbitration by, inter alia, "walking out of a scheduled hearing, making repeated meritless motions to postpone hearings, failing to comply with the Panel's April 28, 1998 order to submit witness summaries and proffers, and allowing five months to elapse, without attempting to reschedule hearings or otherwise move the arbitration forward." Based on those findings, and citing to **NASD** Code of Arbitration Procedure Rules ("**NASD** Code Rules") 10305(b) and 10324, the panel dismissed the Amended Statement of Claim with prejudice and denied it to its entirety. Id. The counterclaims of First Boston wee dismissed without prejudice. The Amended Statement of Claim was also dismissed with prejudice as against Goldman, Sachs, in accordance with the panel's March 18, 1998 Order. id.

Goldman, Sachs' Motion to Confirm, Respondent's Cross Motion

Petitioner Goldman, Sachs moves to confirm the arbitration award. Respondent cross-moves to vacate the award on the grounds that: (1) the arbitrators were guilty of misconduct and exceeded their powers by failing to hear evidence before dismissing his claims against Goldman, Sachs; and (2) the arbitrators were based. Respondent also seeks consolator of the [*11] proceeding with the proceeding commenced by First Boston. In response, Goldman, Sachs urges that respondent had a full

opportunity to be xxxxxxxxx to the dismissal of his claims and neither the Federal Arbitration Act nor the **NASD** Rules entitled respondent to an evidentiary hearing before the arbitrators could decide a motion to dismiss a claim on legal grounds it further argues that respondent's bias charge lacks merit.

The motion of petitioner Goldman, Sachs is granted, and the cross motion of respondent as against Goldman, Sachs is denied, Respondent's claim that he did not have a full opportunity to be heard and to present evidence against Goldman, Sachs is belied by the court. His Amended Statement of Claim set forth his claim in detail including citing to the legal authorities he relied on to support his claim. Goldman, Sachs' Answer set forth the basis for its motion to dismiss. Respondent had more than a year from the time of the Answer to the time that the motion was argued to oppose the motion. His counsel had a full opportunity to present oral argument before the panel on March 18, 1998.

Contrary to respondent's assertion, the **NASD** panel has the power to decide a motion [*12] to dismiss a claim on legal grounds, without holding an evidentiary hearing. See, Prudential Securities v. Dalton, 929 F. Supp. 1411, 1417 (ND Okla 1996); see, Exhibit K to Fessel Aff. Moreover, respondent fails to point to any misconduct by the panel in "refus(ing) to hear evidence." 9 USC § 10(a)(3). Respondent's Amended Statement of Claim failed as a matter of law, because the evidence and documentary proof submitted on the motion to dismiss demonstrated that his employment was at will. The panel's rejection of case law cited by respondent is not a basis to vacate the award. See Silverman v. Benmor Coats, Inc., 61 NY2d 299, 461 N.E.2d 1261, 473 N.Y.S.2d 774, rearg denied sub nom Norris v. Cooper, 62 N.Y.2d 803, 477 N.Y.S.2d 1026 (1984). Despite numerous opportunities, respondent never offered any evidence that was material to the claim he asserted against Goldman, Sachs.

Respondent's reliance on **NASD** Code Rules 10303 and 10305 to argue that an evidentiary hearing was required misplaced. **NASD** Code Rule. 10303 simply provides that any dispute or claim "shall require a hearing," not necessarily an evidentiary hearing. Respondent had a hearing on March 18, Rule 10305 sets forth the circumstances [*13] in which the panel may dismiss proceedings without any hearing. It, however, does not purport to set forth the only circumstances in which a claim can be dismissed. Thus, the failure to hold an evidentiary hearing, on an issue that could be decided as a matter of law based on the parties' submissions, is not a basis to vacate the arbitration award.

Respondent's assertions of bias by the panel are also meritless. In order to vacate an arbitration award on the

Case 3:07-cv-02753-SC    Document 25-2    Filed 08/24/2007    Page 35 of 50

Page 4

1999 N.Y. Misc. LEXIS 681, *; 222 N.Y.L.J. 35

basis of bias, the court must find that the rights of the objecting party were prejudiced by partiality of an arbitrator appointed as a neutral. CPLR 7511 (b) (1) (ii). The party seeking to vacate the award "must meet a heavy burden." North Syracuse Cent. School Dist. v. North Syracuse Educ. Assn., 45 N.Y.2d 195, 200, 379 N.E.2d 1193, 408 N.Y.S.2d 64 (1978). The mere inference of partiality, is not sufficient to warrant interference with the arbitrator's award. Rose v. J.J. Lowrey & Co., 181 A.D.2d 418, 580 N.Y.S.2d 745 (1st Dept. 1992); see also, Advest, Inc. v. Asseoff, 1993 U.S. Dist. LEXIS 4839, 1993 WL 119600 (SD NY 1993) (court must find clear evidence of impropriety before questioning award and process by which it was arrived at). The party must [*14] demonstrate that "a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." Morelite Constr. Corp. v. New York City Carpenters Benefit Funds, 748 F.2d 79, 84 (2d Cir. 1984).

Respondent relies on several incidents to support his claim of bias (1) the entertainment of Goldman, Sachs' motion to dismiss, and the subsequent dismissal of his claims against it while the parties were in settlement discussions; (2) arbitrator DeStefano's "admissions" that he had decided "weeks before" the panel heard the Goldman, Sachs' motion that Goldman, Sachs did not belong in the case, (3) arbitrator Kiss' "admission" of making off-the-record comments that counsel found offensive and racially biased" on the morning of the first day of hearings; (4) the panel's chairman's admission that she was friends with a member of Goldman, Sachs' legal department, and was going to make lunch plans; and (5) the panel's refusal to recuse itself.

First, with regard to deciding Goldman, Sachs' motion, the panel entertained it based on Goldman, Sachs' request for a ruling on it. Moreover, respondent himself requested that the hearings resume, before Goldman, [*15] Sachs' motion was decided, because the settlement discussions were failing.

Respondent's objection regarding arbitrator DeStaffano's remarks is also insufficient. As Goldman, Sachs correctly contends, arbitrators are not precluded from developing and expressing a view regarding the merits of a case, particularly where the arbitrator already has before him the pleadings and motion papers. See, Spector v. Torenberg, 852 F. Supp. 201, 209 (SD NY 1994), citing Ballantine Books, Inc. v. Capital Distrib. Co., 302 F2d 17, 21 (2d Cir 1962). Respondent has no basis for his assertion that Mr. DeStafano did not consider the oral argument on the motion. Further, respondent makes no claim that arbitrator DeStafano's purported bias arose from an impermissible source, such as a financial or personal interest in the outcome. See, Advest, Inc. v. Asseoff, supra.

Respondent's claim of bias against arbitrator Kiss is also rejected. The conversation with arbitrator. Kiss occurred on the first day of hearings. On that same day, respondent accepted the panel on the record. His assertion that he did not raise it at that time because he considered the panel's role [*16] ministerial in light of pending settlement negotiations, is incredible. He was aware that there was no final settlement yet, and, when the negotiations broke down he was the one who requested that the panel resume hearings, again with no objection based on bias, in fact, respondent did not mention the remarks until he moved to recuse the panel, after the panel, dismissed the claim against Goldman, Sachs, and right before the hearings were to resume. Accordingly, even if the remarks were racially biased as he claims, he waived his right to claim bias because of them. A claim of misconduct by an arbitrator may be waived where the complaining party [ILLEGIBLE TEXT] of this arbitrator's impropriety, had an opportunity to object and failed to do so. J.P. Stevens & Co. v. Rytex Corp., 34 NY2d 123, 128-29, 312 N.E.2d 466, 356 N.Y.S.2d 278 (1974); Namdar v. Mirzoeff, 161 A.D.2d 348, 555 N.Y.S.2d 101 (1st Dept 1990), cert. denied 501 U.S. 1251, 111 S. Ct. 2891, 115 L. Ed. 2d 1056 (1991). Respondent's counsel was aware of the alleged comment, and had numerous opportunities to object to it before the April 15, 1998 motion to recuse.

