**EXHIBIT A**



# FINRA DISPUTE RESOLUTION
# ARBITRATOR'S REFERENCE GUIDE

June 2007 Edition

## Discovery Guide for Old Code Cases

For NASD arbitrations, the Discovery Guide supplements the section in the Securities Industry Conference on Arbitration (SICA) publication entitled *The Arbitrator's Manual*, and captioned "Pre-hearing Conference," regarding public customer cases.

### I. The Need for New Discovery Procedures

Discovery disputes have become more numerous and time consuming. The same discovery issues repeatedly arise. To minimize discovery disruptions, NASD Dispute Resolution has developed two initiatives to standardize the discovery process: early appointment of arbitrators to conduct an initial Pre-hearing conference and document production lists (Document Production Lists).

No requirement under the Discovery Guide supersedes any record-retention requirement of any federal or state law or regulation or any rule of a self-regulatory organization.

The Discovery Guide and Document Production Lists are designed for customer disputes with firms and Associated Person(s).[1] The Discovery Guide also discusses additional discovery requests, information requests, depositions, admissibility of evidence, and sanctions. The Discovery Guide, including the Document Production Lists, will function as a guide for the parties and the arbitrators; it is not intended to remove flexibility from arbitrators or parties in a given case. For instance, arbitrators can order the production of documents not provided for by the Document Production Lists or alter the production schedule described in the Discovery Guide. Further, nothing in the Discovery Guide precludes the parties from voluntarily agreeing to an exchange of documents in a manner different from that set forth in the Discovery Guide. In fact, NASD Dispute Resolution encourages the parties to agree to the voluntary exchange of documents and information and to stipulate to various matters. The fact that an item appears on a Document Production List does not shift the burden of establishing or defending any aspect of a claim.

### II. Document Production Lists

NASD Dispute Resolution will provide the parties with Document Production Lists (attached to the Discovery Guide) at the time it serves the statement of claim in customer cases. The arbitrators and the parties should consider the documents described in Document Production Lists 1 and 2 presumptively discoverable. Absent a written objection, documents on Document Production Lists 1 and 2 shall be exchanged by the parties within the time frames set forth below.

---

[1] NASD Dispute Resolution may develop separate Document Production Lists for intra-industry disputes.

The arbitrators and parties also should consider the additional documents identified in Document Production Lists 3 through 14, respectively, discoverable, as indicated, for cases alleging the following causes of action: churning, failure to supervise, misrepresentation/omission, negligence/breach of fiduciary duty, unauthorized trading, and unsuitability. For the general document production and for each of these causes of action, there are separate Document Production Lists for firms/Associated Person(s), and for customers.

NASD Rule 10321 provides that the parties shall cooperate to the fullest extent practicable in the voluntary exchange of documents and information to expedite the arbitration process. As noted, nothing in the Discovery Guide precludes parties from voluntarily agreeing to an exchange of documents in a manner different from that set forth in the Discovery Guide.

### A. Time Frames for Document Production and Objections

The parties should produce all required documents listed in the applicable Document Production Lists not later than 30 days[2] from the date the answer is due or filed, whichever is earlier. If a party redacts any portion of a document prior to production, the redacted pages (or ranges of pages) shall be labeled "redacted." A party may object to the production of any document, which would include an objection based upon an established privilege such as the attorney-client privilege. If any party objects to the production of any document listed in the relevant Document Production Lists, the party must file written objections with NASD Dispute Resolution and serve all parties not later than 30 days following the date the answer is due or filed, whichever is earlier. Objections should set forth the reasons the party objects to producing the documents. An objection to the production of a document or a category of documents is not an acceptable reason to delay the production of any document not covered by the objection. A response to an objection should be served on all parties within 10 days from service of the written objections. Objections and responses should be filed with NASD Dispute Resolution at the time they are served on the parties. The arbitrator(s) shall then determine whether the objecting party has overcome the presumption based upon sufficient reason(s).

### B. Confidentiality[3]

If a party objects to document production on grounds of privacy or confidentiality, the arbitrator(s) or one of the parties may suggest a stipulation between the parties that the document(s) in question will not be disclosed or used in any manner outside of the arbitration of the particular case, or the arbitrator(s) may issue a confidentiality order. The arbitrator(s) shall not issue an order or use a confidentiality agreement to require parties to produce documents otherwise subject to an established privilege. Objections to the production of documents, based on an established privilege, should be raised in accordance with the time frame for objections set forth above.

---

[2] All time periods referenced herein are calendar days.
[3] Section II.B. is also applicable to additional discovery requests and information requests (see Sections IV and V).