Similarly, respondent's bias claim with regard to the chairman of the panel is also waived. The panel chairman's [*17] friendship with a member of Goldman, Sachs' legal department was appropriately divulged at the March 3 hearing. Respondent, therefore, had actual knowledge of it. He accepted the panel on that same day. Several days later, he, requested that the panel resume hearings. He then appeared before it several times, all without objecting to any bias. Finally, i light of respondent's waiver of any potential bias that could be gleaned from the circumstances, the panel's refusal to recuse itself on these same bases also fails to provide a basis to vacate the award.

Accordingly, Goldman, Sachs' motion to confirm the arbitration award is granted, and respondent's cross motion to vacate the award is denied. The branch of respondent's cross motion to consolidate is denied as moot.

First Boston's Motion to Confirm and Respondent's Cross Motion

Respondent's cross motion to vacate the award with respect to First Boston revolves around the monetary sanctions imposed on him that eventually resulted in dismissal of his claims with prejudice. First, he argues that he was not afforded the opportunity to be heard and to present evidence with regard to the sanctions. Second, he contends that the panel [*18] lacked the authority to

1999 N.Y. Misc. LEXIS 681, *; 222 N.Y.L.J. 35

impose sanctions on him, and, thus, that it exceeded its powers. He further contends that the award should be vacated as in violation of public policy. Finally, respondent asserts that the panel was biased.

Respondent's claims of bias are identical to those asserted with regard to petitioner Goldman, Sachs. Based on the discussion above, this branch of the cross motion to vacate is denied.

The remainder of the cross motion to vacate is also denied. Respondent's claim that he was denied due process, because he was not afforded a hearing before the monetary sanction and the sanction of dismissal were imposed on him, is belied by the record and is rejected. While it has been held that due process requires that courts provide notice and an opportunity to respond before imposing sanctions, a full evidentiary hearing is not required. See, Stein v. Ulster Sav. Bank, 127 F3d 292 (2d Cir 1997); International-Ore & Fertilizer Corp. v. SGS Control Servs., Inc., 38 F3d 1279 (2d Cir 1994), cert denied 515 U.S. 1122, 115 S. Ct. 2276, 132 L. Ed. 2d 280 (1995) (no due process violation where attorney had no hearing, but had notice and opportunity to respond); see also, Childs v. State Farm Mut. Auto Ins. Co., 29 F3d 1018, 1027 (5th Cir 1994) [*19]  (due process satisfied by chance to respond through the submission of a brief).

Here, respondent not only filed an opposition brief on the motion for sanctions, but he also filed a sur-reply letter brief, and later, another letter, in which his counsel informed the panel that he would not pay the monetary sanction, and his reasons for not paying. Respondent was also given the opportunity to respond to First Boston's subsequent motion to dismiss his claims, which he did not utilize. Thus, he was given more than sufficient notice and opportunity to respond to both the monetary sanction, as well as the dismissal sanction, as well as the dismissal sanction to satisfy any due process requirements. The Court notes that the cases respondent relies upon involved the court's imposition of sanctions sua sponte without prior notice to the attorney, a situation clearly distinguishable from the instant action. See, e.g., Sakon v. Andreo, 119 F3d 109 (2d Cir 1997); Stein v. Ulster Sav. Bank, 127 F3d 292, supra; In re Ames Dept. Stores, Inc., 76 F.3d 66 (2d Cir 1996); Schoenberg v. Shapolsky Publs., Inc., 971 F2d 926 (2d Cir 1992); [*20] Securities Indus. Assn. v. Clarke, 898 F.2d 318 (2d Cir), overrule on other ground by Cooter & Gell v. Hartmarx Corp., other, 496 U.S. 384, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990).

The arbitrators had the authority, and did not exceed their powers, in imposing the sanctions on respondent. NASD Code Rule 10305(b), cited by the panel in its award, provides:

> The arbitrators may dismiss a claim, defense, or proceeding with prejudice as a sanction for willful and intentional material failure to comply with an order of the arbitrator(s) if lesser sanctions have proven ineffective.

Exhibit U to Liddle Aff., at Amendments p. 3. In addition, NASD Code Rule 10324, also cited by the panel in its award, states:

> The arbitrators shall be empowered to interpret and determine the applicability of all provisions under this Code and to take appropriate action to obtain compliance with any ruling by the arbitrator(s). Such interpretations and actions to obtain compliance shall be final and binding upon the parties.

Exhibit U to Liddle Aff., at Code p. 39. These provisions give the arbitrators express authority to control the proceedings before them, and to issue a dismissal order for failure [*21] to comply with their orders.

Here, respondent's counsel's actions in walking out of scheduled hearings before the completion of the matters before the panel at that session, in failing to provide a previously ordered witness list, in making "meritless motions to postpone the hearings," and in failing to prosecute his case, warranted the monetary sanction imposed on respondent, who is responsible for the actions of his counsel. Respondent's futher actions in willfully and affirmatively refusing to comply with the order to pay the sanction, or to comply with other orders of the panel, provided a basis for dismissal under NASD Code Rules 10305(b) and 10324. There was no obligation for the panel to conduct evidentiary hearings before dismissing the claims. See, Exhibits J-P to Affirmation of George J. Wade.

Respondent's contention that only the Appellate Division can sanction attorneys is wholly without merit. Courts have the inherent power, as well as power derived from court rules (i.e., Federal Rule 11 sanctions, 22 NYCRR 130-1.1), to control the proceedings before them by sanctioning attorneys and/or parties who fail to respect their orders. Similarly, [*22] the arbitrators, by virtue of the Code Rules discussed above, have the authority to control the proceedings before them. See, Exhibits B-H to Wade Aff. (arbitration awards in which one side was sanctioned for failure to comply with arbitrator(s)' orders).

1999 N.Y. Misc. LEXIS 681, *; 222 N.Y.L.J. 35

Finally, respondent's claim that the award violated public policy is rejected. To vacate an award on this narrow ground, the movant must demonstrate that the award contravenes a strong public policy, "invariably involving an important constitutional or statutory duty or responsibility." Port Jefferson Sta. Teachers Assn. v. Brookhaven-Comsewogue Union Free School Dist., 45 N.Y.2d 898, 899, 383 N.E.2d 553, 411 N.Y.S.2d 1 (1978); see also Matter of Cohoes Police Officers Union, Local 756, Counsel 82, AFSCME, AFL-CIO, 263 A.D.2d 652; 692 N.Y.S.2d 796, 1999 WL 487024 (3d Dept 1999).

As discussed above, respondent's reliance on the public policy that only the Appellate Division may regulate matters of attorney discipline is misplaced. The panel here imposed a monetary and then a dismissal sanction, and did not disbar or censure respondent's counsel. To the extent that respondent is relying on a violation of his due process rights as also discussed above, there has been no due process violation. [*23] The failure to hear his claims on the merits was warranted by the panel's finding that respondent's conduct was willful in refusing to comply with its orders.

Accordingly, respondent fails to provide a basis to vacate the award, which is confirmed.

The branch of respondent's cross motion in both actions seeking consolidation is denied as moot.