45

### C. Affirmation in the Event that there Are No Responsive Documents or Information

If a party responds that no responsive information or documents exist, the customer or the appropriate person in the brokerage firm who has personal knowledge (i.e., the person who has conducted a physical search), upon the request of the requesting party, must: 1) state in writing that he/she conducted a good faith search for the requested information or documents; 2) describe the extent of the search; and 3) state that, based on the search, no such information or documents exist.

### III. The Initial Pre-hearing Conference

To maximize the efficient administration of a case by the arbitration panel,[4] NASD Dispute Resolution staff will schedule an initial Pre-hearing conference in which the arbitrator(s) usually participates.[5] The initial Pre-hearing conference gives the arbitrator(s) and the parties an opportunity to organize the management of the case, set a discovery cut-off date,[6] identify dispositive or other potential motions, schedule hearing dates, determine whether mediation is desirable, and resolve any other preliminary issues. During the initial Pre-hearing conference, the arbitrator(s) and the parties should schedule hearing dates for the earliest available time, consistent with the parties' need to prepare adequately for the hearing.

Prior to the initial Pre-hearing conference, each arbitrator should become familiar with the claims and defenses asserted in the pleadings filed by the parties. At the initial Pre-hearing conference, the arbitrator(s) should order time limits for discovery that will allow the scheduling of hearing dates within a reasonable time and address all outstanding discovery disputes. If the exchange of properly requested documents has not occurred, the arbitrator(s) should order the production of all required documents, including those outlined in the Document Production Lists (see section II above), within 30 days following the conference.

### IV. Additional Discovery Requests

The parties may request documents in addition to those identified in the Document Production Lists pursuant to Rule 10321(b). Unless a longer period is allowed by the requesting party, requests should be satisfied or objected to within 30 days from the

---

[4] The panel consists of three arbitrators in most cases. Claims between $25,000.01 and $50,000 may proceed with a single arbitrator. Claims of $25,000 or less are decided by a single arbitrator, generally on the pleadings.

[5] In some instances, the parties may opt out of the initial Pre-hearing conference. To opt out, parties must supply the following information to NASD Dispute Resolution by the specified deadline:
1) a minimum of four sets of mutually agreeable hearing dates;
2) a discovery cut-off date;
3) a list of all anticipated motions with the motion due dates, opposition due dates, and reply due dates provided;
4) a minimum of four dates and times for any proposed Pre-hearing conferences to hear motions; and
5) a determination whether briefs will be submitted and, if so, the due date for submission.

[6] NASD Dispute Resolution recommends that the panel set a cut-off date during the initial Pre-hearing conference for service of discovery requests, giving due consideration to time frames that permit timely resolution of objections and disputes prior to the scheduled exchange of hearing exhibits pursuant to the NASD Code of Arbitration Procedure.

46

date of service of the document request. A response to an objection should be served on all parties within 10 days from service of the written objections. Requests, objections, and responses should be filed with NASD Dispute Resolution at the time they are served on the parties.

A party may move to compel production of documents when the adverse party (a) refuses to produce such documents or (b) offers only to produce alternative documents that are unacceptable to the requesting party. NASD Dispute Resolution will provide the Chairperson of the panel with the motion, opposition, and reply, along with the underlying discovery documents the parties have attached to their pleadings. The Chairperson should determine whether to decide the matter on the papers or to convene a Pre-hearing conference (usually via telephone). In considering motions to compel, particularly where non-production is based upon an argument asserting an established privilege, such as the attorney client privilege, the arbitrator(s) should always give consideration to the arguments set forth by both sides, particularly as to the relevancy of the documents or information. The arbitrator(s) should carefully consider such motions, regardless of whether the item requested is on any of the Document Production Lists. If in doubt, the arbitrator(s) should ask the requesting party what specific documents it is trying to obtain and what it seeks to prove with the documents.

## V. Information Requests

Like requests for documents, parties may serve requests for information pursuant to Rule 10321(b). Requests for information are generally limited to identification of individuals, entities, and time periods related to the dispute; such requests should be reasonable in number and not require exhaustive answers or fact finding. Standard interrogatories, as utilized in state and federal courts, are generally not permitted in arbitration.

Unless a longer period is allowed by the requesting party, information requests should be satisfied or objected to within 30 days from the date of service of the requests. A response to an objection should be served on all parties within 10 days from service of the written objections. Requests, objections, and responses should be filed with NASD Dispute Resolution at the time they are served on the parties.