Accordingly, it is

ORDERED that the petition of Goldman, Sachs & Co., Index No. 121261/98 is granted and the award rendered in favor of petitioner Goldman, Sachs & Co. and against respondent is confirmed; and it is further

ORDERED that the petition of Credit Suisse First Boston Corporation and Raymond Dorado, Index No. 120490/98 is granted and the award rendered in favor of petitioner Credit Suisse First Boston Corporation and Raymond J. Dorado and against respondent is confirmed, and it is further

ORDERED that the cross motions of respondent to vacate the award in both actions, Index No. 121261/98 and Index No. 120490/98 and to consolidate the actions are denied and it is further

ORDERED and ADJUDGED that respondent's Amended Statement of Claim as against petitioners Goldman, Sachs & Co., Credit Suisse First Boston Corporation and Raymond [*24] Dorado is dismissed with prejudice and denied in its entirety; respondent is liable and shall pay $ 2,000.00 to NASD Regulation as sanctions, pursuant to the arbitration panel's August 24, 1998 Interim Order; and the counterclaims of Credit Suise First Boston Corporation and Raymond J. Dorado are dismissed without prejudice.

**6**

**RALPH GROSSO, et al. v. SALOMON SMITH BARNEY, et al.**

MISC. NO. 03-mc-115

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**2003 U.S. Dist. LEXIS 20208**

**October 22, 2003, Decided**
**October 24, 2003, Filed; October 27, 2003, Entered**

**SUBSEQUENT HISTORY:** Affirmed in part and appeal dismissed in part by Grosso v. Salomon Smith Barney, Inc., 2004 U.S. App. LEXIS 25370 (3d Cir. Pa., Nov. 4, 2004)

**DISPOSITION:**    [*1] Petitioners' motion to vacate arbitration award pursuant to 9 U.S.C. § 10 denied. Respondents' cross-motion to confirm arbitration award granted.

**COUNSEL:** For SALOMON SMITH BARNEY, INC., Respondent: THEODORE F. HAUSSMAN, JR., WILLIAM M. CONNOLLY, LEAD ATTORNEYS, DRINKER BIDDLE & REATH LLP, PHILADELPHIA, PA.

For STEVEN J. KARTCHNER, Movant: THEODORE F. HAUSSMAN, JR., WILLIAM M. CONNOLLY, LEAD ATTORNEYS, DRINKER BIDDLE & REATH LLP, PHILADELPHIA, PA.

RALPH GROSSO, Claimant, Pro se, CARVERSVILLE, PA.

JACQUELINE GROSSO, Claimant, Pro se, CARVERSVILLE, PA.

**JUDGES:** JAMES T. GILES, C.J.

**OPINION BY:** JAMES T. GILES

**OPINION**

*MEMORANDUM*

Giles, C.J.

*I. INTRODUCTION*

Petitioners Ralph and Jacqueline Grosso, *pro se,* move, pursuant to 9 U.S.C.A. § 10 of the Federal Arbitration Act ("FAA"), to vacate an arbitration award rendered against them by a panel of the National Association of Securities Dealers ("**NASD**"). Respondents Salomon Smith Barney, Inc. ("SSB") and Steven J. Kartchner (collectively "respondents") have moved to confirm the award. For the reasons that follow, respondents' motion is [*2] granted and petitioners' motion is denied.

*II. FACTUAL BACKGROUND*

In September of 1995, petitioners opened an investment account with SSB and gave their stock broker, Steven Kratchner, approximately $ 254,000 to invest on their behalf, instructing him that their risk tolerance was "moderate." Mr. Grosso is a retired police officer and his wife is a substitute teacher. The record shows that petitioners' account prospered initially, increasing steadily in value and utilizing margin leverage to grow. [1] The value of the account peaked in late 1999 then lost substantial gains that had accrued over the previous years, ultimately showing a loss by the end of 2000.

1    "Margin trading" is trading with borrowed funds or depositing only a portion of the funds necessary to purchase certain stock. This practice can maximize income but carries with it a higher risk of loss. An investor must pay interest on the margin account and may need to deposit additional funds if the value of stock purchased on margin drops and there is a margin call. Failure to do so may result in involuntary liquidation of a portfolio and losses in excess of the initial investment amount.

[*3] Petitioners sought to recoup their losses from the respondents and to prove their claim in a five-day hearing held before the **NASD** panel beginning on Janu-

Case 3:07-cv-02753-SC    Document 25-2    Filed 08/24/2007    Page 40 of 50

Page 2
2003 U.S. Dist. LEXIS 20208, *

ary 22, 2003. They asserted claims for breach of fiduciary duty, misrepresentation, failure to follow instructions, effectuating over-concentration in a select few stocks, over-extension on margin, *respondeat superior* and negligent supervision. The panel denied petitioners' claims in their entirety, *without opinion*.

Petitioner ask this court to vacate the arbitration award and remand for a hearing before a new panel of arbitrators. In support thereof, they allege that the panel: 1) manifestly disregarded the law; 2) was improperly constituted because a non-public arbitrator was chairperson; 3) engaged in misconduct by refusing to allow petitioners to amend their claim on the basis of an alleged wire transfer not credited to their brokerage account and by failing to make a complete record of the proceedings; and, 4) must have been influenced by fraud or undue means since respondents failed to produce a wire transfer as evidence in the course of discovery and at the hearing.

### III. ANALYSIS

The party moving to vacate [*4] an arbitration award has the burden of proof. *Carmel v. Circuit City Stores, Inc.*, 2000 U.S. Dist. LEXIS 12065, 2000 WL 1201891, at *3 (E.D. Pa. Aug. 22, 2000). An "extremely deferential standard of judicial review [is] set forth in the Federal Arbitration Act ("FAA"), 9 U.S.C.A. § 10(a)(1)-10(a)(4)." *Dluhos v. Strasberg*, 321 F.3d 365, 366 (3d Cir. 2003). "[A] district court may vacate [an award] only under exceedingly narrow circumstances." *Id.* (citing 9 U.S.C. § 10); *Amalgamated Meat Cutters & Butcher Workmen of N. Am., Local 195 v. Cross Brothers Meat Packers, Inc.*, 518 F.2d 1113, 1121 (3d Cir. 1975). Pursuant to 9 U.S.C.A. § 10, a judge may vacate an award 1) where the award was procured by corruption, fraud, or undue means; 2) where there was evident partiality or corruption in the arbitrators ...; 3) where the arbitrators were guilty of misconduct and the rights of any party were thereby prejudiced; or 4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the matter before them was not made. 9 U.S.C. § 10 (a)(2)-10(a)(4) [*5] .

An arbitrator's decision may be vacated where the award evidences a "manifest disregard of the law." *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995); *Kaplan v. First Options of Chicago*, 19 F.3d 1503, 1520 (3d Cir. 1994); *Local 863 Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Jersey Coast Egg Producers, Inc.*, 773 F.2d 530, 534 (3d Cir. 1985).