A party may move to compel responses to requests for information that the adverse party refuses to provide. NASD Dispute Resolution will provide the Chairperson of the panel with the motion, opposition, and reply, along with the underlying discovery documents the parties have attached to their pleadings. The Chairperson should determine whether to decide the matter on the papers or to convene a Pre-hearing conference (usually via telephone).

## VI. Depositions

Depositions are strongly discouraged in arbitration. Upon request of a party, the arbitrator(s) may permit depositions, but only under very limited circumstances, such as: 1) to preserve the testimony of ill or dying witnesses; 2) to accommodate essential witnesses who are unable or unwilling to travel long distances for a hearing and may not otherwise be required to participate in the hearing; 3) to expedite large or complex cases; and 4) to address unusual situations where the arbitrator(s) determines that circumstances warrant departure from the general rule. Balanced against the authority of the arbitrator(s) to permit depositions, however, is the traditional reservation about the overuse of depositions in arbitration.

## VII. Admissibility

Production of documents in discovery does NOT create a presumption that the documents are admissible at the hearing. A party may state objections to the introduction of any document as evidence at the hearing to the same extent that any other objection may be raised in arbitration.

## VIII. Sanctions

The arbitration panel should issue sanctions if any party fails to produce documents or information required by a written order, unless the panel[7] finds that there is "substantial justification" for the failure to produce the documents or information. The panel has wide discretion to address noncompliance with discovery orders. For example, the panel may make an adverse inference against a party or assess adjournment fees, forum fees, costs and expenses, and/or attorneys' fees caused by noncompliance. In extraordinary cases, the panel may initiate a disciplinary referral against a registered entity or person who is a party or witness in the proceeding, or may, pursuant to Rule 10305(b), dismiss a claim, defense, or proceeding with prejudice as a sanction for intentional failure to comply with an order of the arbitrator(s) if lesser sanctions have proven ineffective.

---

[7] As with other rulings, an arbitration panel's ruling need only be by majority vote; it need not be unanimous.

# Glossary of Terms

| | |
|---|---|
| **Amex** | **Award** |
| American Stock Exchange. | The written determination of the arbitrator(s). |
| **Answer** | **Branch Office** |
| A respondent's written response to a claim. | Any location identified by any means to the public or customers as a location at which the member conducts an investment banking or securities business. |
| **Arbitral Immunity** | **Breach of Fiduciary Duty** |
| Arbitrators are protected from suits arising out of their quasi-judicial conduct in arbitration proceedings. | A relationship involving trust and confidence such that one person is held to a higher than normal standard of care and integrity. The law or facts of a given case may make the brokerage firm or the broker a fiduciary. |
| **Arbitration/Counsel or Arbitration Administrator** | **Broker** |
| The person at the sponsoring organization who handles administrative matters in arbitration proceedings. | An individual who or firm that acts as an intermediary between a buyer and seller, usually charging a commission. |
| **Arbitrator** | **Call** |
| A private, disinterested person chosen to decide disputes between parties. | *Bonds*. The right to redeem outstanding bonds before their scheduled maturity.<br><br>*Options*. The right to by a specific number of shares at a specified price by a fixed date. |
| **Arbitrator's Exhibit #1** | **Casual Challenge** |
| The pleadings submitted by the parties plus the executed Submission Agreements (see Pleadings). | A challenge to an arbitrator based on a conflict of interest or specific existing or past relationship. |
| **Argumentative Question** | **Central Registration Depository (CRD)** |
| A question, such as during cross-examination, that counsel repeats in a manner that encourages the witness to argue. | A computerized system that FINRA maintains containing the employment, qualification, and disciplinary histories of securities industry professionals. |

| | |
|---|---|
| in day-to-day management. Typical limited partnerships are in real estate, oil and gas, and equipment leasing. | |
| **Margin** | **NASDAQ Stock Market** |
| Amount a customer deposits with a broker when borrowing from the broker to buy securities. A margin account is an account allowing the customer to buy securities with money borrowed from the broker. | The NASDAQ Stock Market was founded in 1971 as the first electronic, computer-based stock market. Currently, NASDAQ is the largest stock market in the United States, listing nearly 4,000 companies. |
| **Market Maker** | **Neutral List Selection System (NLSS)** |
| A firm that maintains a firm bid and offer price in a given security by standing ready to buy or sell at publicly quoted prices. | Software developed by FINRA Dispute Resolution that generates lists of public and non-public arbitrators. |
| **Member Firm** | **New Account Form/Customer Agreement** |
| Any of the broker/dealers admitted to membership in FINRA. | Document filled out by a broker that details vital facts about a new client's financial circumstances and investment objectives. |
| **Misquoting the Witness** | **NYSE** |
| Usually this objection is raised when counsel restates a witness' testimony but misinterprets the testimony. | New York Stock Exchange. |
| **Misrepresentation/Fraud** | **Oath of Arbitrator** |
| A false representation of a matter of fact that should have been disclosed, which deceives another so that he/she acts upon it to his/her detriment. | Attestation or affirmation by the arbitrator that he/she is a neutral in the proceeding and that he/she will decide the matter in a fair manner and render a just Award. |
| **Monthly Statements** | **Objection** |
| Summary for customers of the transactions that occurred over the preceding month. | The act of a party who objects to some matter or procedure in the course of the hearing. |
| **Motion** | **Pleadings** |
| An application made to the arbitrator(s) for the purpose of obtaining a ruling or order directing some act to be done in favor of the applicant. Common motions include motions to: | The claim, answer, counterclaim, and/or third-party and/or cross-claim filed in an arbitration. |