However, it is not proper for the court to "sit as the panel did and reexamine the evidence." *Mutual Fire, Marine, & Inland Ins. Co. v. Norad Reins. Co., Ltd.*, 868

F.2d 52, 56 (3d Cir. 1989). Errors in the arbitrators' factual findings or interpretations of the law do not justify a court's review or reversal on the merits. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36-38, 98 L. Ed. 2d 286, 108 S. Ct. 364 (1987); *Sun Ship, Inc. v. Matson Navigation Co.*, 785 F.2d 59, 62 (3d Cir. 1986) (citations omitted); *Whitlock Packaging Corp. v. Precision Diversified Sys.*, 59 F. Supp. 2d 384, 390 (D.N.J. 1998). A court may not overrule an arbitrator "simply [*6] because it disagrees" with the arbitrator's interpretation of the law. *United Transp.*, 51 F.3d at 379 (quoting *News America Publications, Inc. v. Newark Typographical Union, Local 103*, 918 F.2d 21, 24 (3d Cir. 1990)). Even where the court is convinced that the arbitrator has committed serious error, the award must be enforced unless there is "absolutely no support at all in the record justifying the arbitrator's determinations." *Id.; see also Tanoma Mining Co. v. Local Union No. 1269, United Mine Workers of America*, 896 F.2d 745, 748 (3d Cir. 1990) (even where the support is "slender," if the record reveals "some basis for the arbitrator's conclusion ... the inquiry is over."); *Roberts & Schaefer Co. v. Local 1846, United Mine Workers*, 812 F.2d 883, 885 (3d Cir. 1987) ("even when the award was dubious, and the result one that we would not have reached had the matter been submitted to the court originally, we have upheld the arbitrator's decision"); *Newark Morning Ledger Co. v. Newark Typographical Union*, 797 F.2d 162, 165 (3d Cir. 1986) (our "strict standard means that a reviewing court will decline to sustain an [*7] award "only in the rarest case'"); *Coltec Indus. v. Elliott Turbocharger Group, Inc.*, 1999 U.S. Dist. LEXIS 13684, Nos. Civ. A. 99-1400, 99- MC-36, 1999 WL 695870, at *4 (E.D. Pa. Sept. 9, 1999) ("The court need only find a 'colorable justification' to confirm the award.").

### A. The Arbitration Panel did not Manifestly Disregard the Law

Petitioners assert that the arbitration panel manifestly disregarded the law because respondents did not diversify petitioners' portfolio, invested in risky technology stocks and "permitted" petitioners to amass substantial margin debt in clear violation of the "suitability doctrine." (Pet.'s Mem. at 15). The court disagrees.

"'Manifest disregard of the law' encompasses situations in which it is evident from the record that the arbitrator recognized the applicable law, yet chose to ignore it." *Jeffrey M. Brown Assocs., v. Allstar Drywall & Acoustics, Inc.*, 195 F. Supp. 2d 681, 684-685 (E.D. Pa. 2002) (citing *Aetna Cas. & Sur. Co. v. Dravo Corp.*, 1997 U.S. Dist. LEXIS 11648, No. Civ. A. 97-149, 1997 WL 560134 at *1 (E.D. Pa. July 31, 1997)). "Other courts have held that the 'manifest disregard' principle means that the [*8] correct legal standard must have

been so obvious that the typical arbitrator would readily and instantly have perceived it, the arbitrator must have been subjectively aware of that standard, and he must have proceeded to ignore that standard in fashioning the award." *Id.* (quoting *Coltec Industries*, 1999 U.S. Dist. LEXIS 13684, 1999 WL 695870, at *5 (citing *Raiford v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 1410, 1412 (11th Cir. 1990))); *Lew Lieberbaum & Co., Inc. v. Randle*, 85 F. Supp. 2d 123, 126 (E.D.N.Y. 2000) (To modify or vacate an award on this ground, a court must find both that 1) the arbitrators knew of a governing legal principle but refused to apply it or ignored it altogether, and 2) the "law ignored by the arbitrators ... [was] 'well defined, explicit, and clearly applicable'" to the case.) (citation omitted).

The "suitability doctrine," alleged to have been deliberately overlooked, is premised on New York Stock Exchange Rule 405 ("Know Your Customer Rule") and Article III, Section 2 of the Rules of Fair Practice of the **NASD** (Suitability Rule). The Know Your Customer Rule provides that:

> Every member organization is required [*9] through a general partner, a principal executive officer or a person or persons designated under the provisions of Rule 342(b)(1) to
>
> (1) Use due diligence to learn the essential facts relative to every customer, every order, every cash or margin account accepted or carried by such organization and every person holding power of attorney over any account accepted or carried by such organization.
>
> (2) Supervise diligently all accounts handled by registered representatives of the organization ....

N.Y.S.E. Rule 405, N.Y.S.E. Guide (CCH) P 2405. The Suitability Rule provides:

> In recommending to a customer the purchase, sale or exchange of any security, a member shall have reasonable grounds for believing that the recommendation is suitable for such customer upon the basis of the facts, if any, disclosed by such customer as to his other securities holdings and as to his financial situation and need.

*NASD Manual,* Rule 2310(a) (2003).

Contrary to petitioner's assertion, nothing in the record submitted by petitioners suggests that the panel deliberately ignored the suitability doctrine. The question of suitability is triggered by a recommendation from a [*10] broker. Here, testimony of petitioner at the arbitration hearing disclosed that a number of the investments alleged to have been unsuitable were actually initiated by petitioner. *See* (Tr. 1/22/03 at 99-100, 118-120) (testimony of petitioner pertaining to investment in shares of "Electric Arts," "Sun Microsystems," "Red Hat," and "Petsmart"); *see also* (Tr. 1/24/03 at 87) (testimony of Respondent Kartchner that Mrs. Grosso "gave [him] orders to buy stocks [he] never heard of"). It further appears that the petitioners might have become their own worst enemy by repeatedly calling Respondent Kartchner, sometimes before the market opened, to suggest potential stock trades based upon financial reports on CNBC, a cable network. *See* (Arbitration Ex. R-22); *see also* (Farley Aff. P 6(f)); (Tr. 2/26/03 at 81) (testimony of Respondent Kartchner that Mr. Grosso was "reading and watching CNBC, following it frequently and that he gave me instructions to buy and sell.").

Respecting margin trading, the record shows that petitioners were put "on margin" at least in part through their own withdrawals from the account, for such things as personal vehicles. In addition, the following [*11] testimony was received from Respondent Kratchner at the hearing:

> Q. Isn't it true that you recommended the use of margin in this account to purchase securities?
>
> A. No.
>
> Q. Then as you and I go through the statements and we will ast some point very soon, any security that you recommended the purchase of that was purchased through a margin account, it's your testimony that you did not recommend the use of margin to buy that?
>
> A. No, that's not.
>
> Q. Okay, please tell me then what your testimony is then with regard to the use of margin in the Grosso account.
>
> A. Once the Grossos understood they could borrow from the account to buy stock, they wanted to continue to invest to ride the waves of posterity in the stock market. But it is true that they knew they were doing it on margins, its' the only way they could have done it as I testified before.

(Tr. 2/26/03 at 124-25).

The fact that this exchange took place before the arbitration panel is alone sufficient to confirm the award. This court cannot reassess the evidence or make judgments about witness credibility, *News America*, 918 F.2d at 24, and the above quoted testimony provides, [*12] at minimum, the "slender" support necessary to justify the arbitrator's decision and preclude court inquiry. *See Tanoma Mining*, 896 F.2d at 748.

Petitioners' assertion that the arbitrators failed to explain their decision is irrelevant since "arbitrators have no obligation to the court to give their reasons for an award." *Steelworkers v. Enter. Wheel Co.*, 363 U.S. 593, 598, 4 L. Ed. 2d 1424, 80 S. Ct. 1358 (1960); *see Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31, 114 L. Ed. 2d 26, 111 S. Ct. 1647 (1991) ("Arbitrators often will not issue written opinions."). While most awards are memorialized in a written document, the FAA does not even require an arbitrator's award to be in writing. *See* 9 U.S.C. § 1 et seq. The failure of an arbitrator to write a formal opinion does not support the conclusion that he manifestly disregarded the law since "it is not reasonable to attempt to draw conclusions or inferences from an arbitrator's not doing something that he was not obligated to do." *Coltec Industries*, 1999 U.S. Dist. LEXIS 13684, 1999 WL 695870, at *5.