135

| | |
|---|---|
| ➢ Bar a late answer.<br>➢ Bar a witness or document not exchanged.<br>➢ Consolidate separate proceedings/sever claims.<br>➢ Compel production of documents or witnesses.<br>➢ Change hearing location.<br>➢ Dismiss claim(s).<br>➢ Vacate the Award. | |
| **Opening Statement** | **Portfolio** |
| Statement made by the parties at the outset of the hearing. It is limited to what a party intends to prove, and should not be a presentation of the party's evidence. | Combined holding of more than one stock, bond, commodity, real estate investment, or other asset by an individual or institutional investor. |
| **Operations** | **Postponement/Adjournment** |
| Back office of a brokerage firm where all clerical functions having to do with clearance, settlement, and execution of trades are handled. | An application to the arbitrator(s) to hold the hearing on a date subsequent to the one scheduled. |
| **Order of Production/Appearance** | **Pre-hearing Conference** |
| Order directed to a member firm or associated person requiring production of certain documents or appearance at the hearing. | A conference among the parties and arbitrator(s) prior to the hearing on the merits to resolve outstanding issues, such as discovery requests or motions. |
| **Order Ticket** | **Pro Se Party** |
| Form completed by a registered representative of a brokerage firm upon receiving order instructions from a customer. | A party who has chosen to bring his/her claim or to defend claims against him/her without legal representation. |
| **Out-of-Pocket Loss** | **Prospectus** |
| The difference between the value of what the purchaser parted with and the value of what he or she has received. | A formal written offer to sell securities that sets forth the plan for a proposed business enterprise or the facts concerning an existing one. |
| **Over-the-Counter** | **Put-Option** |
| 1) Security that is not listed and traded on an organized exchange.<br><br>2) Market in which securities | *Bonds.* Bondholder's right to redeem a bond before maturity.<br><br>*Options.* Contract that grants the right to |

| | |
|---|---|
| remedy directed to a party, forbidding him/her to do some act or restraining him in the continuance thereof. | |
| **Specific Performance** | **Self-Regulatory Organizations (SROs)** |
| The remedy of performance of a contract in the specific form in which it was made, according to the precise terms agreed upon. | Principal means contemplated by the federal securities laws for the enforcement of fair, ethical, and efficient practices in the securities and commodities futures industries. Includes all the national securities and commodities exchanges, as well as FINRA. |
| **Rescission** | **Service** |
| The remedy of performance of a contract in the specific form in which it was made, according to the precise terms agreed upon. | Delivery of the Statement of Claim or other pleadings to those parties named in the arbitration. |
| **Respondent** | **Settlement Date** |
| The person/entity against whom/which a claim is made. | Date by which an executed order must be settled, either by a buyer paying for the securities with cash or by a seller delivering the securities and receiving the proceeds of the sale for them. |
| **Secondary Market** | **Statute of Limitations** |
| Exchange and OTC (Over-the-Counter) markets where securities are bought and sold subsequent to original issuance. | A statute of prescribing limitations to the right of action on certain described causes of action; that is, declaring that claims not brought within a specified period of time cannot be a basis for recovery. |
| **Securities Act of 1933** | **Subpoena** |
| First law enacted by Congress to regulate the securities markets. It requires registration of securities and adequate disclosure of pertinent financial and other data. | A command to appear at a certain time and place to give testimony upon a certain matter. It can also require the production of books, papers, and other things. |
| **Securities Exchange Act of 1934** | **Uniform Submission Agreement** |
| Law governing the securities markets. The Act outlaws misrepresentation, manipulation, and other abusive practices in the issuance of securities. | Agreement signed by the parties indicating their submission to the arbitration process, and their agreement to be bound by the determination which may be rendered. |