Petitioners' reliance upon *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197 (2d Cir. 1998), *cert. denied*, 526 U.S. 1034, 143 L. Ed. 2d 378, 119 S. Ct. 1286 (1999) [*13] is misplaced. In *Halligan*, the Second Circuit vacated an arbitration award where there was "overwhelming evidence" supporting the petitioner's claim and counsel had explained the law to the panel. *Id.* at 203. In the absence of any explanation by the panel, the court was unable to reconcile the evidence in the record with the arbitration award. The *Halligan* court specifically acknowledged: "We have stated repeatedly that arbitrators have no obligation to [explain their awards.]" *Id.* at 204 (citing *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211, 1214 (2d Cir. 1972); *Koch Oil, S.A., v. Transocean Gulf Oil Co.*, 751 F.2d 551, 554 (2d Cir. 1985); *Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.*, 579 F.2d 691, 704 (2d Cir. 1978)). The court explained its decision as follows:

> We want to make clear that we are not holding that arbitrators should write opinions in every case or even in most cases. We merely observe that where a reviewing court is inclined to find that arbitrators manifestly disregarded the law or the evidence and that an explanation, if given,

would have strained [*14] credulity, the absence of explanation may reinforce the reviewing court's confidence that the arbitrators engaged in manifest disregard.

*Id.*

Unlike in *Halligan*, the factual record in this case supports the arbitrators' award. Where an arbitrator has not set forth the specific rationale supporting the decision, the court must confirm an award if "a ground for the arbitrator[s]' decision can be inferred from the facts of the case." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 13 (2d Cir. 1997) (citing *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211, 1216 (2d Cir. 1972)). From the record before the panel, the court necessarily infers that the arbitrators credited, *inter alia*, the testimony of Respondent Kartchner. A court cannot tamper with arbitrators' credibility determinations. Thus, the court finds that petitioners cannot meet their burden of proving that the arbitration panel manifestly disregarded the law.

### B. The Arbitration Panel Was Not Improperly Constituted

Petitioners cite NASD Code of Arbitration Procedure Section 10308 and assert that the arbitration panel was improperly constituted [*15] inasmuch as the panel chairperson was the non-public or industry arbitrator. The argument is without merit.

NASD arbitration panels consist of one or three arbitrators and must have a majority of public arbitrators, unless the parties agree to a different composition. The parties have fifteen days to appoint a chairperson calculated from the date the Director of Arbitration sends notice of the names of the arbitrators appointed to serve on the panel. *See NASD Code of Arbitration Procedure*, Rule 10308(c)(5) (National Ass'n of Sec. Dealers, Inc. 1999). "*If the parties cannot agree*" on whom to appoint as chairperson, the director appoints the chairperson of the panel. *Id.* (emphasis added). In such a case, the director is prohibited from appointing as chairperson attorneys or other professionals who have devoted fifty percent or more of their work effort to representing investors in disputes with members of the securities industry. *Id.* By its terms, however, the rule is inapplicable where, as here, the parties themselves unanimously select the chairperson.

The record shows that petitioners' prior counsel and respondents' counsel communicated and jointly selected the most [*16] experienced panelist in their judgment to serve as chairperson. Their agreement was memorialized in a fax to NASD, *see* (Resp.'s Cross-Mot. to Confirm

Arbit. Award, Ex. D), and acknowledged in NASD's correspondence advising the parties' counsel of the chairperson's appointment. *Id.* at Ex. E. The notice to counsel from NASD stated that the selected chairperson was the panel's only industry arbitrator and requested written notification within five days should the case information sheet not reflect the parties' unanimous agreement.

Petitioners' argument that the panel was improperly constituted is frivolous.

## C. The Arbitrators Did Not Engage in Misconduct

Petitioners assert that the arbitrators engaged in misconduct by 1) refusing to allow petitioners to amend their claim on the basis of an alleged $ 38,000 wire transfer not credited to their brokerage account and 2) failing to make a complete record of the proceedings. The court finds no misconduct.

A district court may vacate an arbitration award "where the arbitrators were guilty of misconduct in refusing ... to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights [*17] of any party have been prejudiced." 9 U.S.C.A. § 10(a)(3). [2]

> 2 The type of "misconduct" covered by this subsection has been construed to mean "not bad faith, but 'misbehavior though without taint of corruption or fraud, if born of indiscretion.'" *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.,* 397 F.2d 594, 599 (3d Cir.1968) (quoting *Stefano Berizzi Co. v. Krausz,* 239 N.Y. 315, 146 N.E. 436, 437 (1925) (Cardozo, J.)).

## 1. The Alleged $ 38,000 Wire Transfer

Petitioners assert that the arbitrators' refusal to hear their claim that the sum of $ 38,000 was wired into their account but not credited by SSB was an error so egregious that it deprived them of a fundamentally fair hearing. The court disagrees.

Decisions on evidentiary matters fall within the broad discretion of the arbitrator and "a court cannot act as a legal screen to comb the record for technical errors in the receipt or rejection of evidence by arbitrators, who in most cases are [*18] laymen." *See Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.,* 397 F.2d 594, 599 (3d Cir. 1968), *cert. denied,* 393 U.S. 954, 21 L. Ed. 2d 365, 89 S. Ct. 378 (1968). "A fair accommodation between the words of the [FAA] and the characteristic nature of arbitration would require that such an error must be one that is not simply an error of law, but which so affects the rights of a party that it may be said

that he was deprived of a fair hearing." *Id.* Thus, FAA section 10(a)(3) does not mean that "every failure to receive relevant evidence constitutes misconduct which will require the vacation of an arbitrator's award." *Id.*.

"The court's function is to preserve and enforce the arbitration decision unless there is proof that--aside from the evidence presented--the decision was arrived at illegally or irregularly." *Perna v. Barbieri,* 1998 U.S. Dist. LEXIS 5365, No. CIV. A. 97-5943, 1998 WL 181818, at *3 (E.D. Pa. Apr. 16, 1998), *aff'd,* 176 F.3d 472 (3d Cir. 1999). Only the most egregious error which adversely affects the rights of party constitutes "misconduct in refusing to hear evidence pertinent and material to the controversy." *Hunt v. Mobil Oil Corp.,* 654 F. Supp. 1487, 1511 (S.D.N.Y. 1987) [*19] (citing 9 U.S.C.A. § 10(a)(1)).

In *Peters Fabrics, Inc. v. Jantzen, Inc.,* 582 F. Supp. 1287 (S.D.N.Y. 1984), the petitioner alleged that the arbitrators were guilty of misconduct in refusing to hear evidence with respect to their counterclaim. *Id.* at 1290. Noting that the petitioner had been given an extension of time to file an answer or counterclaim but had failed to submit a counterclaim until seven days before the hearing, the court held that the arbitrator was well within the proper scope of his discretion in refusing to consider the counterclaim. *Id.* at 1292.

Similarly, the record here shows that the issue of an alleged wire transfer was not part of petitioners' initial Statement of Claim but was raised for the first time during the first group of sessions conducted in January of 2002. Moreover, the arbitrators did not refuse to hear evidence relevant to the claim but rather they extended to petitioners the opportunity to amend their Statement of Claim conditioned upon the presentation of evidence to support the claimed transfer. There was a break in the proceedings. The hearing resumed in late February [*20] of 2003. At that time, petitioners' counsel notified the panel that upon inquiry to the bank in question, they were unable to locate any records documenting the alleged transfer. (Farley Aff. at P 10).

Aside from their own testimony, based upon their recollection of events several years earlier, petitioners proffered no corroborating evidence that the sum of $ 38,000 had been wired to their account. *See e.g.,* (Tr. 2/26/03 at 29). On these facts, the court necessarily finds that the panel's refusal to allow petitioners to amend their Statement of Claim was not error. *See Hunt,* 654 F. Supp. at 1495 ("pejorative charges of ... corrupt conduct leveled at the arbitrators ... are not a substitute for evidentiary proof" and "lacking factual support, do[] not warrant granting the [petitioners'] motion"). The arbitrators were well within the proper scope of their discretion in refusing to hear the new claim.

2003 U.S. Dist. LEXIS 20208, *

*2. Failure to Make a Complete Recording*

The arbitrators' failure to record approximately two and a half hours of testimony over the course of five days does not constitute misconduct within the meaning of 9 U.S.C.A. § 10(a)(3).

[*21] Section 10326 of the NASD Code of Arbitration Procedure provides that a "verbatim record by stenographic reporter or a tape recording of all arbitration hearings shall be kept." In accordance with the rule, a tape recording of the proceedings in this matter was made and provided to petitioners for transcription. Without identifying any evidence or testimony submitted during the time period in issue, petitioners ask this court to infer misconduct and prejudice from the failure of the panel to record a small portion of a lengthy proceeding. The court declines to do so. *See also Perna v. Barbieri*, 1998 U.S. Dist. LEXIS 5365, No. CIV. 97-5943, 1998 WL 181818, at *2 (E.D. Pa. Apr. 16, 1998), *aff'd*, 176 F.3d 472 (3d Cir. 1999) (rejecting argument that NASD tape recording was of such poor quality as to frustrate plaintiff's efforts to review proceedings and amounted to "undue means" within the meaning of 9 U.S.C.A. § 10(a)(1)).

*D. The Panel's Award Was Not Procured by Fraud or Undue Means*

Petitioners argue that the panel's award was procured by fraud or undue means in violation of 9 U.S.C. § 10(a)(1). Like the assertion of arbitral [*22] misconduct, this argument is premised on the alleged transfer of $ 38,000 into petitioners' brokerage account. The argument is without merit.

While 9 U.S.C.A. § 10(a)(3) pertains to misconduct on the part of the arbitrators, 9 U.S.C.A. § 10(a)(1) pertains to misbehavior by another party. In order to show "corruption, fraud or undue means," a plaintiff must show an occurrence that so infected the arbitration process that the result was "immoral if not illegal." *Perna*, 1998 U.S. Dist. LEXIS 5365, 1998 WL 181818, at *2 (quoting *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9th Cir.1992), *cert. denied*, 506 U.S. 1050, 122 L. Ed. 2d 126, 113 S. Ct. 970 (1993)). A procedural irregularity must be fundamental. *Id.* (citing *Teamsters Local 312 v. Matlack, Inc.*, 118 F.3d 985, 996 (3d Cir.1997)).

In reviewing claims of "fraud" under § 10(a)(1), courts have relied upon a three-part test to determine whether an arbitration award should be vacated: 1) the plaintiff must establish fraud by clear and convincing evidence; 2) the fraud must not have been discoverable upon the exercise of due diligence prior to or during the arbitration; [*23] and, 3) the petitioner must demonstrate

that the fraud materially related to an issue in the arbitration. *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1383 (11th Cir. 1988) (citations omitted).

Courts have interpreted the "undue means" language of the statute as requiring some type of bad faith behavior by the winning party. *Shearson Hayden Stone, Inc. v. Liang*, 493 F. Supp. 104, 108 (N.D. Ill. 1980) (undue means requires some type of bad faith in the procurement of the award), *aff'd*, 653 F.2d 310 (7th Cir. 1981); *see A.G. Edwards*, 967 F.2d at 1404 (applying a three-part test similar to the *Bonar* fraud test).

In *Newark Stereotypers*, 397 F.2d at 598-599, petitioners attacked an arbitration award, *inter alia*, on the ground that they had been deprived of testimony which otherwise would have been available to it. Finding that the arbitrators had been fully aware of the claim, the Third Circuit denied relief because "the award followed after a conscious judgment by the arbitrators that the panel should not undertake an investigation of the charge" and there was "no claim that the panel's [*24] conduct was corrupt or fraudulent or influenced by undue means." *Id.* at 599.

Petitioners have alleged that the arbitrators' decision was influenced by fraud or undue means on the part of respondents in wrongfully failing to produce the alleged wire transfer in discovery. However, petitioners have not established either fraud or undue means by any standard, let alone clear and convincing evidence.

Respondents correctly point out that the assertion that respondents failed to produce the alleged wire transfer in discovery is misleading since the issue arose for the first time during the arbitration hearing and thus there was no opportunity for discovery to have occurred on the subject. In addition, petitioners have not explained why the wire transfer claim was never mentioned prior to the hearing or why they could not produce any records from their bank or financial institution evidencing that the funds were actually wired to SSB. Failure to produce such documentation could be taken as proof that there was never a wire transfer. Petitioners claimed that the money order was wired. Respondents denied knowledge of such a transfer, and described SSB's policies for tracking [*25] such deposits. *See* (Tr. 2/27/03 at 7). The matter boiled down to one of credibility. Obviously, petitioners' assertions of a wire transfer were not accepted as proof of the matter at hand.

The court has no authority to reassess witness credibility. *See News America*, 918 F.2d at 24 (an arbitration award may not be overturned because the court disagrees with the arbitrator's assessment of the credibility of witnesses or the weight the arbitrator has given to testimony); *Kirschner v. West Co.*, 247 F. Supp. 550, 553 (E.D. Pa. 1965), *aff'd*, 353 F.2d 537 (3d Cir. 1965), *cert.*

*denied*, 383 U.S. 945, 16 L. Ed. 2d 208, 86 S. Ct. 1202 (1966) ("Credibility of witnesses is always for the fact finder, and this is especially so when the fact finder is an arbitrator.").

The arbitration panel was well aware of petitioners' claim regarding the alleged transfer of funds. Respondent Kartchner testified that while petitioners had mentioned that their mother had an account which was in CDs and that they had made arrangements to "put it in an account that was invested the way the first account was invested," he could not recall being told that "the money had been wired [*26] into the account." (Tr. 2/26/03 at 79). The court infers from the denial of the amendment that the arbitrators credited the testimony of Respondent Kartchner. Petitioners' assertion that Respondent Kartchner testified in a false and misleading way is irrelevant. This court concludes that petitioners have failed to show that the award was procured by fraud or undue means.

### IV. CONCLUSION

For the foregoing reasons, petitioners' motion to vacate is denied and respondents' cross-motion to confirm is granted.

An appropriate order follows.

### JUDGMENT ORDER

AND NOW, this *22nd* day of October, 2003, upon consideration of Petitioners' Motion to Vacate Arbitration Award Pursuant to 9 U.S.C. § 10 and Respondents' Cross-Motion to Confirm Arbitration Award, and all related documents, it is hereby ORDERED as follows:

> 1. Petitioners' Motion to Vacate Arbitration Award Pursuant to 9 U.S.C. § 10 is DENIED;
>
> 2. Respondents' Cross-Motion to Confirm Arbitration Award is GRANTED;
>
> 3. All outstanding motions are DENIED as moot.

BY THE COURT:

JAMES T. GILES C.J.

7

4 of 23 DOCUMENTS

**HIGH COUNTRY LINENS, INC., Plaintiff, v. GREG BLOCK, et. al., Defendants.**

No. C 01-02180 CRB

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

2002 U.S. Dist. LEXIS 16043

August 19, 2002, Decided
August 20, 2002, Filed; August 20, 2002, Entered in Civil Docket

**DISPOSITION:** [*1] Defendants' motion for partial summary judgment GRANTED.

**COUNSEL:** For High Country Linens, Inc., Plaintiff: Joseph L. Strabala, Law Offices of Joseph L. Strabala, San Francisco, CA.

For Greg Block, Steve Block, Jeff Block, Defendants: Blaine I. Green, Pillsbury Winthrop LLP, San Francisco, CA. Paul R. Griffin, Pillsbury Winthrop LLP, San Francisco, CA.

**JUDGES:** CHARLES R. BREYER, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** CHARLES R. BREYER

**OPINION:**

### MEMORANDUM AND ORDER

High Country Linens ("HCL") filed this suit against Greg Block, Steve Block, and Jeff Block ("Blocks") on June 5, 2001. On August, 22, 2001, HCL filed a first amended complaint ("FAC"). At the relevant times, the Blocks were officers of American Pacific Enterprises ("APE"). A previous suit against APE by HCL was stayed when APE filed for bankruptcy. HCL, in its first amended complaint, asserts ten claims against the Blocks: common law trademark infringement, trade dress infringement, three claims of interference with contractual relations, negligent interference with contractual relations, false advertising, unfair competition, interference with prospective economic advantage, and copyright infringement.

Now before the Court is [*2] defendants' motion for summary judgment motion based on statute of limitations for the following state law claims: interference with contractual relations, negligent interference with contractual relations, interference with prospective economic advantage, common law trademark infringement, and unfair competition. Having carefully considered the papers submitted by the parties, and having had the benefit of oral argument on August 9, 2002, the motion is GRANTED.

### BACKGROUND

Plaintiff HCL is a New York corporation registered to do business in California, which owns a 35,000 square foot distribution center in City of Industry, California. FAC P5. HCL sells bed linens throughout the United States. Id. at P6.

Defendant Greg Block resides in California, is currently the Chief Executive Officer of American Pacific Enterprises ("APE"), and was an officer at APE for the period 1996-98. Id. at P7. Defendants Steve and Jeff Block were co-CEOs of APE for the period 1996-98. Id. at PP9-10. APE has an office in San Francisco and does a "substantial amount of business" in California. Id. at PP8, 13.

In late 1995, plaintiff commissioned the Ren Feng Cloth Mill in Ningbo [*3] City, China to produce high thread count bed linens. Id. at PP20, 18. The Ren Feng Cloth Mill was and is one of the few mills in China capable of producing high thread count bed linens. Id. at P19. Based on its commission with the Ren Feng Cloth Mill, plaintiff obtained sales orders from national retail chains such as Bloomingdale's, Bed, Bath & Beyond, Strouds, and Linens'n Things. Id. at P22. Around November 1996, plaintiff established three lines of bed linens marketed under three different marks: VERSAILLES, CLASSIQUE, and LIMOGES. Id. at P23. Plaintiff's sales of bed linens, for all three lines, reached approximately $ 4 million in 1996 and $ 9.6 million in 1997. Id. at P24. Plaintiff projected that sales would have

2002 U.S. Dist. LEXIS 16043, *

reached approximately $ 12 million in 1998 and $ 20 million in 1999. Id.

Plaintiff believes that around late 1997, defendants learned of HCL's successful bed linens lines and directed APE to "unfairly compete" with HCL. Id. at P36. Around July 1997, defendants approached the Ren Feng Cloth Mill offering more money for similar products, persuaded the mill to convert some of its machines to APE products, and thus caused the breach of its [*4] contract with HCL. Id. at P62. This breach caused plaintiff to lose sales and profits. Id. at P67. After this initial breach, plaintiff entered into a second agreement with the mill around January 1998. Id. at P70. Defendants also caused the mill to break this second agreement resulting in a further loss of sales for plaintiff and the loss of two of its customers, Strouds and Bed, Bath & Beyond. Id. at P74. In March 1998, plaintiff entered into a third agreement with the mill. Id. at P82. In June 1998, defendants directed APE to pursue a joint venture with the Ren Feng Cloth Mill. Id. at P86. At the end of July 1998, the mill breached the third agreement by ending its production of linens for plaintiff. Id. at P87.

In late 1998, APE allegedly began marketing a competing brand under the VALENCIA mark, allegedly similar to plaintiff's VERSAILLES mark. Id. at P36-37. During this time, APE also allegedly sought to disrupt the plaintiff's contract with the Ren Feng Cloth Mill and conspired with Bed, Bath & Beyond to make a product with a similar fabric pattern. Id. at P25.

According to the complaint, as a result of these actions, defendants substantially [*5] increased the profits of APE and were able to sell their interest in the company to Glenoit for $ 39 million in October 1998. Id. at P26. The defendants also received, from Glenoit, a bonus of $ 9 million in 1999. Id. at P27.

On June 21, 1999, HCL filed suit, in this Court, against APE for almost all the same claims that have been pled against the current defendants (Case No. 99-3030). In August 2000, APE filed for bankruptcy and the June 1999 suit was stayed.

The instant case against the Blocks individually was filed June 5, 2001. On October 19, 2001, this Court denied defendants' motion to dismiss or stay pending the outcome of the APE bankruptcy proceeding.

## DISCUSSION

### I. Summary judgment standard

"While resolution of the statute of limitations issue is normally a question of fact, where the uncontradicted facts established through discovery are susceptible of only one legitimate inference, summary judgment is proper." Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1112,

245 Cal. Rptr. 658, 751 P.2d 923 (1988). See also Romano v. Rockwell Internet, Inc., 14 Cal.4th 479, 487, 926 P.2d 1114 (1996) (quoting Jolly summary [*6] judgment standard).

### II. Statutes of limitations

Notably, in its papers, the plaintiff does not challenge any of the defendants' arguments regarding the applicable California statutes of limitations. n1 Instead, plaintiff argues that New York law should govern and, in the alternative, that the claims should be equitably tolled under California law. These arguments will be discussed in sections III and IV.

> n1 Plaintiff's interference with contractual relations claims are time-barred by a two-year statute of limitations established by Cal. Civ. Proc. Code § 339. See Forcier v. Microsoft Corp., 123 F. Supp. 2d 520, 530 (N.D. Cal. 2000). Negligent interference with contractual relations is a valid claim and is also time-barred by Cal. Civ. Proc. Code § 339. See J'Aire Corp. v. Gregory, 24 Cal.3d 799, 157 Cal. Rptr. 407, 598 P.2d 60 (1979). Plaintiff's claim of interference with prospective economic advantage is also time-barred by the two-year statute of limitations established by Cal. Civ. Proc. Code § 339. See Stutz Motor Car of Am., Inc. v. Reebok Int'l, Ltd., 909 F. Supp. 1353, 1361 (C.D. Cal. 1995) (interpreting Cal. Civ. Proc. Code § 339 as "providing that [a] claim based on obligation not founded on instrument of writing, such as interference with prospective advantage, must be brought within two years"). Plaintiff's common law trademark infringement claim is also limited by Cal. Civ. Proc. Code § 339. See Mission Imports, Inc. v. Superior Court, 31 Cal.3d 921, 931, 184 Cal. Rptr. 296, 647 P.2d 1075 (1982) (holding that an "action for trademark infringement sounds in tort"); see Murphy v. Hartford Acci. & Indem. Co., 177 Cal. App. 2d 539, 544, 2 Cal. Rptr. 325 (1960) (holding that Cal. Civ. Proc. Code § 339 governs the statute of limitations for torts).
>
> Cal. Bus. & Prof. Code § 17082 establishes the penalties for violations of Cal. Bus. & Prof. Code § 17200, et. seq. In G.H.I.I. v. MTS, Inc., 147 Cal. App. 3d 256, 276-77, 195 Cal. Rptr. 211 (1983), the court held that since Cal. Bus. & Prof. Code § 17082 establishes mandatory treble damages for a violation of the Unfair Practices Act, it is governed by Cal. Civ. Proc. Code § 340. See also Menefee v. Ostawari, 228 Cal. App. 3d 239, 243, 278 Cal. Rptr. 805 (1991) (same). Cal. Civ.

Case 3:07-cv-02753-SC     Document 25-2     Filed 08/24/2007     Page 49 of 50

Page 3
2002 U.S. Dist. LEXIS 16043, *

Proc. Code § 340 establishes a one-year statute of limitations for an "action upon a statute for a penalty" such as treble damages.

[*7]

## III. Choice of law

In its opposition, plaintiff first argues that New York, rather than California, statutes of limitations should apply to its claims. The parties agree that this Court should apply California's "governmental interest" approach in selecting applicable law.

The "governmental interest" approach is explained in Coufal Abogados v. AT & T, Inc., 223 F.3d 932, 934 (9th Cir. 2000):

> First, the court examines the substantive law of each jurisdiction to determine whether the laws differ as applied to the relevant transaction. Second, if the laws do differ, the court must determine whether a "true conflict" exists in that each of the relevant jurisdictions has an interest in having its law applied. If only one jurisdiction has a legitimate interest in the application of its rule of decision, there is a false conflict and the law of the interested jurisdiction is applied. On the other hand, if more than one jurisdiction has a legitimate interest, the court must move to the third stage of the analysis, which focuses on the comparative impairment of the interested jurisdictions. At this stage, the court seeks to identify and apply the law of [*8] the state whose interest would be the more impaired if its law were not applied.

Id. (citations omitted).

### A. Difference in laws

In the present case, the statutes of limitations differ. Both parties agree that, in New York, interference with contract and prospective economic advantage claims have three-year statutes of limitations.

### B. "True conflict"

Plaintiff relies on Aalmuhammed v. Lee, 202 F.3d 1227, 1237 (9th Cir. 2000), to argue that a New York plaintiff can apply New York law to an action against California defendants in a California court. In Aalmu-

hammed, the plaintiff was invited by actor Denzel Washington to assist him in preparing for the title role in Spike Lee's movie, Malcolm X. Id. at 1229. Plaintiff Aalmuhammed was knowledgeable both about the life of Malcolm X and the practice of Islam. Id. Aalmuhammed worked on site, in both New York and Egypt, in various capacities including, to some extent: directing, writing, translation, and editing. Id. at 1230. The plaintiff did not work with a contract but did receive some compensation from Spike Lee and Denzel Washington. Id. In reviewing [*9] the case, the Ninth Circuit analyzed the choice of law issue with respect to Aalmuhammed's quantum meruit claim. Id. at 1236-37. In deciding that the New York statute of limitations should apply to that claim, the Ninth Circuit held that "New York's interest in governing the remedies available to parties working in New York is far more significant" than California's "interest in protecting its residents from stale claims arising from work done outside the state." Id. at 1237.

In response, defendants argue that because they all reside in California, the case was brought in California, and some of the acts of interference took place in this state that California has a legitimate interest in this dispute (and that New York has none).

In the present case, as in Aalmuhammed, a New York entity is pursuing a claim against a California defendant for injuries that could have occurred, at least in part, in New York. See id. Accordingly, New York may have a legitimate interest in this claim. On the other hand, California clearly has a legitimate interest in eliminating stale claims against California defendants arising from actions that took place, [*10] at least in part, in California.

### C. "Comparative impairment"

The Ninth Circuit's analysis in Aalmuhammed, 202 F.3d at 1237, begins by noting that the "question is which state's interest would suffer more by the application of the other's law" (citing Waggoner v. Snow, Becker, Kroll, Klaris & Krauss, 991 F.2d 1501, 1507 (9th Cir. 1993)).

The facts in this particular case favor enforcing California law as both parties' ties to California are more "substantial, immediate and concrete" than to New York. See id. As plaintiff points out, it is a New York corporation. But, as defendants more convincingly argue, plaintiff is registered to do business in California and has a 35,000 square foot distribution facility in California. Also, while plaintiff's headquarters are located in New York, its sales occur throughout the country--including California--with no indication that more of its sales occur in New York than any other state. FAC P32. Indeed, the entire focus of this case is the allegedly illegal conduct of defendants, which was apparently orchestrated out of

2002 U.S. Dist. LEXIS 16043, *

California, since defendants reside in California and APE has an office in San Francisco. [*11] Lastly, the plaintiff chose to file this suit in the Northern District of California, which suggests that even plaintiff, at one point, thought this action was centered here.

### III. Equitable tolling

Plaintiff argues that even if it is subject to California law, it is entitled to equitable tolling of the statute of limitations as a result of the action previously filed against APE. Generally speaking California courts "have liberally applied tolling rules or their functional equivalents to situations in which the plaintiff has satisfied the notification purpose of a limitations statute," Elkins v. Derby, 12 Cal.3d 410, 418, 115 Cal. Rptr. 641, 525 P.2d 81 (1974). However, plaintiff's pursuit of another remedy equitably tolls the statute of limitations only where three conditions are satisfied:

1. timely notice to the defendant in filing the first action,
2. lack of prejudice to the defendant in gathering evidence for the second action, and
3. reasonable and good faith conduct on the part of the plaintiff in filing the second action.

Cervantes v. City of San Diego, 5 F.3d 1273, 1275 (9th Cir. 1993).

Equitable tolling is [*12] not appropriate here because the filing of the first action against APE did not put the Blocks on notice that they would be sued. Plaintiff's argument that the Blocks knew about the previous suit against APE misses the point. Defendants do not contend they had no knowledge of the previous suit against APE. They contend that such knowledge does not constitute notice for purposes of equitable tolling. The Court agrees.

In Garabedian v. Skochko, 232 Cal. App. 3d 836, 847, 283 Cal. Rptr. 802 (1991), the court held that "the doctrine of equitable tolling does not apply merely because defendant B has obtained timely knowledge of a claim against defendant A for which defendant B knows or believes he may share liability." In Garabedian, the court held that even though the defendant knew of the first suit against the first defendant, equitable tolling is only proper when the second suit is against the same parties. Id. at 847-48.

Indeed, the fact that plaintiff named APE, and not the Blocks individually, as defendant in the first case may have signaled to the Blocks that plaintiff did not hold them individually responsible for its injury. This reasonability [*13] of this inference is highlighted by the fact that all of the facts underlying a claim against the Blocks individually were known to plaintiff when it filed the first suit. n2

n2 Plaintiff's arguments regarding Fed. R. Civ. P. 15(c) are inapposite. That rule applies where "but for a mistake concerning the identity of the proper party, the action would have been brought against the party."

Since, for purposes of equitable tolling, the mere knowledge of a previous suit against defendants' company does not constitute notice of suit against the defendants, the statutes of limitations is not equitably tolled and these claims are barred.

### CONCLUSION

For the foregoing reasons, defendants' motion for partial summary judgment is GRANTED.

**IT IS SO ORDERED.**

Dated: August 19, 2002

/s/

CHARLES R. BREYER

UNITED STATES DISTRICT JUDGE